IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
AMERICAN INSURANCE ASSOCIATION  )
and NATIONAL ASSOCIATION OF        )
MUTUAL INSURANCE COMPANIES,     )
                                                )
    *Plaintiffs*,                              )
                                                )
    v.                                         )
                                                )  Case No. 1:13-cv-966-RJL
UNITED STATES DEPARTMENT OF        )
HOUSING AND URBAN DEVELOPMENT  )
and SHAUN DONOVAN, in his official    )
capacity as Secretary of Housing and Urban )
Development,                                  )
                                                )
    *Defendants*.                           )
_____ )

### *AMICUS CURIAE* BRIEF OF JUDICIAL WATCH, INC. AND ALLIED EDUCATIONAL FOUNDATION IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR SUMMARY JUDGMENT</u>

Proposed *Amici* Judicial Watch, Inc. ("Judicial Watch") and the Allied Educational Foundation ("AEF") believe that fidelity to the rule of law requires this Court to overturn the Department of Housing and Urban Development's ("HUD") misinterpretation of the Fair Housing Act ("FHA") as establishing liability on the basis of disparate impact. HUD's new regulation unlawfully prohibits housing practices merely for having a statistically disparate effect on a "racial" group or other protected group. The imposition of liability under the FHA for practices that are both facially neutral and unmotivated by discriminatory intent violates the Administrative Procedures Act, and even if it did not, would violate the Fourteenth Amendment's Equal Protection Clause. *Amici* urge the Court to grant the Plaintiffs' motion.

1

**Interests of the Proposed *Amici***

*Amici* are concerned that HUD's unlawful action poses a special threat to the rule of law, and are concerned about the corrosive effect of that violation on American society. HUD's broad, race-based housing regulation is especially harmful because it attempts to further enshrine the intellectually impoverished concept of race into law,[1] and seeks to use the law to perpetuate a culture of racial politics in the housing market, and more broadly, in American public life. Such actions will serve to increase racial polarization and resentment in this country, perpetuating our domestic focus on "racial" issues, and inevitably prolonging the misconception that a person's "race" is a useful distinction for judging who a person is and what they are entitled to. *Amici* believe that the only mention of the unscientific concept of "race" in the law should be the prohibition on its use as a basis for discrimination against others.

Enshrinement of affirmative racial considerations into the law helps ensure that our concepts of "race" continue to form a significant part of our perceptions of others' important characteristics, which is problematic. As the American Anthropological Association ("AAA") has explained, racial categories are simultaneously too crude to convey accurate information about individuals or groups[2] and too likely to convey misinformation. *Id*. Since the perpetuation of scientific-sounding "racial" labels for official legal purposes is not the ultimate solution to the

---

[1] *See* Brief of *Amici Curiae* Judicial Watch and Allied Educational Foundation, *Fisher v. University of Texas at Austin*, Case No. 11-345, pp. 6-8 (filed with U.S. Supreme Court May 29, 2012), available at http://sblog.s3.amazonaws.com/wp-content/uploads/2012/06/Final-11-345-JudicialWatch-Brief.pdf.

[2] American Anthropological Association, "Statement on "Race,"" May 17, 1998, available at http://www.aaanet.org/stmts/racepp.htm ("In the United States both scholars and the general public have been conditioned to viewing human races as natural and separate divisions within the human species based on visible physical differences. With the vast expansion of scientific knowledge in this century, however, it has become clear that human populations are not unambiguous, clearly demarcated, biologically distinct groups").

goal of eliminating racial discrimination in the U.S., the AAA recommended the government phase-out its use of racial categories:

> Eventually, however, these [racial] classifications must be transcended and replaced by more non-racist and accurate ways of representing the diversity of the U.S. population…. [U]ltimately, the effective elimination of discrimination will require an end to such categorization, and a transition toward social and cultural categories that will prove more scientifically useful and personally resonant for the public than are categories of "race."[3]

Rather than forcing all insurance companies to start collecting and using data on race for their business practices, as HUD would require, the Court should adhere to the broad prohibition on racial discrimination in the Equal Protection Clause, consistent with state insurance laws and the current practices of the insurance industry. *See* Plaintiffs' SJ Brief, ECF 16-1 at 14, 42.

## I.    HUD's Rule Violates the Administrative Procedures Act

HUD's rule fails the *Chevron* test for determining whether federal agency regulations exceed the powers given to them by statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-843 (1984); *City of Arlington v. FCC*, 133 S. Ct. 1863, 1870, 1873 n4 (2013). Under the first step of *Chevron* analysis, HUD's actions do not fall within the plain meaning of the FHA, and so are unlawful. *Chevron*, 467 U.S. at 842-843 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

HUD's racial "disparate impact" regulation, codified at 24 C.F.R. § 100.500, is inconsistent with a plain reading of the text of the FHA. *See Dean v. U.S.*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."). Section 804(a) of the FHA does nothing more than make it unlawful to "refuse to sell or

---

[3]  American Anthropological Association, Response to OMB Directive 15: Race and Ethnic Standards for Federal Statistics and Administrative Reporting, Sept. 1997, available at http://www.aaanet.org/gvt/ombdraft.htm.

rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The phrase "because of race" conveys the fact that race must be the reason (or at least a reason) for the refusal. Accordingly, under the statute's plain text, there must be an intent to discriminate against a member of one of the named classes in order for the action to be unlawful. HUD's interpretation is inconsistent with the plain meaning of the statute, and so the regulation must be stricken. *Chevron*, 467 U.S. at 842-843.

However, even if this Court found that FHA Section 804(a) were ambiguous (which it is not), HUD's interpretation cannot possibly constitute a "permissible construction" of the FHA under *Chevron* step two, and so is still unlawful. 467 U.S. at 843. If HUD's interpretation of the FHA were "permissible," then the FHA itself would likely violate the Equal Protection Clause of the U.S. Constitution and be struck down, voiding HUD's regulation with it.

## II.     Any Interpretation of the FHA That Would Allow HUD's Rule Would Violate the Equal Protection Clause

Any interpretation of the FHA Section 804(a) which allows HUD's regulation would render the FHA unconstitutional. HUD interprets FHA Section 804(a) as allowing HUD to impose a racial classification obligation on an entire industry. Such an expansive reading would subject the FHA to strict scrutiny, requiring a judicial finding that it was narrowly tailored to achieve a compelling state interest in order to be upheld. *See Johnson v. California*, 543 U.S. 449, 505 (2005). "A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination on the basis of race." *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984). Classifications of persons according to their race "are subject to the most exacting scrutiny; to pass constitutional muster they must be justified by a compelling governmental

interest and must be 'necessary . . . to the accomplishment' of their legitimate purposes." *Id., quoting McLaughlin v. Florida*, 379 U.S. 184, 196 (1964); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995). "All racial classifications [imposed by government] . . . must be analyzed by a reviewing court under strict scrutiny." *Johnson*, 543 U.S. at 505. Strict scrutiny is the appropriate standard, "even for so-called 'benign' racial classifications." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 741 (2007).

  Finally, HUD's interpretation of the FHA would be unlikely to survive strict scrutiny, as the Supreme Court does not view "racial balancing" as a compelling state interest. In fact, the Supreme Court has found quite the opposite: "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class." *Miller v. Johnson*, 515 U.S. 900, 911 (1995). The Supreme Court recently found that "[t]his working backward to achieve a particular type of racial balance… is a fatal flaw under our existing precedent," *Parents Involved*, 551 U.S. at 729, and held that "[r]acial balance is not to be achieved for its own sake." *Freeman v. Pitts*, 503 U.S. 467, 494 (1992). The Court should refuse HUD's attempt to overturn or evade this precedent under the Equal Protection Clause.

Dated:  January 30, 2014                                  Respectfully submitted,

*s/ Chris Fedeli*
Chris Fedeli
DC Bar No. 472919

**JUDICIAL WATCH, INC.**
425 Third Street, SW, Ste. 800
Washington, DC 20024
202-646-5172 office
202-646-5199 facsimile
cfedeli@judicialwatch.org

*Attorney for Amici Curiae Judicial Watch and Allied Educational Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2014, I transmitted the foregoing document by email to the following addresses:

dcd_cmecf@dcd.uscourts.gov
kyle.freeny@usdoj.gov
kshanmugam@wc.com
ajones@wc.com
daniel.mosteller@usdoj.gov
apodoll@wc.com

*/s/ Chris Fedeli*
Chris Fedeli