# EXHIBIT B



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE SECRETARY
WASHINGTON, D.C. 20410

June 27, 1996

Honorable Christopher S. Bond
United States Senate
Washington, DC  20510-2503

Dear Senator Bond:

　　　Thank you for your letter of April 23, 1996, regarding your continuing interest in discrimination and the devastating effects it has on our inner cities. I am pleased to respond to your questions regarding procedures HUD utilizes in applying the Federal Fair Housing Act (the Act) to the property insurance industry.

　　　Your letter raises four related areas of concern:  1) application of the Fair Housing Act to property insurance; 2) state insurance laws that address discrimination in property insurance; 3) procedures for investigating complaints; and 4) if the Department has considered eliminating or reducing Federal regulation of property insurance discrimination. The Department is undertaking the careful examination of contracts and records to assure an accurate response to your request for information regarding reports and studies, both completed and underway, and will send that information to you shortly in a supplementary response.

### Application of the Fair Housing Act to Property Insurance

　　　As the Department has consistently stated, HUD does not intend to regulate the property insurance industry. The Department does not propose to approve rate filings or underwriting guidelines, set licensing procedures, establish solvency standards or perform any of the services routinely provided by state regulators. However, HUD is legally obligated to enforce the Fair Housing Act which has been consistently interpreted as applying to property insurance discrimination. Unlike state regulations, HUD regulations and enforcement responsibilities are intended solely to implement the Act.

　　　Both Republican and Democratic Administrations, beginning with a HUD General Counsel opinion in 1978, have concluded that the Fair Housing Act prohibits:  (1) insurance redlining and other policies and practices that deny insurance or make it unavailable on the basis of race or any other prohibited basis, and (2) discrimination in the terms, conditions, costs or other aspects of insurance coverage. In 1988 President Reagan signed the Fair Housing Amendments Act, strengthening the original 1968

Act. In 1989 President Bush issued regulations implementing the Amendments explicitly applying the Fair Housing Act to discrimination in property insurance. Those regulations define as prohibited conduct "Refusing to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance differently because of race, color, religion, sex, handicap, familial status, or national origin" (24 C.F.R. Section 100.70(d)(4)).

While it is true that in the course of considering amendments to the Act, Congress has rejected provisions that would explicitly cover property insurance discrimination, the Department testified in hearings that explicit mention of property insurance was not necessary because insurers were already covered by the Act as were others, such as landlords, apartment managers, title insurance companies, contractors, housing developers, group home operators, employers who provide financing, and state and local governments.

Furthermore, case precedents have clearly established the applicability of the Fair Housing Act to discriminatory insurance practices. Dunn v. Midwestern Indemnity Mid-American Fire & Casualty Co., 472 F. Supp. 1106 (S.D. Ohio 1979) and McDiarmid v. Economy Fire & Casualty Co., 604 F. Supp. 105 (S.D. Ohio 1984). More recent precedents, reaffirmed this principal. N.A.A.C.P. v. American Family Mutual Insurance Co., 978 F.2d 287 (7th Cir. 1992), cert. denied, 113 S. Ct. 2335 (1993), Nationwide Mutual Insurance Co. v. Cisneros, No. C3-92-52 (S.D. Ohio Feb. 24, 1994), and Strange v. Nationwide Mutual Insurance Co., No. 93-6585 (E.D. Pa. 9-22-94).

While the Fourth Circuit held to the contrary in Mackey v. Nationwide Insurance Co., 724 F. 2d 419 (4th Cir. 1984), that decision was rendered prior to HUD's regulation stating that insurance is covered by the Fair Housing Act. HUD believes this case would be decided differently today. The Seventh Circuit in the 1992 American Family case, in finding that insurance is covered, found the reasoning of that 1984 decision unpersuasive stating, in part due to the 1989 rule, that "events have bypassed Mackey."

In the most recent appellate decision on the issue, the Sixth Circuit followed the Seventh Circuit joining the long line of courts that have upheld HUD's jurisdiction and, on May 1, 1995, found that the Fair Housing Act complements rather than conflicts with state laws or the McCarran-Ferguson Act. In a suit filed by the Nationwide Insurance Company contesting HUD's authority to investigate an allegation of insurance discrimination under the Fair Housing Act, Nationwide Mutual Ins. Co. v. Cisneros, No. 94-3296 (6th Cir. May 1, 1995), the court

3

stated, "we conclude that HUD's interpretation of the Fair Housing Act is consistent with goals of the Fair Housing Act and a reasonable interpretation of the statute . . . we hold that the McCarran-Ferguson Act does not preclude HUD's interpretation of the Fair Housing Act." On February 20, 1996, the Supreme Court denied the petition from Nationwide Insurance Company seeking the court's review of the May 1, 1995, decision. The Supreme Court had previously denied certiorari on a petition to review the Seventh Circuit decision in the American Family case.

The Department of Justice made clear its agreement with HUD when it recently applied the Fair Housing Act to property insurance discrimination in settling a complaint filed under the Act against the American Family Mutual Insurance Company (American Family). On March 30, 1995, the Department of Justice announced a consent decree that obligated American Family to take actions totalling $16 million.

### State Insurance Laws that Address Discrimination in Property Insurance

Most state insurance codes address issues pertaining to unfair discrimination. But these state insurance laws generally lack the protection provided by the Fair Housing Act. Often, the Federal law provides broader coverage, different procedural rights (e.g., private right of action in the Federal courts, an investigation by HUD to determine if there is reasonable cause to believe that a violation has occurred, representation by the Federal government in an administrative hearing or before a Federal court), and more comprehensive remedies (e.g. civil penalties and punitive damages) than are available under state law. Clearly the Federal Fair Housing Act provides additional protection, rather than duplication of state laws. Moreover, the Justice Department argued in its brief to the Supreme Court in the Nationwide case that the mere fact that a state regulates insurance does not prevent the application of a general federal statute to insurance practices.

Even in states whose civil rights laws address discrimination in property insurance, protection equal to the Fair Housing Act is all too often lacking. Currently, only 29 states have laws and enforcement mechanisms that have been certified as substantially equivalent to the Federal Fair Housing Act.

Some states have also enacted anti-redlining laws. Again, many of these laws fail to provide the full protection guaranteed by the Fair Housing Act. The National Association of Insurance Commissioners (NAIC) recently reviewed state insurance anti-redlining legislation nationwide. In 22 states, the NAIC found no anti-redlining provisions -- including some of the largest states like Massachusetts, New Jersey, Washington, and Indiana.

4

The document "State Laws Governing Unfair Discrimination in Insurance" which was inserted in the record of the Senate Appropriations Subcommittee on VA/HUD and Independent Agencies hearing on May 19, 1995, further reveals critical gaps in state law. Although 17 states list various protected groups, each excludes one or some of the groups covered by the Federal Fair Housing Act. For example, familial status is excluded in 16 states, and handicap is excluded in 15. In 3 of the 17 states, discrimination is prohibited if the adverse action is based "solely" on protected class membership. Under the Fair Housing Act, discrimination against a protected class member is prohibited even where that is not the only reason for the challenged practice.

### Procedures for Investigating Complaints

When a complaint is received by HUD, it is analyzed to determine whether it falls within the authority of HUD under the Fair Housing Act. If the alleged violation occurs in a state whose laws are substantially equivalent to the Fair Housing Act HUD will refer the matter to the appropriate state entity for processing, as required by the Federal Act. Otherwise, HUD conducts the investigation.

As part of our investigative procedures, HUD contacts the state insurance commissioner, as well as the National Association of Insurance Commissioners. To date, the Department has contacted insurance commissioners in Georgia, Illinois, Ohio, and Wisconsin. Most of the insurance commissioners have been very cooperative with our investigations. HUD has also received an inquiry from the Illinois Department of Insurance regarding our investigation of a complaint against an insurance company domiciled in that state. Copies of the letter from the Illinois Department of Insurance and our response are enclosed.

HUD does not enforce, nor does HUD have jurisdiction to enforce, state insurance laws. Nor do the state insurance commissioners have authority to enforce fair housing law requirements. HUD is obligated to investigate discrimination under the Fair Housing Act and if a state were to request our investigation of an alleged violation of Federal law, it would be treated as any other complaint. To date, no state insurance commissioner has filed a complaint with HUD.

### If the Department Has Considered Eliminating or Reducing Federal Regulation of Property Insurance Discrimination

On January 17, 1994, President Clinton issued Executive Order 12892 explicitly referring to property insurance discrimination and directing the Department to promulgate further regulations applying the Fair Housing Act to property insurance.

5

In August 1995, the Office of Fair Housing and Equal Opportunity announced it would not pursue further work towards the promulgation of a property insurance regulation providing additional guidance on property discrimination prohibited by the Act. At that time the Department stated that instead it will await further development of the law and use future court decisions to evaluate the need for additional rulemaking. In so doing, HUD made clear that it would continue to carry out existing regulations as they define discrimination in insurance under the Fair Housing Act, and will continue to provide protection to those whose rights have been violated.

Again, I want to thank you for your expressed concern on a serious matter of mutual interest. I look forward to working with you in developing appropriate responses to this critical problem.

I hope the information provided is helpful.

Sincerely,

Henry G. Cisneros

Enclosures

cc:
Senator Mikulski