## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, <br><br> Defendants. | Civil Action No. 13-cv-966 (RJL) |

## DECLARATION OF PETER SCHWARTZ IN SUPPORT OF
### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I, Peter Schwartz, submit this declaration pursuant to 28 U.S.C. § 1746, and state as follows:

1. I am over eighteen years of age and am not suffering under any legal or physical disability.

2. I am employed by The Travelers Indemnity Company as Senior Vice President and Group General Counsel, Corporate Litigation. In that capacity, I have responsibility for litigation involving The Travelers Indemnity Company and its subsidiaries and affiliates, including Travelers Casualty Insurance Company of America ("Travelers Casualty").

3. I submit this affidavit in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Or, In The Alternative, For Summary Judgment And Reply In Support Of Plaintiffs' Motion For Summary Judgment. I am testifying to the statements below based on my personal knowledge of the matters described herein and/or information provided to me by

appropriate personnel. In submitting this affidavit, I did not rely on any privileged communications or work product. I am not authorized to waive, do not waive, and do not intend to waive any privilege or work product protection that Travelers Casualty or any of its affiliates has or may have, and all such privileges and/or protections are expressly reserved.

4.    Travelers Casualty is a member of the American Insurance Association, and certain of its affiliates provide homeowner's insurance in 49 states and the District of Columbia.

5.    On July 18, 2013, the Assistant Secretary for the Office of Fair Housing and Equal Opportunity of the United States Department of Housing and Urban Development ("HUD") served Travelers Casualty with a formal complaint. HUD also served data requests on Travelers Casualty in connection with its complaint. A true and correct copy of HUD's data request is attached as Exhibit A.

6.    The complaint indicates that HUD is investigating Travelers Casualty for allegedly engaging in discriminatory practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601-3619. Travelers Casualty does not provide residential housing to any individual, and the HUD Complaint does not concern any insurance that Travelers Casualty is alleged to have provided directly to any residential homeowner or tenant. Rather, HUD is investigating Travelers Casualty for the non-renewal of a property and casualty liability policy issued to a trust which owns a multi-family property ("the Jones Trust"). The HUD complaint alleges that Travelers Casualty may have "otherwise den[ied] or ma[de] housing unavailable" on the basis of race, handicap, and familial status in violation of the Fair Housing Act. Travelers Casualty denies these allegations.

7.     HUD has asserted that Travelers Casualty may have liability under a disparate impact theory, implicating the February 2013 regulations promulgated by HUD. As discussed further below, Travelers Casualty denies HUD's claims. Travelers Casualty does not discriminate—either against landlords, tenants, or homeowners—on the basis of race, handicap, or familial status.

8.     In connection with this investigation, HUD has served Travelers Casualty with additional, broad requests for data and information related to Travelers Casualty and its affiliates' insurance products and underwriting practices. A true and correct copy of HUD's October 31, 2013 "Additional Data Request" served on Travelers is attached as Exhibit B.

9.     As set forth in HUD's latest data requests, HUD is seeking extensive information from Travelers Casualty as well as its affiliates. For example, HUD is seeking information not just about the policy issued to this particular trust, but, in addition:

- Documents relating to Travelers Casualty's loss experience associated with insuring residential rental properties occupied by Section 8 tenants  (Ex. B, No. 14);

- Documents relating to Travelers Casualty's loss experience associated with insuring subsidized, public, or government funded complexes  (*id.*, No. 16);

- "[C]opies of all reports, studies, research, analyses, assessments, memoranda, statistics, loss experience or other data that Travelers Casualty or its affiliate companies produced, authored, commissioned, and/or funded" concerning the effects limiting or restricting coverage to subsidized, public, or government funded complexes or residential rental properties with Section 8 tenants (*id.*, Nos. 17-18);

- Documents constituting, reflecting or discussing the denial or refusal of Travelers Casualty or its affiliated companies to insure any subsidized, public or government funded complexes, or residential rental properties with Section 8 tenants, under certain Travelers Casualty property and casualty policies (*id.*, Nos. 19-20);

- Lists of all products, policies, and/or programs that Travelers Casualty offers to residential rental properties that do not contain an exclusion regarding Section 8 tenants (*id.*, No. 21);

- Lists of all products, policies, and/or programs that Travelers Casualty offers to subsidized, public, or government funded complexes (*id.*, No. 22).

3

10. As a result of HUD's investigation, Travelers Casualty has had to retain counsel and expend time and resources investigating and responding to HUD's allegations and its multiple data requests. These costs are ongoing. Attached as Exhibit C is a true and correct copy of a notice Travelers received from HUD extending the projected date for completion of HUD's investigation to September 30, 2014.

11. On August 22, 2013, HUD served Travelers Casualty with another complaint, initiated by Lincoln Jones, Jr. and Muyesser Nile Jones, the same landlords who comprise the Jones Trust that allegedly owns the two apartment buildings referenced in HUD's complaint noted above. Like the original HUD complaint, this complaint alleges that a practice of Travelers Casualty may have resulted in Travelers Casualty "otherwise den[ying] or ma[king] housing unavailable" to tenants on the basis of race, handicap, and familial status.

12. On August 23, 2013, HUD served Travelers Casualty with a third complaint, this one initiated by an organization called Project Sentinel.

13. The Project Sentinel complaint alleges that Project Sentinel is a non-profit organization that it asserts seeks "to ensure fair housing." According to its homepage, Project Sentinel is a "HUD-Approved Housing Counseling Agency." *See* http://housing.org/about-us/. As a HUD-Approved Housing Counseling Agency, Project Sentinel receives funding from HUD. HUD's public filings indicate that HUD has provided hundreds of thousands of dollars in funding to Project Sentinel to investigate housing discrimination complaints and to refer

complaints to HUD and state enforcement agencies. *See, e.g.*, http://archives.hud.gov/news/2005/pr05-

157.cfm; http://portal.hud.gov/hudportal/HUD?src=/states/california/news/HUDNo.2012-03-16.

     14.    Project Sentinel's complaint alleges that Travelers Casualty's

underwriting practices result in unlawful discrimination on the basis of race, handicap, and

familial status.  Project Sentinel further alleges that:

> Project Sentinel . . . engaged in education and outreach efforts, including mailing
> letters and informational flyers to public housing authorities, local landlords and
> apartment organizations throughout California, alerting them to the fair housing
> issues related to [Travelers Casualty's alleged] refusal to insure buildings with
> Section 8 tenants.  In those mailings, Project Sentinel described the disparate
> impact [Travelers Casualty's] policy has on persons protected under the Fair
> Housing Act and urged recipients to contact the state insurance commissioner to
> help stop the practice.

     15.    On May 28, 2013, Travelers was served with a summons and complaint in

an action filed in the United States District Court for the Northern District of California by the

Joneses, the Jones Trust and Project Sentinel.  The Plaintiffs allege, *inter alia*, that Travelers

Casualty violated the Fair Housing Act by refusing to insure residential rental properties with

tenants receiving housing subsidies, thereby causing a disparate impact and discriminating

against certain protected classes by making housing unavailable to them.  A true and correct

copy of the First Amended Complaint is attached as Exhibit D.  *See Jones, et al. v. Travelers Ins.

Co. of Am.*, No. 5:13-cv-02390-LHK, Doc. No. 13 (Aug 6, 2013), at ¶ 22.

     16.    Travelers Casualty has had to retain counsel and expend time and

resources to defend itself in this litigation.  These costs are ongoing.

     17.    Travelers Casualty denies HUD's allegations as well as the allegations in

each of the complaints initiated by the Joneses, the Jones Trust, and Project Sentinel.  Neither

Travelers Casualty nor any of its affiliates discriminates on the basis of race, color, religion,

national origin, sex, handicap, or familial status.

18.    Although Travelers Casualty does not agree that there is any merit to the claims being investigated by HUD or the claims being pursued by the private litigants with the assistance of HUD, and contends that Travelers Casualty has numerous factual and legal defenses to these claims, Travelers Casualty has expended and will continue to expend time, effort, money and resources defending against HUD's investigation and the related litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 24, 2014
Hartford, Connecticut

# EXHIBIT A

**DATA REQUEST LIST**

1.    State the legal name of your business and any other name(s) under which you do
or have conducted business in the transactions that are alleged in the complaint.

2.    State type of legal business entity you are (i.e., corporation, general partnership,
limited partnership, sole proprietorship, etc.) Also identify any agent for service
of process along with his or her contact information.

3.    List all persons and/or firms involved in the transactions alleged in the complaint
by name, address, telephone number, job title, and management responsibility;
include in this list the person acting as agent and the person(s) who inspected the
subject property and any adjacent properties. Also identify any agents for service
of process for business entities along with his or her contact information.

4.    State any facts that you assert in response to the allegations in the complaint.
Please state these facts chronologically by date.

5.    Identify any documents that support the facts referred to in your response to this
data request letter. Describe these documents chronologically so that they can be
identified and include a copy of these documents if possible. In addition, state the
present location of each of these documents and the name, address and telephone
number for the custodian of these documents.

6.    Submit a copy of any documents or the contents of any file in your control
concerning the complainant(s) and/or the subject property as listed in the
complaint form.

7.    Submit a copy of or describe your written policy, standard or criteria for approval
or rejection of applications for insurance coverage and for the determination of
rates. Please include in your description any policy, standard or criteria regarding
the following:

    a.    the impact of the following on insurance coverage or cancellation of
insurance or the determination of rates as it relates to subject properties
and/or adjacent properties:

        1.    the condition of properties,
        2.    the history of coverage and claims,
        3.    the history of damages (including wind damage),
        4.    the history of criminal activity,
        5.    the history of vandalism,
        6.    the record of maintenance,
        7.    the presence of abandoned and/or stripped vehicles,
        8.    evidence of poor attitudes toward the protection of property,

       9.     the nature of the surrounding neighborhood,

      10.    the nature of fire protection,

      11.    the age of properties,

      12.    the presence of criminal elements, and

      13.    the presence of vandalism.

b.     The factors considered in offering "preferred" rates and "standard" rates for coverage of a property.

8.     Please describe the procedure by which you approve or reject applications for insurance or determine rates. Please include in your description the circumstances under which applicants for insurance coverage or insured are:

     a.     quoted a rate (please provide a copy of a blank document which accomplishes this, if possible),

     b.     submitted for approval to quote a rate (please provide a copy of any document which accomplishes this, if possible),

     c.     informed of any other type of coverage or rate with either the same carrier or a different carrier,

     d.     subject to having their history of coverage or cancellation evaluated, and

     e.     subject to having their property or adjacent properties inspected.

9.     Please provide a list of insured by name, address, date insured, and any cancellations or rate changes for the city named in item 5 of the complaint form for the twelve month period preceding the date of the alleged violation (item 8 of the complaint form) for properties over twenty residential units.

10.    State whether at any time your organization or any of its subsidiaries have been a party in any lawsuit or enforcement action brought under any fair housing law or civil rights act in any court of law or any governmental agency in the past three years. If so, state the title or caption of the case, the case number, the name of the court or governmental agency where it was filed, the date of filing, a brief summary of the allegations and the outcome.

11.    Is there any change in condition in the subject property from the time of application for coverage to the time of cancellation of coverage? If so, please identify these changes and state their impact on the events alleged in the complaint, including the following factors:

     a.     the rates quoted,

     b.     the granting of a "preferred" rate or a standard rate,

     c.     the cancellation of coverage.

12.     Please provide a copy of any report or other document that stated the results of any inspection of the subject property on which the subject denial, cancellation and/or rate increase was based.

13.     Please state whether any party filed any claims with the respondents concerning the subject property. If there were any claims filed, please describe the subject of the claim, the amount of damage claimed, the amount paid out on the claim by the respondent in satisfaction, the dates of filing of any claim, and the final disposition of the claim.

Revised 10/03/2002



# EXHIBIT B



**U.S. Department of Housing and Urban Development**
Office of Fair Housing and Equal Opportunity
San Francisco Regional Office - Region IX
600 Harrison Street, 3rd Floor
San Francisco, California   94107-1387
Office:  800.347.3739  Fax:  415.489-6560
Office:  415.489-6524  TTY:  415.489-6554

Website:  http://www.hud.gov
Website:  español.hud.gov

Via U.S. mail and email to eschwartz@steptoe.com; jquinnba@steptoe.com

Edward B. Schwartz
Jennifer Quinn-Barabanov
Steptoe & Johnson LLC
1330 Connecticut Avenue NW
Washington, DC 20036

October 31, 2013

SUBJECT:     Additional Data Request
*Assistant Secretary v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-0890-8
*Project Sentinel v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-1058-8
*Jones v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-1061-8

Dear Mr. Schwartz and Ms. Quinn-Barabanov:

The enclosed data request, directed to you in your capacity as representative of Travelers Casualty Insurance Company of America ("Travelers Casualty") in the above-entitled matters, is sent pursuant to the above-referenced housing discrimination complaints filed with our office on or about 7/16/13, 8/19/13, and 8/20/13 respectively.  The Department is requesting additional information from Travelers Casualty pursuant to our investigation of the matters.  This may not be all of the information that we require. Additional information may be requested subsequently.

We ask that this information be provided within ten (10) days of the date of this letter.

The Bates numbers noted in the attached Additional Data Request refer to the documents provided by Travelers Casualty in response to the above-referenced complaint.

The terms "Section 8" and "Section 8 tenants" as used in the attached Additional Data Request refer to the federal Housing Choice Voucher program.

The term "Master Pac/Apartment Pac" as used in the attached Additional Data Request refers to the Apartment Pac program or subcategory of Travelers Casualty's Master Pac business owners policy or program.

The term "subject properties" as used in the attached Additional Data Request refers to the properties located at 1883 Cody Way, San Jose, CA 95124, 1895 Cody Way, San Jose, CA 95124, and 2590 Coit Drive, San Jose, CA 95124.

The term "affiliated companies" refers to those companies operating, along with Travelers Casualty, under NAIC Group Code 3548.

Please forward the information to the following address:

> U.S. Department of Housing and Urban Development
> Office of Fair Housing and Equal Opportunity
> Attn: Catherine Ross-Perry
> 600 Harrison Street, 3rd Floor
> San Francisco, CA 94107

Thank you in advance for your cooperation in this matter. Should you have any questions or concerns, please contact Equal Opportunity Specialist Catherine Ross-Perry at (415) 489-6555, or by email to catherine.j.ross-perry@hud.gov.

Very sincerely yours,

_for_ Jesse Webster
Enforcement Branch Chief
Office of Fair Housing & Equal Opportunity

Additional Data Request
*Assistant Secretary v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-0890-8
*Project Sentinel v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-1058-8
*Jones v. Travelers Casualty Insurance Company of America*
HUD Case Number: 09-13-1061-8

## Additional Data Request

1. If not already provided, please provide any document that mentions, comments upon, concerns, or refers to Lincoln Jones, Jr., Muyesser Nile Jones, and/or the Lincoln & Muyesser N Jones Trust, and/or their Apartment Pac policy [Bates 0000001-0000152].

2. Please provide any document that mentions, comments upon, concerns, or refers to Project Sentinel.

3. If not already provided, please provide any document that mentions, comments upon, concerns, or refers to the subject properties.

4. If not already provided, please provide all underwriting guidelines for the Master Pac/Apartment Pac policy or program used by Travelers Casualty or its affiliated companies at any time since January 1, 2010.

5. Please provide a written statement setting forth all of the rationales, reasons, and/or bases for the exclusion of "subsidized, public, or government funded complexes" as set forth in Travelers Casualty Ineligible Operations, Products or Services – Apartment Pac [Bates 0000168] from the Master Pac/Apartment Pac policy or program.

6. Please provide a written statement setting forth the definition of "subsidized, public, or government funded complexes" as applied to the Master Pac/Apartment Pac program, including an explanation of what types of housing are included.

7. Please provide copies of any documents that define, clarify, explain, or discuss the meaning of the phrase "subsidized, public, or government funded complexes" as set forth in Travelers Casualty Ineligible Operations, Products or Services – Apartment Pac [Bates 0000168]., including any documents that  define, clarify, explain, or discuss what types of housing are considered "subsidized, public, or government funded complexes" for purposes of eligibility for the Master Pac/Apartment Pac policy or program.

8. If you contend that any or all of the three property addresses comprising the subject properties were "governmental subsidized housing" as set forth in the Travelers Casualty Notice of Non-renewal dated 11/16/12 [Bates 0000148-0000152], please provide any documents supporting the contention.

9. Please provide a written statement setting forth all of the rationales, reasons, and/or bases for the exclusion of residential rental properties with Section 8 tenants from the Master Pac/Apartment Pac policy or program.

10. If not already provided, please provide copies of any documents stating or indicating the policy, guidelines, rules, or standards regarding the eligibility of residential rental properties occupied by Section 8 tenants for the Master Pac/Apartment Pac program, including but not limited to any documents that reference or indicate rules, guidelines, standards, or factors regarding the eligibility of residential rental properties with respect to percentage or number of Section 8 tenants occupying the properties.

11. Please provide copies of all reports, studies, research, analyses, memoranda, statistics, loss experience or other data that Travelers Casualty or its affiliate companies relied on, reviewed, or considered in setting, adopting, and/or implementing the eligibility or underwriting guidelines for the Master Pac/Apartment Pac policy or program with respect to residential rental properties with Section 8 tenants, including but not limited to any document authored, prepared, complied, funded, received or obtained by Travelers Casualty or its affiliated companies.

12. Please provide copies of all reports, studies, research, analyses, memoranda, statistics, loss experience or other data that Travelers Casualty or its affiliate companies relied on, reviewed, or considered in setting, adopting, and/or implementing the eligibility or underwriting guidelines for the Master Pac/Apartment Pac policy or program with respect to subsidized, public, or government funded complexes, including but not limited to any document authored, prepared, complied, funded, received or obtained by Travelers Casualty or its affiliated companies.

13. Please provide copies of any document supporting the position that the underwriting or eligibility guideline adopted or applied by Travelers Casualty or its affiliated companies, restricting or limiting eligibility of residential rental properties with Section 8 tenants for the Master Pac/Apartment Pac policy or program, is based on actual or reasonably anticipated loss experience.

14. Please produce any document related to or showing actual or reasonably anticipated loss experience associated with insuring residential rental properties occupied by Section 8 tenants.

15. Please provide copies of any document supporting the position that the underwriting or eligibility guideline adopted or applied by Travelers Casualty or its affiliated companies, making "subsidized, public, or government funded complexes" as set forth in Travelers Casualty Ineligible Operations, Products or Services – Apartment Pac [Bates 0000168] ineligible for the Master Pac/Apartment Pac policy or program, is based on actual or reasonably anticipated loss experience.

16. Please produce any document related to or showing actual or reasonably anticipated loss experience associated with insuring "subsidized, public, or government funded complexes."

17. Please provide copies of all reports, studies, research, analyses, assessments, memoranda, statistics, loss experience or other data that Travelers Casualty or its affiliate companies produced, authored, commissioned, and/or funded after restricting or limiting eligibility for the Master Pac/Apartment Pac policy or program for residential rental properties with Section 8 tenants, measuring, assessing, discussing, or evaluating the effects of the restriction or limitation of residential rental properties with Section 8 tenants from the Master Pac/Apartment Pac policy or program, including but not limited to the effects on loss experience.

18. Please provide copies of all reports, studies, research, analyses, assessments, memoranda, statistics, loss experience or other data that Travelers Casualty or its affiliate companies produced, authored, commissioned, and/or funded after restricting eligibility for the Master Pac/Apartment Pac policy or program for subsidized, public, or government funded complexes, measuring, assessing, discussing, or evaluating the effects of the exclusion of subsidized, public, or government funded complexes from the Master Pac/Apartment Pac policy or program, including but not limited to the effects on loss experience.

19. Please produce any document constituting, reflecting, or discussing the denial or refusal by Travelers Casualty or its affiliated companies to insure any residential rental property under the Master Pac/Apartment Pac policy or program because the applicant for insurance rented to Section 8 tenants, at any time since August 20, 2010.

20. Please produce any document constituting, reflecting, or discussing the denial or refusal by Travelers Casualty or its affiliated companies to insure any subsidized, public, or government funded complexes under the Master Pac/Apartment Pac policy or program, at any time since August 20, 2010.

21. Please provide a list of any and all products, policies, and/or programs that Travelers Casualty offers to residential rental properties, which do not contain an exclusion or limitation regarding Section 8 tenants.

22. Please provide a list of any and all products, policies, and/or programs that Travelers Casualty offers to subsidized, public, or government funded complexes.

# EXHIBIT C



**U.S. Department Of Housing and Urban Development**
Region IX Office
600 Harrison Street, 3rd Floor
San Francisco, CA 94107-1387


January 7, 2014

Travelers Casualty Insurance Company of America
c/o CSC - Lawyers Incorporating Service (ASP)
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

Dear Respondent:

Subject:  Housing Discrimination Complaint
          Jones v. Travelers Casualty Insurance Company of America
          Inquiry No.  365592
          HUD Case No.  091310618


    This is to advise you that the investigation of the above referenced complaint
has not been completed within 100 days from the filing of the complaint.  Completion
within 100 days is impracticable because there is a need to:

    _X_ 1. complete interviews with parties and/or witnesses

    ___ 2. subpoena (formally request) documents related to the investigation or
           arrange other formal information gathering

    ___ 3. conduct an on-site investigation

    _X_ 4. conduct more investigation because the information gathered so far shows
           a need for more investigation and analysis

    ___ 5. include other HUD program offices and/or State, local or other federal
           agencies in the investigation

    _X_ 6. make additional efforts to conciliate (settle) the complaint

    _X_ 7. determine whether there is further support for information provided by
           parties or witnesses

    _X_ 8. analyze issues involving new or complicated areas of law

    ___ 9. conduct a legal analysis of information gathered during the investigation

    ___ 10. allow additional review by the United States Department of Justice or
            State and Local legal agencies

    ___ 11. finish writing a report of the investigation

___ 12. amend the complaint to add or delete parties or claims or make other changes

___ 13. special issues have come up in this case requiring additional time.

At this time, the projected date for completion of the investigation of this case is September 30, 2014. This date, however, is subject to change because we cannot always predict what additional information or further action may be necessary to ensure that a comprehensive and impartial investigation has been conducted. If you have not heard from the investigator in this case regarding completion of the investigation by this date, feel free to call the investigator for an update on the investigation.

If there is a need for additional information from you directly, you will be contacted. We would appreciate your continuing cooperation should there be a need for additional investigation or conciliation.

If you have any questions regarding this case or wish additional information about the reasons why completion of the investigation within 100 days is impracticable, please contact the office the complaint was filed or the investigator assigned to this case at:

> Office of Fair Housing and Equal Opportunity
> 600 Harrison Street, 3rd Floor
> San Francisco, CA 94107-1387

> Ms. Cathy Ross-Perry  Phone: (800) 347-3739

We can respond more expeditiously to your concerns if you have your complaint number whenever you contact us.

Sincerely,

*Anne Quesada*

> Anne Quesada
> Regional Director
> Office of Fair Housing and
> Equal Opportunity

> Phone: (800) 347-3739

091310618

# EXHIBIT D

1   BRANCART & BRANCART
      Elizabeth Brancart (SBN 122092)
2     *ebrancart@brancart.com*
      Christopher Brancart (SBN 128475)
3     *cbrancart@brancart.com*
    P.O. Box 686
4   Pescadero, CA  94060
    Tel:   (650) 879-0141
5   Fax:   (650) 879-1103

6   Attorneys for Plaintiffs

7                    **UNITED STATES DISTRICT COURT**

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9                          **SAN JOSE DIVISION**

10

11  **LINCOLN JONES, JR. and**          )   **Case No. 5:13-cv-02390-LHK**
    **MUYESSER NILE JONES,**            )
12  **individually and as trustees of**  )   **FIRST AMENDED COMPLAINT**
    **the Lincoln and M. Nile Jones**    )
13  **Revocable Trust; and**             )
    **PROJECT SENTINEL, INC.,**          )
14                                       )
              **Plaintiffs,**            )
15                                       )
         **vs.**                         )
16                                       )
    **TRAVELERS CASUALTY**               )
17  **INSURANCE COMPANY**                )
    **OF AMERICA,**                      )
18                                       )
              **Defendant.**             )
19  _____        )

20                        **I.  INTRODUCTION**

21        1.      Plaintiffs Lincoln Jones, Jr. and Muyesser Nile Jones, local landlords,

22  and Project Sentinel, Inc., a local fair housing agency, sue defendant Travelers

23  Casualty Insurance Company of America for refusing to insure the dwellings

24  owned by landlords who rent to tenants using Section 8 vouchers to help pay their

25  rent.  Plaintiffs claim that Travelers' refusal to insure discriminated on the basis of

26  sex, race, disability, familial status and age by making housing otherwise

27  unavailable and by interfering with the fair housing rights of landlords and their

28  current and potential Section 8 tenants in violation of the federal Fair Housing Act

1  and California Fair Employment and Housing Act.

2  ## II.  **JURISDICTION AND VENUE**

3  2.       Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331

4  in that the claims alleged herein arise under the laws of the United States.  The

5  Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and

6  determine plaintiffs' state claims because those claims are related to plaintiffs'

7  federal law claims and arise out of a common nucleus of related facts.  Plaintiffs'

8  state law claims are related to plaintiffs' federal law claims such that those claims

9  form part of the same case or controversy under Article III of the United States

10  Constitution.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that

11  the matter in controversy exceeds the sum or value of $75,000, exclusive of

12  interest and costs, and is between citizens of different States.

13  3.       Venue is proper pursuant to 28 U.S.C. § 1391(b) in that the claims

14  alleged herein arose within Santa Clara County, California.

15  ## III.  **INTRADISTRICT ASSIGNMENT**

16  4.       Assignment to the San Jose Division is proper pursuant to Local Rule

17  3-2 because the action arose in Santa Clara County.

18  ## IV.  **PARTIES**

19  5.       Plaintiffs Lincoln Jones, Jr. and Muyesser Nile Jones, a married

20  couple, own and operate two small apartment buildings located in San Jose,

21  California, which they hold in the name of the Lincoln and M. Nile Jones

22  Revocable Trust.  Mr. and Mrs. Jones are the trustees and trustors of that trust.

23  Mr. and Mrs. Jones are citizens of the State of California.

24  6.       Plaintiff Project Sentinel, Inc. is  a nonprofit corporation with a

25  mission of fostering diversity and equal opportunity in housing.  It has several

26  offices in Northern California and is headquartered in Santa Clara, California.  It

27  provides fair housing services, among other things, throughout Santa Clara

28  County.  One of its specific purposes and goals is the elimination of all forms of

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

2

illegal housing discrimination.  To this end, Project Sentinel's activities include, but are not limited to: (1) investigating allegations of discrimination; (2) conducting tests of housing facilities to determine whether equal opportunity in housing is provided; (3) taking such steps as it deems necessary to assure such equal opportunity and to counteract and eliminate discriminatory housing practices; and, (4) providing outreach and education to the community regarding fair housing.  Project Sentinel is a corporation incorporated under the laws of the State of California with its principal place of business in that State.

7.     Travelers Casualty Insurance Company of America ("Travelers") is an insurance company authorized to do business in California.  Travelers is a corporation incorporated under the laws of the State of Illinois with its principal place of business in the State of Connecticut.

## V.  FACTS

### A.  THE SECTION 8 PROGRAM

8.     The Housing Choice Voucher Program (hereinafter referred to as "Section 8") is the federal government's largest program for assisting very low-income families, the elderly, and the disabled to afford decent, safe, and sanitary housing in the private market.  Under that program, local public housing authorities ("PHAs") receive federal funds from the United States Department of Housing and Urban Development to issue Section 8 vouchers to qualified persons and administer the program.  The recipient of the Section 8 voucher is free to choose any housing that meets the requirements of the program, including apartments, townhouses and single-family homes, and is not limited to units located in subsidized housing projects.

9.     When a person or family is issued a Section 8 voucher, they are responsible for finding a suitable dwelling of their choice where the owner agrees to rent under the Section 8 program.  Rental dwellings must meet minimum standards of health and safety and rental charges may not exceed certain ceilings

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

3

1   as determined by the PHA.  Once the PHA approves a dwelling, the voucher

2   holder and the landlord sign a lease and, at the same time, the landlord and the

3   PHA sign a housing assistance payments contract, which runs for the same term as

4   the lease.

5          10.    The PHA pays the Section 8 housing subsidy to the landlord directly

6   on behalf of the voucher holder.  The voucher holder is then responsible for

7   paying the difference between the actual rent charged by the landlord and the

8   amount subsidized by the Section 8 program.

9                          **B.  THE CODY WAY APARTMENTS**

10         11.    Since the 1980s, plaintiffs Lincoln and Muyesser Jones have owned

11  two apartment buildings located in San Jose, California – a ten-unit building

12  located at 1883 Cody Way and a seven-unit building located at 1895 Cody Way

13  (the "Cody Way apartments").

14         12.    For more than a decade, Mr. and Mrs. Jones have rented dwellings at

15  the Cody Way apartments to persons who utilize Section 8 vouchers to help make

16  their rental payments.  In each instance, Mr. and Mrs. Jones have entered into

17  housing assistance payments contracts with the Housing Authority of the County

18  of Santa Clara, the local PHA serving San Jose and Santa Clara County.  For Mr.

19  and Mrs. Jones, the Section 8 program is an important source of tenants and steady

20  source of revenue.

21         13.    At all times since they have owned and operated the Cody Way

22  apartments, Mr. and Mrs. Jones have maintained policies of property and liability

23  insurance on both properties.  Property insurance is required as a condition for

24  their mortgage loans on the Cody Way apartments.  Before purchasing insurance

25  from Travelers, Mr. and Mrs. Jones had insured the Cody Way apartments with the

26  same insurance company for almost ten years.  During that period of time, they

27  never made or had a claim made under their policies.

28         14.    Prior to the expiration of their existing insurance policies in February

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

4

2012, an insurance broker solicited Mr. and Mrs. Jones, suggesting that they could obtain lower premiums for the Cody Way apartments with another insurance company. In response, Mr. and Mrs. Jones switched insurers, purchasing policies on both of the Cody Way properties for the policy period from February 1, 2012 to February 1, 2013, from Travelers. The policies included property and liability coverage.

15. In August 2012, a visitor to a resident of one of the Cody Way apartments units slipped and fell on the stairs. Upon learning of the incident, Mrs. Jones notified Travelers of the possibility of a claim, although no claim was ultimately made by the visitor. In the course of investigating the possible claim, Travelers became aware that Mr. and Mrs. Jones had Section 8 tenants renting at the Cody Way apartments.

16. On November 16, 2012, Travelers notified Mr. and Mrs. Jones that Travelers would not be renewing the policies for the Cody Way apartments. Travelers' stated reason for non-renewal was the fact that the Cody Way apartments had Section 8 tenants. The non-renewal was effective February 1, 2013. Travelers' decision to cancel the insurance on the Cody Way apartments based solely on the presence of their Section 8 tenants surprised and upset Mr. and Mrs. Jones.

17. In December 2012, Mr. and Mrs. Jones received notice from their mortgage company notifying them that it had received notice that the insurance policies on the Cody Way apartments had been cancelled or not renewed. The mortgage company advised Mr. and Mrs. Jones that they were required to have insurance on the properties as a condition for their mortgage loans.

18. Mrs. Jones immediately began searching for replacement insurance coverage. She encountered difficulty finding replacement insurance and, as Travelers' cancellation deadline drew closer, Mrs. Jones became increasingly anxious that she would be unable to find affordable replacement insurance. Mrs.

1   Jones finally was able to secure replacement insurance in February 2013, though

2   the premiums were more expensive than those paid under their cancelled Travelers

3   policies.

4                    **C. PLAINTIFFS CONTACT PROJECT SENTINEL**

5          19.    On December 14, 2012, Mrs. Jones contacted Project Sentinel

6   concerning Travelers' cancellation of the insurance on the Cody Way apartments

7   because of occupancy by Section 8 tenants.  Project Sentinel investigated Mrs.

8   Jones' complaint and counseled her regarding her fair housing rights.  Project

9   Sentinel engaged in education and outreach efforts, including mailing letters and

10  informational flyers to PHAs, local landlords and apartment owner organizations

11  throughout California, alerting them to the fair housing issues related to Travelers'

12  refusal to insure buildings with Section 8 tenants.  In those mailings, Project

13  Sentinel described the disparate impact Travelers' policy has on persons protected

14  under the Fair Housing Act and urged the recipients to contact the state insurance

15  commissioner to help stop the practice.

16                   **D. DISCRIMINATORY HOUSING PRACTICES**

17         20.    Travelers engages in a pattern or practice of discrimination in

18  violation of the federal and state fair housing laws.  Travelers' discriminatory

19  housing practices include, but are not limited to, the following:

20         a.     Refusing to provide property or hazard insurance for dwellings

21         because of race, sex, disability, familial status and age;

22         b.     Providing property or hazard insurance services differently because of

23         race, sex, disability, familial status and age;

24         c.     Refusing to provide property or hazard insurance for dwellings

25         because of the protected status of persons intending to reside in those

26         dwellings;

27         d.     Coercing persons, either orally, in writing, or by other means, to deny

28         or limit the benefits provided by that person in connection with the rental of

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

6

a dwelling because of race, sex, disability, familial status and age;

e.     Threatening or interfering with persons on account of their having aided or encouraged other persons to exercise or enjoy rights protected under the fair housing laws;

f.     Following a practice or policy that has a discriminatory effect by actually or predictably resulting in a disparate impact on persons on the basis of race, sex, disability, familial status and age; and,

g.     Following a practice or policy that creates, increases, reinforces or perpetuates segregated housing patterns because of race, sex, disability, familial status and age.

## E.  DISCRIMINATORY IMPACT

21.     The persons injured by Travelers' refusal to insure landlords who rent to persons using Section 8 vouchers include the landlords who already rent or seek to rent to persons using Section 8 vouchers as well as the Section 8 renters and rental applicants themselves.

22.     Travelers' practices actually or predictably result in a disparate impact on persons in classes protected by the fair housing laws, or create, increase, reinforce or perpetuate segregated housing patterns because of race, sex, disability, familial status and age.

23.     For example, the group of persons who use Section 8 vouchers to help pay their rent in Santa Clara County are:

•     Five times more likely to be a female headed household as compared to all renter households in Santa Clara County;

•     Three times more likely to be a black headed household as compared to all renter households in Santa Clara County;

•     Three times more likely to be headed by a householder over age 60 as compared to all renter households in Santa Clara County;

•     Two times more likely to be a household with at least one member

with a disability as compared to all households in Santa Clara County; and,

• Five times more likely to be a female headed household with children as compared to all households in Santa Clara County.

24. The group of persons who use Section 8 vouchers to help pay their rent in California are:

• Five times more likely to be a female headed household as compared to all renter households in California;

• Three times more likely to be a black headed household as compared to all renter households in California;

• Two times more likely to be headed by a householder over age 60 as compared to all renter households in California;

• Almost two times more likely to be a household with at least one member with a disability as compared to all households in California; and,

• Five times more likely to be a female headed household with children as compared to all households in California.

25. As a result, Travelers' policy or practice actually or predictably results in a significantly disproportionate impact on the basis of sex, race, disability, familial status and age on persons seeking to utilize Section 8 vouchers, making housing unavailable and interfering with the ability of landlords, including Mr. and Mrs. Jones, to offer housing opportunities to tenants and applicants protected under the federal and state fair housing laws.

## F. DISCRIMINATORY TREATMENT

26. In the United States as a whole, households participating in the Section 8 program are predominantly minority and predominantly female headed. In fact, almost 50% of those households are black and almost 50% are headed by females with children. In some cities, Section 8 households are overwhelmingly black and/or headed by single women with children. There is a widely held belief that the Section 8 program serves minorities.

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

8

27.     Plaintiffs' prefiling investigation indicates that Travelers has no reasoned basis in fact or experience to support its refusal to insure landlords who rent to Section 8 tenants.  Plaintiffs anticipate that a reasonable opportunity for discovery will support the conclusion that Travelers' refusal to insure apartment owners who rent to persons using Section 8 vouchers is based on perceptions of Section 8 voucher holders as minority, female-headed households and the associated negative stereotypes that such households are likely to cause damage to property and engage in criminal activity.

28.     By refusing to insure landlords like the Joneses, Travelers engages in "redlining" of landlords who rent to Section 8 tenants in the same way insurers have declined to write insurance for dwellings located in geographic areas that are in fact or perceived to be minority neighborhoods.  For Travelers, the presence of Section 8 tenants operates as a proxy for an undesirable risk based on Traveler's negative, stereotype-based assumptions in the same way other insurers have used a property's location in a minority neighborhood as a proxy to refuse to insure based on negative, stereotype-based assumptions concerning the residents of those neighborhoods.  The redlining of Section 8 buildings by Travelers necessarily and predictably results in discrimination against persons protected by the fair housing laws and Travelers knew or reasonably should have known that it would do so.

29.     Moreover, because more than one-half of Section 8 voucher households live in neighborhoods that are overwhelmingly minority, Travelers knew or should have known that its refusal to insure landlords who rent to Section 8 tenants would necessarily and predictably cause it to insure fewer dwellings located in minority neighborhoods, further redlining those neighborhoods and depriving them of necessary insurance services.

## G. INJURIES

30.     By reason of Travelers' discriminatory and unlawful practices, Lincoln and Muyesser Jones have suffered and will in the future suffer injury,

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

9

1  including economic losses, inconvenience, anxiety, embarrassment, humiliation

2  and other emotional distress and violation of their civil rights.  Accordingly, Mr.

3  and Mrs. Jones are entitled to compensatory damages.

4      31.    In doing the acts of which plaintiffs complain, Travelers and its

5  agents and employees intentionally or recklessly violated Mr. and Mrs. Jones'

6  federally protected rights and acted with malice and oppression.  Accordingly,

7  plaintiffs are entitled to punitive damages.

8      32.    Travelers' discriminatory and unlawful practices have impaired and

9  frustrated Project Sentinel's mission to eliminate discriminatory housing practices

10  and assure equal housing opportunities, and have required Project Sentinel to

11  devote resources to identify and counteract Travelers' unlawful practices.  Project

12  Sentinel seeks declaratory and injunctive relief only to remedy its injuries caused

13  by Travelers' policies.

14      33.    There now exists an actual controversy between the parties regarding

15  Travelers' duties under federal and state fair housing laws.  Accordingly, plaintiffs

16  are entitled to declaratory relief under federal and state law.

17      34.    Unless enjoined, Travelers and its agents or employees will continue

18  to engage in the unlawful acts and the pattern or practice of discrimination

19  described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now

20  suffering and will continue to suffer irreparable injury from Travelers' acts and the

21  pattern or practice of discrimination unless relief is provided by this Court.

22  Accordingly, plaintiffs are entitled to injunctive relief under federal and state law.

23      35.    The sum or value of Mr. and Mrs. Jones' California Fair Employment

24  and Housing Act claims for compensatory and punitive damages, in addition to the

25  estimated award of plaintiffs' attorneys' fees under Government Code § 12989.2,

26  exceeds the sum or value of $75,000, exclusive of interest and costs.

27  //

28  //

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

10

# VI.  <u>CLAIMS</u>

## A.  FIRST CLAIM

### Violation of the Fair Housing Act

36.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

37.    Travelers injured plaintiffs by committing discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

## B.  SECOND CLAIM

### Violation of the Fair Employment and Housing Act

38.    Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

39.    Travelers injured plaintiffs by committing unlawful practices in violation of the Fair Employment and Housing Act, California Government Code § 12900 *et seq.*

# VII.  <u>RELIEF</u>

WHEREFORE, plaintiffs pray for relief as follows:

1.    A declaration that Travelers' refusal to insure landlords who rent to tenants on the Section 8 program violates the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and the California Fair Employment and Housing Act, Government Code §§ 12900 *et seq.*;

2.    An order and judgment enjoining Travelers, its agents, employees, successors, and all other persons in active concert or participation with it from refusing to insure, or cancelling the insurance of, landlords on the ground that they rent to tenants in the Section 8 program;

3.    An order and judgment requiring Travelers, its agents, employees, successors, and all other persons in active concert or participation with it to develop and implement policies, practices, and procedures that do not discriminate against persons protected by the fair housing laws;

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

11

4.     An award of compensatory damages to plaintiffs Lincoln Jones and Muyesser Jones, according to proof;

5.     An award of punitive damages to plaintiffs Lincoln Jones and Muyesser Jones, according to proof;

6.     An award of attorneys' fees and costs; and,

7.     Such other and further relief as the Court may deem just and proper.

Dated:  August 6, 2013.

Respectfully submitted,

BRANCART & BRANCART

/s/ *Elizabeth Brancart*

Elizabeth Brancart
Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT
Case No. 5:13-cv-02390-LHK

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

On August 6, 2013, I served electronically, via the Court's ECF system, a copy of the attached **FIRST AMENDED COMPLAINT** upon the following attorneys:

Melissa A. Dubbs
Carlson, Calladine & Peterson LLP
353 Sacramento Street
San Francisco, CA 94111
Fax: (415) 391-3898
Email: mdubbs@ccplaw.com


*/s/ Elizabeth Brancart*