IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development,<br><br>Defendants. | Civil Action No. 13-cv-966 (RJL) |

## AFFIDAVIT OF MARTIN M. DOTO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

I, Martin M. Doto, declare as follows:

1. I am over eighteen years of age and am not suffering under any legal or physical disability.

2. I am Senior Vice President – Government Affairs and Claims at Preferred Mutual Insurance Company ("Preferred Mutual"). My duties include overseeing my company's compliance with state and federal law.

3. Preferred Mutual is a member of Plaintiff National Association of Mutual Insurance Companies, and insures policyholders in New York, New Jersey, Massachusetts and New Hampshire.

4. I submit this declaration in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss. I am testifying to the statements below based on my personal knowledge.

5. Before the Department of Housing and Urban Development enacted the Disparate Impact Rule, Preferred Mutual did not collect data regarding the race, color, religion, national origin, sex, familial status, or handicap of its policyholders.

6. Since the enactment of the Disparate Impact Rule and in response to that rule, Preferred Mutual has begun to assess how to collect, organize, and analyze such data, both from existing and prospective policyholders.

7. In the course of my duties, my staff and I spent approximately 20 hours determining how to collect the data needed to ensure compliance with the Disparate Impact Rule.

8. To collect that data from current policyholders and house it on our systems, we have estimated that it will cost Preferred Mutual nearly $1 million. This figure includes the cost of survey campaigns, costs associated with the expansion of ongoing customer management system development and upgrades, consultant fees for the necessary expansion of our data warehouse, and the expenditure of nearly 2,000 man/hours by our systems development personnel.

9. Collection of that data from prospective policyholders would also require Preferred Mutual to devote significant resources and impose a substantial financial burden on our company. We have estimated that it will cost over $350,000 to develop a new user interface to collect the data and house it on an expanded data warehouse. This includes the retention of outside consultants, the purchase of additional data sources, and the expenditure of over 5,400 man/hours by our systems development personnel.

10. Compliance with the rule will, in addition, require our company to rebuild its rate engines. We have estimated that the cost to do so, which includes over 9,500 man/hours expended by our systems development personnel, will exceed $360,000.

11. Once this data has been collected, we have estimated that it will cost our company nearly $50,000 to build and scrub the modelling set necessary for us to develop applicable rating models.

12. Once this data has been collected, we anticipate that we will need to retain consultants to assist us regarding data analysis and compliance with the rule at an estimated cost in excess of $1 million.

13. Similarly, we anticipate that we will need to retain consultants to assist us in connection with the development of our rating models at an estimated cost in excess of $1 million.

14. We further expect that it will be necessary for us to hire an additional full time employee to monitor our compliance with the rule at a total cost of approximately $200,000 per year.

15. In total, we have estimated that it will cost Preferred Mutual nearly $4 million, and approximately 17,000 of hours in employee time, to plan, organize, procure, and store the data necessary to comply with the Disparate Impact Rule, and to revise its systems to take it into consideration.

16. My staff and I have estimated that we will spend well in excess of 1,000 hours executing our plan to collect the data necessary to comply with the Disparate Impact Rule.

17. We further anticipate that it will be necessary for Preferred Mutual to retain a consultant to assess our vulnerability under the Disparate Impact Rule. We have estimated that the cost to retain that consultant will exceed $250,000.

18. But for the Disparate Impact Rule, Preferred Mutual would not incur the costs described above.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 21, 2014.

_____
Martin M. Doto

Sworn and subscribed before me this

____ day of ____February____, 2014.


_____
Lora Rowe, Notary Public

LORA A. ROWE #4767854
Notary Public, State of New York
Qualified in Chenango County
Commission Expires 9/30____

4