# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-11211
cons. w/13-10306

United States Court of Appeals
Fifth Circuit
**FILED**
March 24, 2014
Lyle W. Cayce
Clerk

THE INCLUSIVE COMMUNITIES PROJECT, INCORPORATED,

                    Plaintiff - Appellee

v.

TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS; MICHAEL GERBER; LESLIE BINGHAM-ESCARENO; TOMAS CARDENAS; C KENT CONINE; DIONICIO VIDAL FLORES, Sonny; JUAN SANCHEZ MUNOZ; GLORIA L. RAY, In Their Official Capacities,

                    Defendants - Appellants

FRAZIER REVITALIZATION, INCORPORATED

                    Intervenor-Appellant

Cons. w/13-10306

THE INCLUSIVE COMMUNITIES PROJECT, INCORPORATED,

                    Plaintiff - Appellee

v.

TEXAS DEPARTMENT OF HOUSING AND COMMUNITY AFFAIRS; MICHAEL GERBER; LESLIE BINGHAM-ESCARENO; TOMAS CARDENAS; C KENT CONINE; DIONICIO VIDAL FLORES, Sonny; JUAN SANCHEZ MUNOZ; GLORIA L. RAY, In Their Official Capacities,

                    Defendants - Appellants

No. 12-11211 cons. w/13-10306Appeals from the United States District Court for the Northern District of Texas

Appeals from the United States District Court
for the Northern District of Texas

---

Before JONES, WIENER, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

In this housing discrimination case, the district court held that plaintiff The Inclusive Communities Project ("ICP") had proven that Defendants' allocation of Low Income Housing Tax Credits ("LIHTC") in Dallas resulted in a disparate impact on African-American residents under the Fair Housing Act ("FHA"). The primary issue on appeal is the correct legal standard to be applied in disparate impact claims under the FHA. We adopt the standard announced in recently enacted Department of Housing and Urban Development ("HUD") regulations regarding the burdens of proof in disparate impact housing discrimination cases, *see* 24 C.F.R. § 100.500, and remand to the district court for application of this standard in the first instance.

## I. Factual and Procedural Background

ICP filed this action against Defendants the Texas Department of Housing and Community Affairs ("TDHCA") and its Executive Director and board members in their official capacities under the FHA, the Fourteenth Amendment, and 42 U.S.C. §§ 1982 and 1983. "ICP is a non-profit organization that seeks racial and socioeconomic integration in the Dallas metropolitan area. In particular, ICP assists low-income, predominately African-American families who are eligible for the Dallas Housing Authority's Section 8 Housing Choice Voucher program ('Section 8') in finding affordable housing in predominately Caucasian, suburban neighborhoods." *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs (ICP II)*, 860 F. Supp. 2d 312, 314 (N.D. Tex. 2012) (order after bench trial) (footnote omitted). A

Case: 12-11211     Document: 00512570522     Page: 3     Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL     Document 35-1     Filed 03/27/14     Page 3 of 16

Case: 12-11211     Document: 00512570522     Page: 3     Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL     Document 35-1     Filed 03/27/14     Page 3 of 16

No. 12-11211 cons. w/13-10306

development that receives tax credits under the LIHTC program cannot refuse tenants because of their use of Section 8 vouchers; thus "it is important to ICP where the developments are located in the Dallas metropolitan area." *Id.*

Under § 42 of the Internal Revenue Code, the federal government provides LIHTC that are distributed to developers of low-income housing through a designated state agency. *See generally* 26 U.S.C. § 42. TDHCA administers the federal LIHTC program in Texas. *See* Tex. Gov't Code § 2306.6701 *et seq.* Developers apply to TDHCA for tax credits for particular housing projects. Such credits may be sold to finance construction of the project. *ICP II*, 860 F. Supp. 2d at 314. The number of credits TDHCA may award for a low-income housing project is determined by calculating the project's "qualified basis," which is a fraction representing the percentage of the project occupied by low-income residents multiplied by eligible costs. *See* 26 U.S.C. § 42(c).

There are two types of credits: 9% credits and 4% credits. The 9% credits are distributed on an annual cycle and are oversubscribed, and developers must compete with each other to earn the available credits. As the district court explained:

> Certain federal and state laws dictate, at least in part, the manner in which TDHCA can select the applications that will receive 9% tax credits. First, I.R.C. § 42 requires that the designated state agency adopt a "Qualified Allocation Plan" ("QAP") that prescribes the "selection criteria." *See id.* at § 42(m)(1)(A)-(B). The QAP must include, *inter alia*, certain selection criteria, *see id.* at § 42(m)(1)(C), and preferences, *see id.* at § 42(m)(1)(B); otherwise, "zero" housing credit dollars will be provided, *see id.* at § 42(m)(1)(A). Second, the Texas Government Code regulates how TDHCA administers the LIHTC program. The Code requires TDHCA to adopt annually a QAP and corresponding manual. *Id.* at § 2306.67022. It also sets out how TDHCA is to evaluate applications. TDHCA must first "determine whether the application satisfies the threshold criteria" in the QAP. *Id.* at §

Case: 12-11211 Document: 00512570522 Page: 4 Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL Document 35-1 Filed 03/27/14 Page 4 of 16

No. 12-11211 cons. w/13-10306

2306.6710(a). Applications that meet the threshold criteria are then "score[d] and rank[ed]" by "a point system" that "prioritizes in descending order" ten listed statutory criteria (also called "above-the-line criteria"), which directly affects TDHCA's discretion in creating the "selection criteria" in each QAP. *Id.* at § 2306.6710(b). The Texas Attorney General has interpreted this provision to obligate TDHCA to "use a point system that prioritizes the [statutory] criteria in that specific order." Tex. Att'y Gen. Op. No. GA-0208, 2004 WL 1434796, at *4 (2004). Although the Texas Government Code does not mandate the points to be accorded each statutory criterion, "the statute must be construed to require [TDHCA] to assign more points to the first criterion than to the second, and so on, in order to effectuate the mandate that the scoring system 'prioritiz[e the criteria] in descending order.'" *Id.* (quoting Tex. Gov't Code Ann. § 2306.6710(b)(1) (West 2004)). And while TDHCA can consider other criteria and preferences (also called "below-the-line" criteria), it "lacks discretionary authority to intersperse other factors into the ranking system that will have greater points than" the statutory criteria. *Id.* at *6 (citation and internal quotation omitted). Once TDHCA adopts a QAP, it submits the plan to the Governor, who can "approve, reject, or modify and approve" it. Tex. Gov't Code Ann. § 2306.6724(b)-(c) (West 2001). Once approved, TDHCA staff review the applications in accordance with the QAP, underwrite applications in order "to determine the financial feasibility of the development and an appropriate level of housing tax credits," *id.* at § 2306.6710(b)(1)(A) & (d), and submit their recommendations to TDHCA. *See id.* at § 2306.6724(e). TDHCA then reviews the staff recommendations and issues final commitments in accordance with the QAP. *See id.* at § 2306.6724(e)-(f).

*ICP II*, 860 F. Supp. 2d at 314-16 (footnotes omitted). The parties heavily dispute the amount of discretion TDHCA has to award 9% credits to projects other than those receiving the highest scores. By contrast, all agree that the 4% credits are allocated on a non-competitive basis year-round to developments that use private activity bonds as a component of their project financing, some of which are issued by TDHCA. Applicants need to meet only certain threshold eligibility and underwriting requirements in order to receive

4

Case: 12-11211     Document: 00512570522     Page: 5     Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL     Document 35-1     Filed 03/27/14     Page 5 of 16

No. 12-11211 cons. w/13-10306

4% tax credits.  Applications for the 4% tax credits are not subject to scoring under the QAP selection criteria. *See id.* at 316.

In March 2008, ICP filed suit against Defendants, claiming that the distribution of LIHTC in Dallas violated 42 U.S.C. §§ 1982 and 1983, the Fourteenth Amendment, and the FHA, 42 U.S.C. §§ 3604 and 3605.  The FHA makes it unlawful, *inter alia*, to "make unavailable or deny, a dwelling to any person because of race. . . ." 42 U.S.C. § 3604(a).  Section 3605(a) provides that it is unlawful, *inter alia*, "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race. . . ." *Id.* § 3605(a). A "residential real estate-related transaction" includes providing financial assistance for the construction of a dwelling. *Id.* § 3605(b).  ICP alleged that Defendants were disproportionately approving tax credit units in minority-concentrated neighborhoods and disproportionately disapproving tax credit units in predominantly Caucasian neighborhoods, thereby creating a concentration of the units in minority areas, a lack of units in other areas, and maintaining and perpetuating segregated housing patterns.

ICP filed a motion for partial summary judgment to establish standing and a prima facie case of discrimination.  Defendants filed motions for judgment on the pleadings and summary judgment.  Defendants argued that, assuming that ICP had established a prima facie case, Defendants won as a matter of law, under both disparate treatment and disparate impact theories of discrimination.[1]  The district court denied Defendants' motions and granted

---

[1] On appeal, Defendants now attempt to raise multiple challenges to the prima facie case of disparate impact, including various challenges to ICP's statistics and an argument that ICP failed to isolate a specific policy or practice that caused the disparate impact.  Our own review of the record does not clearly resolve which of these challenges to the prima facie case of disparate impact were waived in the district court.  Because we reverse and remand

Case: 12-11211      Document: 00512570522      Page: 6      Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL    Document 35-1    Filed 03/27/14    Page 6 of 16

No. 12-11211 cons. w/13-10306

ICP partial summary judgment, concluding that ICP had made a prima facie showing of both intentional discrimination and disparate impact. *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs (ICP I)*, 749 F. Supp. 2d 486, 499-500, 501-02 (N.D. Tex. 2010) (order granting partial summary judgment). With regard to the disparate impact case, the court concluded that "ICP has established that its clients are African-Americans, members of a protected class, who rely on government assistance with housing, and that TDHCA has disproportionately approved tax credits for non-elderly developments in minority neighborhoods and, conversely, has disproportionately denied tax credits for non-elderly housing in predominately Caucasian neighborhoods." *Id.* at 499. In particular, the court relied on evidence that, "from 1999-2008, TDHCA approved tax credits for 49.7% of proposed non-elderly units in 0% to 9.9% Caucasian areas, but only approved 37.4% of proposed nonelderly units in 90% to 100% Caucasian areas." *Id.* The court also pointed to data showing "92.29% of LIHTC units in the city of Dallas were located in census tracts with less than 50% Caucasian residents." *Id.* The court found that the statistical evidence was supported by other evidence, including the "Talton Report," a report of the House Committee on Urban Affairs and prepared for the Texas House of Representatives, which concluded that TDHCA disproportionately allocates LIHTC funds to developments located in areas with above-average minority concentrations. *Id.* at 500. The court also relied on a HUD study reaching "a similar conclusion." *Id.* The district court held that "[t]his evidence establishes that TDHCA disproportionately approves applications for non-elderly LIHTC units in minority neighborhoods, leading to a concentration of such units in these areas.

---

for other reasons, we do not address the issue of whether the district court erred by holding that ICP had established a prima facie case.

6

No. 12-11211 cons. w/13-10306

This concentration increases the burden on ICP as it seeks to place African-American Section 8 clients in LIHTC housing in predominately Caucasian neighborhoods." *Id*.

The case then proceeded to trial on the remaining elements of ICP's intentional discrimination and disparate impact claims. After a bench trial on the merits, the district court found that ICP did not meet its burden of establishing intentional discrimination and therefore found for the Defendants on ICP's § 1982, § 1983, and Fourteenth Amendment claims. *ICP II,* 860 F. Supp. 2d at 318-21. On the disparate impact claim under the FHA, 42 U.S.C. §§ 3604(a) and 3605(a), the district court applied the burdens of proof found in the Second Circuit's decision in *Huntington Branch*, which required Defendants to (1) justify their actions with a compelling governmental interest and (2) prove that there were no less discriminatory alternatives. *See id*. at 322-23 (citing *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir. 1988), *aff'd*, 488 U.S. 15 (1988) (per curiam)).[2] The district court assumed that Defendants' interests were legitimate and bona fide, but concluded that Defendants had not produced any evidence supporting their contention that there were no less discriminatory alternatives to the challenged allocations. *Id*. at 326. The court concluded that Defendants had not shown "that TDHCA cannot allocate LIHTC in a manner that is objective, predictable, and transparent, follows federal and state law, and furthers the public interest, without disproportionately approving LIHTC in predominantly minority neighborhoods and disproportionately denying LIHTC in predominantly Caucasian neighborhoods." *Id*. For example, the court noted that Defendants did not prove that "TDHCA cannot add other below-the-line

---

[2] The Supreme Court affirmed the Second Circuit in *Huntington Branch*, but expressly did not rule on the proper test for disparate impact housing discrimination claims in its opinion. *Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P.*, 488 U.S. 15, 18 (1988).

7

Case: 12-11211 Document: 00512570522 Page: 8 Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL Document 35-1 Filed 03/27/14 Page 8 of 16

No. 12-11211 cons. w/13-10306

criteria [to the QAP] that will effectively reduce the discriminatory impact while still furthering its interests." *Id*. at 327. "Moreover," the court found, "although defendants maintain that TDHCA's discretion in creating the selection criteria is limited to adopting below-the-line criteria, it appears that this discretion is actually broader. It appears to extend to the authority to choose the number of points to be accorded each above- and below-the-line criterion, so long as the priority of statutory above-the-line criteria is maintained and the Governor approves." *Id*. at 328. Because it held that Defendants had not met their burden of proof, the district court found in favor of ICP on its discriminatory impact claim under the FHA. *Id*. at 331.

After trial, while the district court was considering the injunctive remedy that should be implemented, Frazier Revitalization, Inc. ("FRI") was granted permission to intervene to represent the interests of developers or organizations who seek to revitalize low-income neighborhoods. After considering submissions from the parties, the district court adopted a remedial plan including alterations to the QAP, stated that it would review the plan annually for at least five years, and entered judgment. *See Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affairs*, No 3:08-CV-0546-D, 2012 WL 3201401 (N.D. Tex. Aug. 7, 2012), *amended in part*, 2012 WL 5458208 (N.D. Tex. Nov. 8, 2012). The court also ordered Defendants to pay attorneys' fees to ICP.[3]

## II. Discussion

Defendants, along with Intervenor FRI, appeal various issues. However, we find it necessary to reach only one issue: whether the district court correctly

---

[3] The consolidated appeal, No. 13-10306, challenges the attorneys' fees the district court awarded to ICP. In light of our remand, we likewise vacate and remand the award of attorneys' fees in that appeal.

8

Case: 12-11211  Document: 00512570522  Page: 9  Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL  Document 35-1  Filed 03/27/14  Page 9 of 16

No. 12-11211 cons. w/13-10306

found that ICP proved a claim of violation of the Fair Housing Act based on disparate impact.

As the district court correctly noted, violation of the FHA can be shown either by proof of intentional discrimination or by proof of disparate impact. *See Artisan/Am. Corp. v. City of Alvin, Tex.*, 588 F.3d 291, 295 (5th Cir. 2009) ("We have recognized that a claim brought under the Act 'may be established not only by proof of discriminatory intent, but also by proof of a significant discriminatory effect.'"); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996) ("We agree that a violation of the FHA may be established not only by proof of discriminatory intent, but also by a showing of significant discriminatory effect.").[4]  However, we have not previously determined the legal standards that should be applied in disparate impact housing discrimination cases.

---

[4] Defendants and FRI point to two recent cases in which the Supreme Court granted certiorari to determine whether disparate impacts claims are cognizable under the FHA. *See Twp. of Mount Holly, N.J. v. Mt. Holly Gardens Citizens in Action, Inc.*, 133 S. Ct. 2824 (2013); *Magner v. Gallagher*, 132 S. Ct. 548 (2011).  Both cases were dismissed before the Court heard any argument.  *Twp. of Mount Holly, N.J. v. Mt. Holly Gardens Citizens in Action, Inc.*, 134 S. Ct. 636 (2013); *Magner v. Gallagher*, 132 S. Ct. 1306 (2012).  "Absent an intervening Supreme Court case overruling prior precedent, we remain bound to follow our precedent even when the Supreme Court grants certiorari on an issue." *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 n.1 (5th Cir. 2008).  Our circuit precedent provides that disparate impact claims are cognizable under the FHA. *See Artisan/Am. Corp.*, 588 F.3d at 295; *Simms*, 83 F.3d at 1555.  All other circuits that have considered the issue have agreed. *See Mt. Holly Gardens Citizens in Action, Inc  v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011); *Gallagher v. Magner*, 619 F.3d 823, 833-34 (8th Cir. 2010); *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 371 (6th Cir. 2007); *Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 & n.3 (1st Cir. 2000); *Mountain Side Mobile Estates P'ship v. HUD*, 56 F.3d 1243, 1250 (10th Cir. 1995); *Huntington Branch*, 844 F.2d at 934; *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th Cir. 1982); *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); *see also* Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (February 15, 2013) (codified at 24 C.F.R. § 100.500) ("HUD and every federal appellate court to have ruled on the issue have determined that liability under the Act may be established through proof of discriminatory effects").

Case: 12-11211   Document: 00512570522   Page: 10   Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL   Document 35-1   Filed 03/27/14   Page 10 of 16

No. 12-11211 cons. w/13-10306

As we stated above, on the disparate impact claim under the FHA, 42 U.S.C. §§ 3604(a) and 3605(a), the district court applied the burdens of proof found in *Huntington Branch*. *ICP II*, 860 F. Supp. 2d at 322 (citing *Huntington Branch*, 844 F.2d at 939). The district court noted the absence of controlling law, as this court has not previously addressed the question of what legal standards apply to a disparate impact housing discrimination claim. Our sister circuits have applied multiple different legal standards to similar claims under the FHA. *See* Robert G. Schwemm, Housing Discrimination Law and Litigation § 10:6 (2013) (discussing the various standards applied across the circuits). Most circuits agree that once a plaintiff establishes a prima facie case, the burden shifts to the defendants to show that the challenged practice serves a legitimate interest. *See Mt. Holly Gardens*, 658 F.3d at 382; *Gallagher*, 619 F.3d at 833-34; *Graoch Assocs.*, 508 F.3d at 374; *Mountain Side Mobile Estates*, 56 F.3d at 1254; *Huntington Branch*, 844 F.2d at 936. At that point, the circuits diverge in some respects. The Second and Third Circuits require a defendant to bear the burden of proving that there are no less discriminatory alternatives to a practice that results in a disparate impact. *See Huntington Branch*, 844 F.2d at 936; *Mt. Holly Gardens*, 658 F.3d at 382 (requiring defendant to prove there is no less discriminatory alternative and plaintiff to prove there is a less discriminatory alternative). The Eighth and Tenth Circuits place the burden on the plaintiff to prove that there are less discriminatory alternatives. *See Gallagher*, 619 F.3d at 834; *Mountain Side Mobile Estates*, 56 F.3d at 1254. The Seventh Circuit has applied a four-factor balancing test rather than burden-shifting. *See Metro. Hous. Dev. Corp.*, 558 F.2d at 1290. The Fourth and Sixth Circuits have applied a four-factor balancing test to public defendants and a burden-shifting approach to private defendants. *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988 n.5 (4th Cir. 1984); *Graoch Assocs.*, 508 F.3d at 371, 372-74.

Case: 12-11211   Document: 00512570522   Page: 11   Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL   Document 35-1   Filed 03/27/14   Page 11 of 16

No. 12-11211 cons. w/13-10306

However, after the district court's decision in this case, HUD issued regulations regarding disparate impact claims under the FHA. *See* 24 C.F.R. § 100.500; Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (Feb. 15, 2013). Congress has given HUD authority to administer the FHA, including authority to issue regulations interpreting the Act. 42 U.S.C. §§ 3608(a), 3614a. Specifically, 42 U.S.C. § 3608(a) gives the Secretary of HUD the "authority and responsibility for administering this Act," and § 3614a provides expressly that "The Secretary may make rules. . . to carry out this subchapter." The new regulations issued by HUD took effect in March 2013. 24 C.F.R. § 100.500. The regulations recognize, as we have, that "Liability may be established under the Fair Housing Act based on a practice's discriminatory effect, as defined in paragraph (a) of this section, even if the practice was not motivated by a discriminatory intent." 24 C.F.R. § 100.500. The regulations further provide that "A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin." *Id.* § 100.500(a). Finally, with regard to the burdens of proof in disparate impact housing discrimination cases, the regulations provide:

(1) The charging party . . . has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.

(2) Once the charging party or plaintiff satisfies the burden of proof set forth in paragraph (c)(1) of this section, the respondent or defendant has the burden of proving that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.

11

Case: 12-11211    Document: 00512570522    Page: 12    Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL   Document 35-1   Filed 03/27/14   Page 12 of 16

No. 12-11211 cons. w/13-10306

(3) If the respondent or defendant satisfies the burden of proof set forth in paragraph (c)(2) of this section, the charging party or plaintiff may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect.

24 C.F.R. § 100.500(c).

We now adopt the burden-shifting approach found in 24 C.F.R. § 100.500 for claims of disparate impact under the FHA. *See* 24 C.F.R. § 100.500. First, a plaintiff must prove a prima facie case of discrimination by showing that a challenged practice causes a discriminatory effect, as defined by 24 C.F.R. § 100.500(a). 24 C.F.R. § 100.500(c)(1). If the plaintiff makes a prima facie case, the defendant must then prove "that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests . . . ." *Id.* § 100.500(c)(2). If the defendant meets its burden, the plaintiff must then show that the defendant's interests "could be served by another practice that has a less discriminatory effect." *Id.* § 100.500(c)(3).

These standards are in accordance with disparate impact principles and precedent. While the approaches of our sister circuits have varied, the most recent decisions have applied a similar three-step burden-shifting approach. *Mt. Holly Gardens*, 658 F.3d at 382; *Gallagher*, 619 F.3d at 834; *Graoch Assocs.*, 508 F.3d at 374. Further, the three-step burden-shifting test contained in the HUD regulations is similar to settled precedent concerning Title VII disparate impact claims in employment discrimination cases. *See* 42 U.S.C. § 2000e-2(k); *Ricci v. DeStefano*, 557 U.S. 557, 624 (2009) (describing the disparate impact burdens of proof in Title VII employment discrimination cases). Many courts interpreting the FHA recognize the similar purpose and language of the statutes and borrow from Title VII precedent to interpret the FHA. *See, e.g., Graoch Assocs.*, 508 F.3d at 371-73; *Kyles v. J.K. Guardian Sec.*

No. 12-11211 cons. w/13-10306

*Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) ("Courts have recognized that Title VIII is the functional equivalent of Title VII and so the provisions of these two statutes are given like construction and application.") (internal citations omitted)); *Huntington Branch*, 844 F.2d at 934-35.

Given the complex record and fact-intensive nature of this case, and the district court's demonstrated expertise with those facts, we remand for the district court to apply this legal standard to the facts in the first instance. To be clear, we do not hold that the district court must retry the case; we leave it to the sound discretion of that court to decide whether any additional proceedings are necessary or appropriate. Finally, given our decision to remand, we do not find it necessary to reach the additional arguments raised by Defendants in support of reversal.

### III. Conclusion

For the reasons we have stated, we REVERSE and REMAND for further proceedings consistent with this opinion.

No. 12-11211 cons. w/13-10306

JONES, Circuit Judge, specially concurring.

As a second-best result, I concur in the court's judgment to reverse and remand this case for reconsideration under the recently promulgated HUD guidelines. This is second-best, however, because on remand, the district court should reconsider the State's forceful argument that the appellees did not prove a facially neutral practice that caused the observed disparity in TDHCA's allocation of LIHTC units to predominately "non-Caucasian" areas. Perhaps the standard for proving a prima facie case of disparate impact in the fair housing context was uncertain before the HUD guidelines resolved circuit splits. In any event, because FHA cases will now be modeled closely upon the Title VII formula, it is clear that the appellees could not rely on statistical evidence of disparity alone for their prima facie case. *See Smith v. City of Jackson*, 544 U.S. 228, 241, 125 S. Ct. 1536, 1545 (2005) ("[I]t is not enough to simply allege that there is a disparate impact on workers."); *Pacheco v. Mineta*, 448 F.3d 783, 787 n.5 (5th Cir. 2003) (finding "Pacheco's disparate impact allegations . . . wholly conclusional" because "[t]here is no suggestion of in what manner the process operated so as to disadvantage Hispanics"); *Simms v. First Gibraltar Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996) (Fair Housing Act issue is "whether a policy, procedure, or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class.") A plaintiff must specifically identify the facially neutral policy that caused the disparity.

The appellees' entire argument for disparate impact here assumed the conclusion: there is a statistical "imbalance" in the location of LIHTC units approved by TDHCA, therefore there must be a disparate approval "practice" that causes the statistical imbalance. The district court accepted this oversimplified formulation. But under disparate impact law, the State's burden is *NOT* to justify the statistics, but only the facially neutral policy or

14

Case: 12-11211   Document: 00512570522   Page: 15   Date Filed: 03/24/2014
Case 1:13-cv-00966-RJL   Document 35-1   Filed 03/27/14   Page 15 of 16

No. 12-11211 cons. w/13-10306

policies that caused the statistics. The State's burden ensues only when a plaintiff isolates the policy that caused the disparity. Without proof of an offending policy, alleged racial imbalance in and of itself is both the cause and effect of a violation. This has not been the law for many years. The Supreme Court held in *Wards Cove* that:

> "[e]ven if on remand respondents can show that nonwhites are underrepresented . . . in a [statistically correct] manner . . ., this alone will *not* suffice to make out a prima facie case of disparate impact. Respondents will also have to demonstrate that the disparity they complain of is the result of one or more of the employment practices that they are attacking here, specifically showing that each challenged practice has a significantly disparate impact on employment opportunities for whites and nonwhites. To hold otherwise would result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances in the composition their work forces.'"

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657, 109 S. Ct. 2115, 2125 (1989) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992, 108 S. Ct. 2777, 2787 (1988)). Put more bluntly, if the appellees' framing of disparate impact analysis is correct, then the NBA is prima facie liable for disparate impact in the hiring of basketball players.

As the district court's opinions demonstrate, TDHCA's policies and practices for awarding LIHTC grants are anything but simple. They are governed by federal and state statutes, which require satisfaction of numerous criteria to ensure the integrity, financial viability, and effectiveness of the projects. One specific object of the federal tax credit provision is to advantage projects located in low income census tracts or subject to a community revitalization plan. 26 U.S.C. § 42(m)(1)(B). In essence, the appellees are seeking a larger share of a fixed pool of tax credits at the expense of other low-income people who might prefer community revitalization. To balance these

No. 12-11211 cons. w/13-10306

conflicting goals while meeting the program's other specifications, a complex point system has been used and annually updated. On remand, the district court must "require, as part of [appellees'] prima facie case, a demonstration that specific elements of the [State's award practices] have a significantly disparate impact on nonwhites." *Wards Cove*, 490 U.S. at 658, 109 S. Ct. at 2125.

    I concur in the judgment.