**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                 )
AMERICAN INSURANCE                               )
ASSOCIATION, *et al.*                            )
                                                 )
            Plaintiffs,                          )
                                                 )        No. 1:13-cv-00966 (RJL)
        v.                                       )
                                                 )
UNITED STATES DEPARTMENT                         )
OF HOUSING AND URBAN                             )
DEVELOPMENT, *et al.*                            )
                                                 )
            Defendants.                          )
_____)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiffs made the strategic decision to plead and proceed to judgment on a single claim:

that disparate impact suits are categorically unavailable under the Fair Housing Act ("FHA").

Now that Plaintiffs' favorable judgment on that claim has been vacated in light of the Supreme

Court's controlling decision to the contrary in *Texas Department of Housing & Community*

*Affairs v. The Inclusive Communities Project, Inc.* ("*Inclusive Communities*"), 135 S. Ct. 2507

(2015), Plaintiffs seek to amend their complaint to challenge the Department of Housing and

Urban Development's ("HUD's") Discriminatory Effects Rule under new legal theories that

Plaintiffs intentionally chose not to pursue in their original complaint.  Plaintiffs should not be

permitted this second bite at the apple.  Although Plaintiffs contend that the claims in their

proposed amended complaint only recently arose out of the Supreme Court's decision in

*Inclusive Communities*, these claims mirror arguments that Plaintiffs made previously in

comments during the rulemaking process, as well as claims that another insurance trade

organization pursued in an action filed more than two years ago, just months after Plaintiffs filed

their original complaint.  Plaintiffs' effort to pursue *ad seriatim* attacks on the challenged rule –

proceeding to judgment on one claim while holding others in reserve, to be added once the first

claim failed – should not be sanctioned.  In any event, the proposed amendment of the complaint

would be futile because *Inclusive Communities*, a case that affirmed the existence of disparate

impact liability under the FHA, does not provide a cognizable basis for a facial challenge to

HUD's rule.

## BACKGROUND

In February 2013, HUD promulgated a final rule which reaffirmed its longstanding

interpretation of the Fair Housing Act to authorize disparate impact claims and adopted a

uniform burden-shifting standard for adjudication of those claims.  *Implementation of the Fair*

*Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11,460 (Feb. 15, 2013) ("Final

Rule").  In June 2013, Plaintiffs American Insurance Association ("AIA") and National

Association of Mutual Insurance Companies ("NAMIC"), two insurance trade groups, filed a

facial challenge to the Final Rule under the Administrative Procedure Act (APA).  Plaintiffs

sought vacatur of the Final Rule solely on the ground that the FHA does not encompass disparate

impact claims.  Although in their comments before the agency Plaintiffs had also challenged

aspects of the burden-shifting framework as contrary to law and had argued that applying a

disparate impact standard to the provision and pricing of insurance would exceed HUD's

authority, *see* A.R. 376-83 (NAMIC Cmts.); A.R. 456-59 (AIA Cmts.) (ECF No. 40), Plaintiffs

elected not to pursue these legal theories in the instant action.  In their summary judgment

papers, Plaintiffs specifically disavowed any effort to proceed on other potentially available

claims, including any claim that the Final Rule unlawfully interfered with state regulation of

insurance, *see, e.g.*, Pls.' Opp. (ECF No. 27) at 38, even though another insurance trade group

was litigating similar claims in different district around the same time, *see Prop. Cas. Insurers*

*Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018 (N.D. Ill. 2014).

In November 2014, this Court granted Plaintiffs' motion for summary judgment and

vacated the Final Rule, holding that disparate impact claims are not cognizable under the FHA.

*See Am. Ins. Ass'n v. HUD*, 74 F. Supp. 3d 30, 39-47 (D.D.C. 2014).  HUD appealed, and that

appeal was stayed pending the Supreme Court's disposition of *Inclusive Communities*, which

presented the same question of statutory construction.  On June 25, 2015, the Supreme Court

held that disparate impact claims are cognizable under the FHA.  *Inclusive Communities*, 135 S.

Ct. at 2515-26.  On September 23, 2015, the D.C. Circuit vacated this Court's judgment and

remanded for proceedings in light of *Inclusive Communities*.

Plaintiffs have moved for leave to amend their complaint to add four new causes of

action that contend that the Final Rule is contrary to law to the extent that it applies to insurers'

ratemaking and underwriting decisions.  Two of Plaintiffs' proposed causes of action are based

on the contention that any challenge to insurance underwriting and pricing practices that might

be brought under the Rule would exceed the permissible contours of disparate impact claims; and

the other two causes of action challenge aspects of the Rule's proof framework as contrary to law

in the insurance and ratemaking context.  Plaintiffs contend that these new causes of action arose

as a consequence of the Supreme Court's decision in *Inclusive Communities*, which, according to

Plaintiffs, supplied new standards for evaluating FHA disparate impact claims.

## STANDARD

The decision to grant or deny a motion for leave to amend a complaint is committed to

the Court's discretion.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996).

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given when justice so requires, but where amendment is proposed after a substantive merits decision, the movant bears the burden of demonstrating entitlement to leave. *See DRR, L.L.C. v. Sears, Roebuck & Co.*, 171 F.R.D. 162, 166 (D. Del. 1997) (noting that post-judgment motions are "regard[ed] . . . with a more jaundiced eye"). Denial of leave is appropriate where "the amendment will result in undue prejudice to the other party, is unduly delayed . . . or . . . the party has had sufficient opportunity to state a claim and has failed." *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977) (quoting Moore's Federal Practice § 15.08 at 897-900). Rule 15(a) does not license a plaintiff to pursue claims *ad seriatim* as a litigation strategy, and where a motion has been filed after a case has proceeded to judgment, courts may deny leave in the interests of fairness and finality. *See Feeney v. Massachusetts*, 475 F. Supp. 109, 111 (D. Mass. 1979) ("[P]arties should ordinarily litigate all issues at one time rather than piecemeal."), *aff'd* 445 U.S. 901 (1980) (mem.); *see also Williams v. Citigroup, Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) ("Where . . . a party does not seek leave to file an amended complaint until after judgment is entered, Rule 15's liberality must be tempered with considerations of finality."). Leave to amend is also appropriately denied where the proposed amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

The Supreme Court's decision in *Inclusive Communities*, which mandated judgment against Plaintiffs on the sole claim they advanced in this case, provides no basis for Plaintiffs' belated attempt to amend their complaint.

1.    Plaintiffs made the strategic decision to pursue a single claim to judgment: that the FHA categorically does not permit disparate impact claims. *See* Pls.' Mem. (ECF No. 16-1)

at 1  ("In their complaint, Plaintiffs raised a single claim: *viz*., that Defendants violated the [APA] by promulgating the Disparate-Impact Rule, because the FHA unambiguously prohibits only intentional discrimination and not practices that result in a disparate impact.").  Now that that sole claim has been "litigated and resolved," Plaintiffs should not be given a "second bite at the apple" simply because their initial strategic decision failed to secure the results they had hoped for.  *See Murphy v. Pricewaterhouse Coopers, LLP*, 813 F. Supp. 2d 45, 54 (D.D.C. 2011) (Leon, J.) (denying leave to amend complaint where, *inter alia*, original complaint reflects "plaintiffs' obvious choice of litigation strategy" and original claims had already been "litigated *and resolved*") (emphasis in original).

Permitting post-judgment amendment of the complaint is particularly unwarranted here because Plaintiffs repeatedly disavowed any intent to pursue claims other than the purely legal issue of statutory construction that has now been decided in *Inclusive Communities*.  For example, in an effort to insulate their original case from a ripeness challenge, Plaintiffs expressly denied any intent to pursue a claim based on the application of the Final Rule to any insurance practices.  *See* Pls.' Opp. at 20 ("Plaintiffs have claimed *only* that the Disparate-Impact Rule is beyond HUD's power under the FHA because the statute prohibits only intentional discrimination.") (emphasis added).  And although Plaintiffs argued in their summary judgment papers that the Final Rule conflicted "with sound actuarial principles and basic widespread principles of state insurance law" – arguments that now form a significant basis for their new proposed amended complaint – Plaintiffs took pains at the time to make clear that these arguments did not represent a "freestanding facial challenge" to that rule but were offered merely in support of their sole statutory construction claim.  *See* Pls.' Opp. at 38 (claiming that it would

be "misdirection" to suggest that they were pursuing an independent cause of action based on the

role of state insurance regulation or on the alleged effect of the Rule on insurance practices).

Now that the Supreme Court's decision in *Inclusive Communities* mandates judgment

against Plaintiffs on their sole cause of action, Plaintiffs seek to revive their lawsuit by adding

claims substantially identical to those that they previously and explicitly declined to pursue.  *See,*

*e.g.*, Pls.' Proposed Am. Compl. ¶ 5 (contending that "applying disparate-impact liability to the

provision and pricing of homeowner's insurance is contrary to law"); *id.* (contending that the

"disparate-impact theory also runs headlong into state insurance law"); *id.* ¶ 54 (contending that

"[i]mposing a disparate-impact requirement on insurers' ratemaking and underwriting decisions .

. . would have precisely th[e] effect" prohibited by the McCarran-Ferguson Act).  Granting leave

under these unusual circumstances would be contrary to the interests of fairness and of orderly

litigation, and would effectively sanction Plaintiffs' failure to comply with the accepted principle

that "parties should ordinarily litigate all issues at one time rather than piecemeal."  *See Feeney*,

475 F. Supp. at 111 (noting that it "would be unfair" to government defendants to permit

plaintiff, who lost a claim in the Supreme Court that had proceeded entirely on the parties' legal

submission based on agreed facts, to amend the complaint to raise a new legal theory).  Where,

as here, Plaintiffs not only failed to seek amendment of the complaint prior to judgment but also

disclaimed the pursuit of other challenges available to them, "the time has come now to put this

case to rest."  *See Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*, 974

F.2d 502, 508 (4th Cir. 1992).  Plaintiffs made a strategic decision to raise a single legal claim

and should be held to that decision.  *Id.* (rejecting plaintiff's attempt to "resuscitate its case" by

amending complaint based on "previously neglected theories" when theory upon which it had

litigated its claim "collapsed as a result of the Supreme Court's ruling").  Rule 15(a) "does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time."  *Id.* at 506.

Plaintiffs seek to deflect attention from their own strategic decision to pursue piecemeal litigation by framing their new proposed claims as ones based on the statement in *Inclusive Communities* that "disparate-impact liability under the FHA is 'limited in key respects.'"  Pls.' Mot. at 2 (quoting *Inclusive Communities*, 135 S. Ct. at 2522).  However, the particular language on which Plaintiffs rely, when quoted in full, does not purport to change the law but merely reiterates the ways in which "disparate-impact liability *has always been* properly limited in key respects."  *Inclusive Communities*, 135 S. Ct. at 2522 (emphasis added).   And notwithstanding Plaintiffs' focus on *Inclusive Communities*, Plaintiffs' suggestion that they could not have pursued their proposed new claims prior to issuance of that decision is plainly erroneous.  As the foregoing discussion demonstrates, Plaintiffs' original summary judgment briefing in this case identified – though, for tactical reasons, not as the basis for a separate legal challenge – the alleged defects in the Final Rule on which Plaintiffs' proposed amended complaint is premised.  Plaintiffs also raised the same arguments that form the basis of their proposed amended complaint in comments submitted to HUD during the rulemaking process in January 2012, a fact that Plaintiffs themselves concede.[1]  *See* Pls.' Proposed Am. Compl. ¶ 7 ("During the rulemaking process, Plaintiffs pointed out the problems with extending disparate-impact liability to the provision of homeowner's insurance, but HUD promulgated the Disparate-Impact Rule in spite

---

[1] *Compare, e.g.*, A.R. 381 (NAMIC Cmts.) (arguing that, under existing Supreme Court precedent, disparate impact claims required a plaintiff to "prove that the defendant refused to adopt an alternative practice that would have served its goals equally effectively without causing a disparate impact")  and A.R. 458 (AIA Cmts.) ("We do not believe [the proposed burden-shifting approach] is consistent with Supreme Court or statutory law.")  *with* Proposed Am. Compl. ¶ 103 (challenging HUD's decision not to include requirement that the less-discriminatory alternative "be 'equally effective' or 'at least as effective' as the challenged policy in advancing the defendant's proffered interest").

of them."); *id.* ¶ 63 (cataloguing comments Plaintiffs submitted during the rulemaking process claiming the application of disparate impact to insurers was problematic).  Plaintiffs' decision to keep those arguments in reserve until after their primary claim went to judgment should not be rewarded by granting them leave to amend at this late stage.

Indeed, another insurance trade organization brought claims in 2013 that are very similar to the claims in the proposed amended complaint that Plaintiffs contend were not available to them previously.  *See Prop. Cas. Insurers Ass'n of Am. v. Donovan* ("*PCI*"), No. 1:13-cv-08564 (N.D. Ill.).  For example, the plaintiff in *PCI* claimed that the Final Rule's burden-shifting framework for evaluating a disparate impact claim was contrary to law, including controlling Supreme Court authority, just as Plaintiffs belatedly endeavor to do here.  *See PCI* Compl. ¶¶ 10, 99-105 (ECF No. 1); *see also id.* ¶ 101 (alleging that "the Supreme Court has held that disparate impact liability must be premised on exacting standards in order to avoid unjustified, expensive, and time-consuming litigation").  Whereas Plaintiffs here staked the entirety of their case on the categorical invalidity of disparate impact, the plaintiff in *PCI* specifically challenged the application of the Final Rule to the insurance industry, *see id.* ¶ 2, a strategy Plaintiffs now belatedly seek leave to replicate.

Not only does the *PCI* complaint belie Plaintiffs' argument that they could not have previously pursued the claims found in their amended complaint, but the procedural history of *PCI* also provides one more reason to deny Plaintiffs leave.  The district court in *PCI* concluded that the Rule's burden-shifting framework comported with the law, and it found that the plaintiff's facial challenge to the application of the Final Rule to the insurance industry, brought on the basis of the McCarran-Ferguson Act, was unripe; but it remanded the Final Rule to the agency for further consideration of specific aspects of its application to the provision of

-8-

homeowners insurance in light of comments submitted during the rulemaking.  *PCI*, 66 F. Supp.

3d at 1054.  That remand is currently ongoing, and thus Plaintiffs' belated challenge to the Final

Rule, as promulgated in 2013, is not ripe because the application of the Rule to insurance

ratemaking and underwriting is the subject of ongoing agency consideration.  Had Plaintiffs

wished to challenge the application of the Rule to insurance underwriting and pricing – as the

plaintiff in *PCI* did – Plaintiffs could have, and should have, done so at the time of the original

litigation in this case.  Having elected a different litigation strategy, fairness dictates that

Plaintiffs' motion for leave to amend be denied.  Otherwise, Defendants will not only be faced

with the serial litigation of claims but will also be placed in the awkward position of needing to

comply with the remand of the Final Rule by one district court, while also separately litigating

Plaintiffs' new challenges to the Final Rule, as originally promulgated, before this Court.

       2.      In any event, *Inclusive Communities* does not provide a basis for the causes of

action that Plaintiffs seek to add.  The Supreme Court granted certiorari on only one question –

whether disparate-impact claims are cognizable under the FHA.  135 S. Ct. 46 (2014).  And, as

even Plaintiffs concede, the Supreme Court's answer to that question compels judgment in favor

of Defendants on the sole claim pressed by Plaintiffs in this litigation.  Notably, the Supreme

Court declined to grant certiorari on the question of "what . . . standards and burdens of proof . . .

should apply" if disparate-impact claims are cognizable, even though the petitioner specifically

sought review of that separate question.  *See id.* (noting that grant was "limited to Question 1").

       The Supreme Court's holding in *Inclusive Communities* is entirely consistent with the

Final Rule's reaffirmation of HUD's longstanding interpretation that the FHA authorizes

disparate impact claims.  135 S. Ct. at 2516-22.  The remainder of the Court's opinion – which

consists of a discussion regarding limitations on the application of disparate impact liability that

have long been part of the standard – does not give rise to new causes of action, nor does it conflict with HUD's Final Rule. *See id.* at 2522-25 ("[D]isparate-impact liability has always been properly limited in key respects . . . .").

Indeed, nothing in the Supreme Court's opinion casts any doubt on the validity of HUD's Final Rule. To the contrary, the Court cited the Final Rule twice *in support* of its analysis.[2] *See* 135 S. Ct. at 2522-23. Accordingly, on remand, the district court in *Inclusive Communities* noted that "the [Supreme] Court did not disturb the Fifth Circuit's adoption of the HUD burden-shifting regimen" and held that the Final Rule provided the appropriate standard for the disparate impact claim at hand. *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2015 WL 5916220, *1, *3 (N.D. Tex. Oct. 8, 2015). Moreover, the Supreme Court's discussion of how disparate impact liability should be applied – the portion of the opinion on which Plaintiffs rely to frame their proposed new claims – was directed toward lower courts as they evaluate particular disparate impact claims pending before them. *See, e.g.*, 135 S. Ct. at 2523 ("Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important."). Accordingly, that discussion could be relevant only in potential future cases involving specific *applications* of the FHA's prohibition on disparate impact discrimination and of the Final Rule. *See id.* at 2522-25. It does not provide a basis for a separate facial, pre-enforcement cause of action. Accordingly, the Court should also deny Plaintiffs' motion for leave to amend on the independent ground that their proposed amendment is futile. *See Foman*, 371 U.S. at 182.

---

[2] Plaintiffs' claims also rest on a fundamental mischaracterization of the Final Rule, which is "largely consistent with the framework courts have developed on their own for analyzing disparate impact claims" and which has been found to represent a "reasonable accommodation of the competing interests at stake—i.e., the public's interest in eliminating discriminatory housing practices and defendants' (including insurer-defendants') interest in avoiding costly or frivolous litigation based on unintentional discriminatory effects of their facially neutral practices." *See PCI*, 66 F. Supp. 3d at 1053.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend the Complaint should

be denied.

Dated: January 11, 2016                              Respectfully submitted,

                                                     BENJAMIN C. MIZER
                                                     Principal Deputy Assistant Attorney General

                                                     GREGORY B. FRIEL
                                                     Deputy Assistant Attorney General

                                                     CHANNING D. PHILLIPS
                                                     United States Attorney

                                                     LESLEY FARBY
                                                     Assistant Branch Director
                                                     Federal Programs Branch

                                                      /s/ Kyle R. Freeny
                                                     KYLE R. FREENY (Cal. Bar No. 247857)
                                                     DANIEL P. MOSTELLER (DC Bar No. 980802)
                                                     Attorneys
                                                     U.S. Department of Justice
                                                     20 Massachusetts Ave., N.W.
                                                     Washington, DC 20001
                                                     Tel: (202) 514-5108/Fax: (202) 616-8470
                                                     Email:  Kyle.Freeny@usdoj.gov