Felicia K. Watson, D.C. Bar No. 468492
National Association of Home Builders
of the United States
1201 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 266-8200
Fax: (202) 266-8161
Email: fwatson@nahb.org

Attorney for *Amicus Curiae*
National Association of Home Builders
of the United States

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN INSURANCE ASSOCIATION, and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES, *Plaintiffs,* | Case No. 1:13-cv-00966-RJL |
| v. | |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, *Defendants.* | ***AMICUS CURIAE* BRIEF OF NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES IN SUPPORT OF PLAINTIFFS** |

# TABLE OF CONTENTS

**Page*(s)***

**INTEREST OF AMICUS** ..... 1

**SUMMARY OF ARGUMENT** ..... 3

**ARGUMENT** ..... 4

**I. HUD HAS DEVELOPED AN EVIDENTIARY PROCEDURAL RULE** ..... 4

**A. HUD's Burden Shifting Approach** ..... 4

**B. Rules of Procedure and Evidence Are Significant** ..... 5

**II. HUD IMPROPERLY STEPPED INTO THE SHOES OF THE UNITED STATES SUPREME COURT** ..... 6

**A. The Supreme Court Resolves Conflict of the Courts of Appeals** ..... 6

**B. The Supreme Court Chose not to Resolve the Conflict Concerning the Proper FHA Disparate Impact Analysis** ..... 7

**III. CONGRESS HAS NOT PROVIDED A CLEAR AUTHORIZATION TO HUD ALLOWING IT TO REGULATE JUDICIAL RULES AND PROCEDURES** ..... 8

**A. Congress May and Has Delegated Its Authority Over Court Rules to the Judiciary** ..... 9

**B. A Delegation of Congressional Article III Authority to an Executive Agency Raises Separation of Powers Concerns, Thus Requiring A Clear Statement By Congress** ..... 10

*1. The Importance/Purpose of the Separation of Powers Doctrine* ..... 11

*2. HUD's Interpretation of the FHA Raises Separation of Powers Concerns* ..... 12

**C. Congress did not Provide a Clear Indication That it Intended HUD to Develop a Rule of Judicial Procedure** ..... 14

**CONCLUSION** ..... 15

## TABLE OF AUTHORITIES

**Page*(s)***

***Cases***

*American Constr. Co. v. Jacksonville, T. & K.W. Ry. Co.*, 148 U.S. 372 (1893) .................. 6

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................. 13

*City of Arlington, Tex. v. Fed. Communications Comm'n*, 133 S. Ct. 1863 (2013) .................. 1

*Dickerson v. United States*, 530 U.S. 428 (2000) .................. 10, 13

*Greene v. McElroy*, 360 U.S. 474 (1959) .................. 10

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) .................. 11

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Occupational Safety & Health Admin.*, 938 F.2d 1310 (D.C. Cir. 1991) .................. 11

*Kucana v. Holder*, 558 U.S. 233 (2010) .................. 10

*Lockerty v. Phillips*, 319 U.S. 182 (1943) .................. 6

*Loving v. United States*, 517 U.S. 748 (1996) .................. 14

*Magnum Imp. Co. v. Coty*, 262 U.S. 159 (1923) .................. 7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................. 6

*Mistretta v. United States*, 488 U.S. 361 (1989) .................. 9, 12, 13, 14

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) .................. 12

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) .................. 11

*Sibbach v. Wilson*, 312 U.S. 1 (1941) .................. 9

*Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) .................. 10, 14

*Speiser v. Randall*, 357 U.S. 513 (1958) .................. 5

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) .................. 11-12

**TABLE OF AUTHORITIES *(cont.)***

**Page*(s)***

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) .......... 7, 8

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) .......... 13

*Wayman v. Southard*, 23 U.S. 1 (1 Wheat.) (1825) .......... 9

***Statutory and Constitutional Provisions***

U.S. CONST. ART. II, §2, cl. 2 .......... 13

U.S. CONST. ART. III, §1 .......... 6, 9

28 U.S.C. § 1254 .......... 6

28 U.S.C. § 2071 .......... 12

42 U.S.C. § 3608(a) .......... 14

42 U.S.C. § 3614a .......... 14

24 C.F.R. § 100.500(c) .......... *Passim*

Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (Feb. 15, 2013) .......... 1, 3, 4, 5, 8, 14

***Miscellaneous***

Robert L. Stern, *et al.*, *Supreme Court Practice* (8th ed. 2002) .......... 7

Paul Taylor, *Congress's Power to Regulate the Federal Judiciary: What the First Congress and the First Federal Courts Can Teach Today's Congress and Courts,* 37 Pepp. L. Rev. 847 (2010) .......... 9

75A Am. Jur. 2D *Trial* § 1150 (2d ed. 2016) .......... 5

Petition for a Writ of Certiorari, *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) (No. 13-1371), 2014 WL 1989121 .......... 7

**INTEREST OF AMICUS**

The National Association of Home Builders of the United States ("NAHB") is a Washington, D.C.-based trade association whose mission is to enhance the climate for housing and the building industry. Chief among NAHB's mission is to provide and expand opportunities for all people to have safe, decent, and affordable housing. Founded in 1942, NAHB is a federation of more than 700 state and local associations. About one-third of NAHB's approximately 140,000 members are home builders or remodelers, and its builder members construct about 80 percent of all new homes in the United States. NAHB is a vigilant advocate in the Nation's courts, and it frequently participates as a party litigant and amicus curiae to safeguard the property rights and interests of its members.

In February 2013, the Department of Housing and Urban Development ("HUD") issued the final rule titled Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (February 15, 2013) (hereinafter "the Discriminatory Effects Rule"). The Discriminatory Effects Rule creates 24 C.F.R. § 100.500(c), which establishes standards and a process that courts must follow when analyzing Fair Housing Act disparate impact claims.

All agencies are bound by the authority that Congress has delegated to them. *See e.g. City of Arlington, Tex. v. Fed. Communications Comm'n*, 133 S. Ct. 1863, 1869 (2013) (explaining that agencies "power to act and how they are to act is authoritatively prescribed by Congress . . . ."). In this case, HUD, an executive agency, has developed a regulation that controls the judiciary.

The home building industry is one of the most heavily regulated industries in the country. As such, NAHB's members must comply with a myriad of federal regulations, and in some instances must resort to the judiciary to resolve disputes over such regulations. If executive agencies can develop rules that regulate the home building industry, and rules that control how

they must litigate their disputes, then the agencies can create a one-sided system that clearly weighs in their favor. Therefore, NAHB is interested in ensuring that the court prevent executive agencies from developing rules that control judicial procedures and evidence, unless Congress has clearly delegated such authority.

## SUMMARY OF ARGUMENT

Due to a conflict in the courts of appeals, HUD promulgated 24 C.F.R. § 100.500(c). 78 Fed. Reg. at 11,462. Section 100.500(c) is a three-step process that courts must follow when analyzing Fair Housing Act disparate impact claims. *Id*. at 11,482. In addition, section 100.500(c) is an evidentiary rule because it establishes the burdens of proof that plaintiffs and defendants must meet when litigating disparate impact claims. *Id*.

In enacting section 100.500(c), HUD has exceeded its authority for two reasons. First, it is the Supreme Court's duty to resolve lower court conflicts, not HUD's. Second, when the executive branch promulgates rules that control the judiciary, separation of powers concerns are raised. Therefore, Congress must provide a clear statement indicating such authority has been delegated. Since Congress has not provided a clear indication that it delegated to HUD the authority to develop rules of judicial procedure and evidence, 24 C.F.R. § 100.500(c) must be vacated.

## ARGUMENT

### I. HUD HAS DEVELOPED AN EVIDENTIARY PROCEDURAL RULE.

#### A. HUD's Burden Shifting Approach.

In 2013, HUD finalized a rule that provides for Fair Housing Act liability based on discriminatory effect, even when no discriminatory intent exists. 78 Fed. Reg. at 11,481-82. In 24 C.F.R. § 100.500(c) the Agency "formalizes a burden-shifting test for determining whether a given practice has a unjustified discriminatory effect . . .." *Id*. at 11,460. As finalized, 24 C.F.R. § 100.500(c) provides:

> (1) The charging party . . . or the *plaintiff* . . . has the *burden of proving* that a challenged practice caused or predictably will cause a discriminatory effect.
>
> (2) Once the charging party or *plaintiff* satisfies the *burden of proof* set forth in paragraph (c)(1) of this section, the *respondent or defendant* has the *burden of proving* that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant.
>
> (3) If the *respondent or defendant* satisfies the *burden of proof* set forth in paragraph (c)(2) of this section, the charging party or *plaintiff* may still prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect.

78 Fed. Reg. at 11,482 (emphasis added).

Pursuant to section 100.500(c) HUD has established a procedure (and burdens of proof) that courts are to utilize when adjudicating disparate impact cases. It is apparent, based on the plain language, that HUD is asserting an authority to regulate judicial rules of procedure and rules of evidence. For example, HUD uses the terms "plaintiff" and "defendant," which are clearly parties in litigation. Similarly, section 100.500(c) provides the order that the plaintiff and defendant must present certain evidence. Finally, HUD attempts to control who has the "burden

of proof" during different parts of a trial. 78 Fed. Reg. at 11,482; s*ee* 75A Am. Jur. 2d *Trial* § 1150 (2d ed. 2016) (explaining that "[i]n charging the jury in a civil case, *the court* should correctly define the degree of proof which the party having the burden of proof must produce to sustain his or her claim.") (emphasis added).

In developing section 100.500(c) HUD recognized[1] that the courts of appeals were not in agreement concerning the manner in which they analyzed disparate claims. Unfortunately, HUD sugarcoats these conflicts as simply "variation[s] of existing law." 78 Fed. Reg. at 11,462. Additionally, HUD admits it developed section 100.500(c) to achieve "nationwide consistency," and that the rule "formaliz[es] the three-part burden-shifting test for *proving* such liability under the [FHA], [and] the rule provides for consistent and predictable application of the test on a national basis." 78 Fed. Reg. at 11,460 (emphasis added).

Thus, HUD understood that the courts of appeals did not agree on how they should analyze disparate impact claims, and HUD took it upon itself to choose the "best" option.

**B. Rules of Procedure and Evidence Are Significant.**

Rules of procedure and evidence used by courts have a fundamental impact on the outcome of a case. As the Supreme Court has explained: "[t]o experienced lawyers it is commonplace that the outcome of a lawsuit . . . depends more often on how the factfinder appraises the facts than on a disputed construction of a statute or interpretation of a line of precedents." *Speiser v. Randall*, 357 U.S. 513, 520 (1958). In turn, "the procedures by which the facts of the case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied."

[1] HUD explained that "[o]ne federal court of appeals applies a multi-factor balancing test, other courts of appeals apply a hybrid between [balancing and burden shifting], and one court of appeals applies a different test for public and private defendants." 78 Fed. Reg. at 11,462.

*Id.* In *McDonnell Douglas Corp. v. Green,* the Court used its power to determine the "proper order and nature of proof" in employment discrimination cases. 411 U.S. 792, 793 (1973). The Court recognized the importance of rules of procedure and evidence by referring to "order and allocation of proof" as a "critical issue." *Id.* at 800.

Clearly, the differing burdens of proof required by the lower federal courts in disparate impact cases are not simply "variations of existing law" as referred to by HUD; instead, these burdens of proof establish the fundamental underpinnings of a court's adjudication in disparate impact cases.

## II. HUD IMPROPERLY STEPPED INTO THE SHOES OF THE UNITED STATES SUPREME COURT.

### A. The Supreme Court Resolves Conflict of the Courts of Appeals.

Article III of the U.S. Constitution provides: "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. ART. III, §1. However, while the Constitution establishes the framework of the judiciary, it is accepted that Congress has authority over the appellate jurisdiction of the Supreme Court. *See, e.g., Lockerty v. Phillips*, 319 U.S. 182, 187 (1943) (providing that Congress can prescribe the appellate review of the Supreme Court); *Am. Constr. Co. v. Jacksonville, T. & K.W. Ry. Co.*, 148 U.S. 372, 378 (1893) (explaining that the Court "can exercise no appellate jurisdiction, except in cases, and in the manner and form, defined and prescribed by congress.").

28 U.S.C. § 1254 provides the U.S. Supreme Court with jurisdiction to review cases in the courts of appeals "[b]y writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree . . .." In accord with 28 U.S.C. §

1254, the Supreme Court's rules provide that a "compelling reason" for granting certiorari exists when "a United States court of appeals has created a decision in conflict with the decision of another United States court of appeals on the same important matter . . .." Sup. Ct. R. 10(a). In *Magnum Imp. Co. v. Coty*, the Court discussed its jurisdiction to accept cases by certiorari provided by the predecessor to 28 U.S.C. §1254. It explained that Congress provided the Court with jurisdiction to accept cases by certiorari from the circuit courts for two reasons, first "to *secure uniformity of decision between those courts* in the nine circuits, and second to bring up cases involving questions of importance which it in in the public interest to have decided by this court of last resort." *Magnum Imp. Co. v. Coty*, 262 U.S. 159, 163 (1923) (emphasis added); *see* Robert L. Stern, *et al.*, *Supreme Court Practice*, at 226 (8th ed. 2002) ("One of the purposes of certiorari jurisdiction is to bring uniformity of decisions on [matters of federal and general law] among the federal courts of appeals.").

Thus, pursuant to its congressionally delegated authority, the Supreme Court resolves conflicts among the courts of appeals.

### B. The Supreme Court Chose not to Resolve the Conflict Concerning the Proper FHA Disparate Impact Analysis.

In *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) (hereinafter *TDHCA v. ICP*) the Supreme Court held that disparate impact claims are cognizable under the Fair Housing Act. However, the Court did not accept the following question presented by the Petitioner: "If disparate-impact claims are cognizable under the Fair Housing Act, what are the standards and burdens of proof that should apply?" Petition for Writ of Certiorari at i, *TDHCA v. ICP*, 135 S. Ct. 2507 (2015) (No. 13-1371), 2014 WL 1989121.

In its discussion of the manner in which courts must review disparate impact claims, the Court explains that "[c]ourts must . . . examine with care whether a plaintiff has made out a prima facie case of separate impact" and that the plaintiff must demonstrate a "causal connection" between the defendant's policy and the disparate impact. *TDHCA*, 135 S. Ct. at 2523. Additionally, the Court cautions that courts must not interpret disparate impact liability in such a way as to "inject racial considerations into every housing decision." *Id*. at 2524.

Nowhere in its analysis of disparate impact liability does the Supreme Court entertain a "burden shifting" approach to liability. And it does not suggest that defendants can be liable under the FHA for determining valid priorities simply because different priorities could "ha[ve] a less discriminatory effect." 78 Fed. Reg. at 11,482 (24 C.F.R. § 100.500(c)(3)). Finally, the Court did not cite to HUD's rule at 24 C.F.R. § 100.500(c) even though it had been promulgated before *TDHCA v. ICP* was decided.

It is within the Supreme Court's authority to resolve conflicts among the courts of appeals, and it chose not to do so with respect to the manner in which courts should analyze FHA disparate impact claims. By enacting 24 C.F.R. § 100.500(c) HUD unlawfully wrestled that authority from the Court.

## III. CONGRESS HAS NOT PROVIDED A CLEAR AUTHORIZATION TO HUD ALLOWING IT TO REGULATE JUDICIAL RULES AND PROCEDURES.

Congress may delegate its authority over the judiciary to the other branches of government. In this case, however, Congress has not provided a clear statement providing HUD with the authority to develop judicial rules of procedure and evidence.

**A. Congress May and Has Delegated Its Authority Over Court Rules to the Judiciary.**

As explained above, "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. ART. III, §1. In turn, the Supreme Court has recognized that Article III vests the "judicial Power" in the Supreme Court while also acknowledging that Congress's authority to establish lower courts provides Congress with certain powers over the conduct of those courts. Paul Taylor, *Congress's Power to Regulate the Federal Judiciary: What the First Congress and the First Federal Courts Can Teach Today's Congress and Courts*, 37 Pepp. L. Rev. 847, 887 (2010) (providing Supreme Court quotes pertaining to Congress's power over the federal courts).

In *Wayman v. Southard*, the Court addressed whether Congress may delegate its authority over the judicial branch to the courts. 23 U.S. 1, 10 (1 Wheat.) (1825). Chief Justice Marshall stated that "Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." *Id.* at 43. Furthermore, he explained that in the Judiciary Act of 1789, Congress had properly delegated to the courts the authority to "make rules, directing the returning of writs and processes, the filing of declarations and other pleadings, and other things of the same description." *Id.* at 43. This notion was repeated in *Sibbach v. Wilson*, where the Court declared "Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or constitution of the United States." 312 U.S. 1, 9 (1941). More recently, in *Mistretta v. United States*, the Court reiterated the idea that Congress may confer some of its powers on the judicial branch. 488 U.S. 361 (1989). Justice Blackmun explained that Congress "has authorized this Court to establish rules for the conduct of its own business and to prescribe rules of procedure for lower federal courts in bankruptcy cases, in other civil cases, and

in criminal cases, and to revise the Federal Rules of Evidence." *Id.* at 388. Finally, in *Dickerson v. United States*, the Court provided that it is "clear" that in the absence of a relevant Act of Congress, the Court "has supervisory authority over the federal courts, and [it] may use that authority to prescribe rules of evidence and procedure that are binding in those tribunals." 530 U.S. 428, 437 (2000) (emphasis added).

Therefore, pursuant to *Wayman*, *Sibbach*, *Mistretta*, and *Dickerson*, there can be little doubt that Congress has the authority to both create judicial procedural rules and to delegate that authority to the courts. It is also clear that absent such a delegation, courts are free to create rules of procedure and evidence to govern judicial proceedings.

### B. A Delegation of Congressional Article III Authority to an *Executive Agency* Raises Separation of Powers Concerns, Thus Requiring A Clear Statement By Congress.

In contrast to *Wayman, Sibbach, Mistretta* and *Dickerson,* HUD has gone one step further: it enacted 24 C.F.R. § 100.500(c) on the assumption that Congress has delegated its authority to regulate the procedures of the federal courts to the *executive branch*. This interpretation of the FHA raises serious concerns under the principle of "separation of powers" and therefore invokes the outer limits of Congress's authority. Thus, pursuant to Supreme Court precedent, HUD's interpretation of the FHA cannot stand unless there exists "a clear indication that Congress intended that result." *Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs,* 531 U.S. 159, 172 (2001) (*citing Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988)); *see also Kucana v. Holder*, 558 U.S. 233, 239-40 (2010) (providing that "[s]eparation-of-powers concerns . . . caution[ed] [the Court] against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain."); *Greene v. McElroy,* 360 U.S. 474, 507-08 (1959) (explaining that

when an executive department develops procedures "in areas of doubtful constitutionality" there must be explicit authorization to do so); *Hecht Co. v Bowles*, 321 U.S. 321, 329-30 (1944) (explaining that when dealing with the court's equity practice, its discretion cannot be limited unless Congress "made its desire plain."). In other words, Congress must provide a "clear statement" when it "intend[s] to test the constitutional waters." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Occupational Safety & Health Admin.*, 938 F.2d 1310, 1317 (D.C. Cir. 1991), *supplemented sub nom. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Occupational Safety & Health Admin., U.S. Dep't of Labor*, No. 89-1559, 1991 WL 223770 (D.C. Cir. Sept. 16, 1991). As there is no clear statement in the FHA that Congress authorized HUD to regulate the judicial branch, HUD has exceeded its authority by promulgating section 100.500(c).

***1. The Importance and Purpose of the Separation of Powers Doctrine.***

The principle of separation of powers:

> is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified. In its major features . . . it is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict."

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 239 (1995). In other words, "[g]ood fences make good neighbors." *Id.* at 240. Furthermore,

> In establishing the system of divided power in the Constitution, the Framers considered it essential that "the judiciary remain[ ] truly distinct from both the legislature and the executive." The Federalist No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961). As Hamilton put it, quoting Montesquieu, " 'there is no liberty if the power of judging be not separated from the legislative and executive powers.' " *Ibid.* (quoting 1 Montesquieu, *Spirit of Laws* 181).

*Stern v. Marshall*, 131 S. Ct. 2594, 2608-09 (2011); *see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 58 (1982) (plurality opinion) (explaining that Article III of the Constitution "both defines the power and protects the independence of the Judicial Branch.").[2] Therefore, the Supreme Court, and the framers of the Constitution, recognize the fundamental importance to protect each branch of government and balance authority to govern among the three.

***2. HUD's Interpretation of the FHA Raises Separation of Powers Concerns.***

As explained above, 24 C.F.R § 100.500(c) controls the manner in which courts must adjudicate disparate impact cases. *Supra* p. 2-3. Thus, HUD's interpretation of the FHA allows the executive branch to develop procedural rules that control the judiciary. This interpretation raises two distinct issues.

First, HUD's interpretation of the FHA diminishes the power of the judiciary. *Mistretta*, 488 U.S. at 381-82 (explaining that the Court does not hesitate to strike down laws that undermine the authority of a branch of the government). 28 U.S.C. § 2071 provides that "[t]he Supreme Court and all courts established by Act of Congress may from time to time prescribe rules of conduct of their business." As the Court explained, it:

> has supervisory authority over the federal courts, and we may use that authority to prescribe rules of evidence and procedure that are binding in those tribunals. However, the power to judicially create and enforce nonconstitutional "rules of procedure and evidence for the federal courts exists only in the absence of a relevant Act of Congress." Congress retains the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution.

[2] While separation of powers "protect[s] each branch of government from incursion by the others," admittedly "the three branches [of government] are not hermetically sealed from one another." *Stern*, 131 S. Ct. at 2609.

*Dickerson*, 530 U.S. at 437 (internal citations omitted). Similarly, in *Wal-Mart Stores, Inc. v. Dukes*, with respect to burdens of proof, the Court explained that *it* had "established a procedure for trying pattern-or-practice cases that gives effect to [Title VII] statutory requirements." 131 S. Ct. 2541, 2561 (2011). Moreover, the lower federal courts, while not in complete agreement, have created procedures that litigants use when litigating FHA disparate impact claims, and the Supreme Court has provided some further guidance on the issue. *See supra* n.2, pp. 4-5.

HUD's interpretation of the FHA, however, wrestles the authority to develop procedural/evidentiary rules from the judiciary and places it in the hands of the executive branch. This undermines judicial authority, thereby raising separation of powers concerns. *See Buckley v. Valeo*, 424 U.S. 1, 122 (1976) (stating that separation of powers is a "safeguard against the encroachment or aggrandizement of one branch at the expense of the other.")

In addition to diminishing the judiciary's power, HUD's interpretation of the FHA concentrates executive and judicial authority in the executive branch. *See Mistretta*, 488 U.S. at 381-82 (explaining that it is the concern of "aggrandizement that has animated [the Court's] separation-of-power jurisprudence. . ."). Article II of the Constitution provides the executive with the power to appoint federal judges. U.S. CONST. ART. II, §2, cl. 2. A Congressional delegation authorizing the executive branch to also create judicial procedures (such as section 100.500(c)) provides the executive branch with great control over the manner in which those federal judges decide[3] cases. Combining the power to select federal judges with the authority to control their trial procedures concentrates power in the executive department, thereby raising questions under the principle of separation of powers. *Cf. Mistretta*, 488 U.S. at 393 (explaining that there was no threat of expanding the powers of the Judiciary beyond its constitutional bounds because the

---

[3] *See supra* pp. 2-3.

Commission's rulemaking power over sentencing already rested in the Judiciary); *Loving v. United States*, 517 U.S. 748, (1996) (explaining that different rules on the limitation of delegation apply when Congress delegates authority that is "interlinked with duties" already assigned to the delegatee).

Thus, by promulgating section 100.500(c), HUD has interpreted the FHA in a manner that diminishes the authority of the judiciary and aggrandizes the power of the executive branch. HUD's reading of the FHA cannot stand unless there is a "clear indication that Congress intended such a result." *Solid Waste Agency of N. Cook County*, 531 U.S. at 172 (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988)). No such indication exists.

### C. Congress did not Provide a Clear Indication That it Intended HUD to Develop a Rule of Judicial Procedure.

HUD's claimed intent behind 24 C.F.R. § 100.500(c) is "to provide nationwide consistency in the application of [discriminatory effects] liability." 78 Fed. Reg. at 11,460. To do so, HUD relies on Congress's FHA delegation of certain authority under 42 U.S.C. § 3608(a) which provides that the Secretary of HUD has the "authority and responsibility for administering this FHA." Additionally, Congress's delegation of authority provides that "[t]he Secretary may make rules (including rules for the collection, maintenance, and analysis of appropriate data) to carry out this subchapter." 42 U.S.C. § 3614a.

This language does not mention the judiciary, rules of procedure and evidence, or any directives for HUD to assume a role that is clearly within the province of the judiciary. A plain reading of the delegated authority to HUD for the administration of the FHA shows no clear indication that Congress intended for HUD to develop procedural rules that control the judiciary.

* * *

Thus, while Congress may delegate its authority over judicial rules and procedure, it must clearly indicate its intent to do so if it delegates such authority to the executive branch. There is no clear indication that Congress has provided HUD with the authority to develop judicial rules or procedure and evidence. Therefore, 24 C.F.R. § 100.500(c) must be vacated.

**CONCLUSION**

The U.S. Department of Housing and Urban Development has exceeded its authority in promulgating 24 C.F.R. § 100.500(c). Congress has not provided a clear indication that it has delegated to HUD the authority to develop rules of judicial procedure and evidence. Moreover, it is the Supreme Court's duty to resolve lower court conflicts, not HUD's. Accordingly, since HUD has exceeded its congressionally delegated authority, 24 C.F.R. § 100.500(c) must be vacated.

Dated this 28th day of June, 2016.

Respectfully Submitted,

/s/ Felicia K. Watson
Felicia K. Watson (D.C. Bar No. 468492)
Thomas J. Ward (D.C. Bar No. 453907)
National Association of Home
Builders of the United States

1201 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 266-8200
Fax: (202) 266-8161
Email: fwatson@nahb.org

Attorneys for *Amicus Curiae*
National Association of Home
Builders of the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June, 2016, I transmitted the foregoing documents entitled UNOPPOSED MOTION TO FILE AN *AMICUS CURIAE* BRIEF OF THE NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, CORPORATE DISCLOSURE CERTIFICATION, and *AMICUS CURIAE* BRIEF to be filed via the Court's CM/ECF system, which shall send notice to the following counsels of record:

Adam Joshua Podoll, Esq.
Allison B. Jones, Esq.
Kannon K. Shanmugan, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005

Brian G. Kennedy, Esq.
Kyle R. Freeny, Esq.
U.S. Department of Justice Civil Division,
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530

Daniel Paul Mosteller, Esq.
U.S. Department of Justice Civil Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

/s/ Felicia K. Watson________
Felicia K. Watson (D.C. Bar No. 468492)
National Association of Home Builders
of the United States
1201 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 266-8200
Fax: (202) 266-8161
Email: fwatson@nahb.org

Attorney for *Amicus Curiae*
National Association of Home
Builders of the United States