IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN INSURANCE ASSOCIATION
And NATIONAL ASSOCIATION OF
MUTUAL INSURANCE COMPANIES,

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT
And JULIAN CASTRO, in his official
Capacity as Secretary of Housing and Urban
Development,

      Defendants.

Civil Action No. 13-cv-966 (RJL)

**AFFIDAVIT OF GREG HAYWARD
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

BEFORE ME, the undersigned authority, personally appeared who, being by me duly sworn, deposed and stated as follows:

1. My name is Greg Hayward. I am an Assistant Vice President and Actuary in the Property and Casualty Actuarial Department and have served in that capacity for at least 12 years. During my career I have had several roles in the Property and Casualty Actuarial Department including actuarial analyst, senior actuarial analyst, pricing manager, and pricing director. I am currently overseeing five researcher managers and one actuarial analyst, and in addition to the management responsibilities my job duties include using my extensive experience and actuarial expertise to establish vision and strategies, conduct research, and lead broad and complex enterprise initiatives. All of this work is in support of State Farm Mutual Automobile Insurance Company, its subsidiaries and affiliates, including those selling property insurance in the United States (hereafter for those companies underwriting property insurance, "State Farm"). State Farm provides homeowner's insurance in all 50 States and in the District of Columbia.

2. I am making this affidavit in connection with the above-referenced lawsuit styled Civil Action No. 1:13-cv-00966 (RJL), *American Insurance Association et al. v. United States Department of Housing and Urban Development et al.*, in the United States District Court for the District of Columbia. State Farm is a member of Plaintiff National Association of Mutual Insurance Companies. I have the authority and have been authorized to make this affidavit on behalf of State Farm. I am over 18 years of age, capable of making this affidavit, and have personal knowledge of the facts stated herein and they are true and correct.

3. I understand that the United States Department of Housing and Urban Development

1

("HUD") has issued a final rule (the "Disparate Impact Rule") purporting to interpret the Fair Housing Act to prohibit practices, including the provision and pricing of homeowner's insurance, that result in a disparate impact on groups identified by certain protected characteristics, including race, color, and national origin (hereinafter referred to as "protected class").

4. As part of my job duties, I am familiar with State Farm's underwriting guidelines for the provision of homeowner's insurance and have researched and developed rates for State Farm's homeowner's insurance.

5. State Farm does not collect or use information about membership in protected classes for the purposes of rating or underwriting of residential property insurance.

6. State Farm does not collect, retain, or use data regarding the race, color, religion, national origin, sex, familial status, or handicap of its policyholders for its rating or underwriting of residential property insurance.

7. Because some States prohibit insurance companies from collecting or using data on the race, color, religion, national origin, sex, familial status, or handicap of its policyholders, State Farm does not collect such data for rating or underwriting of residential property insurance in any State.

8. The U.S. insurance industry is highly regulated, primarily through state law. An insurer's failure to comply with state law can lead to drastic consequences, including loss of the right to do business in that State.

9. The personal lines underwriting and rating functions at State Farm identify risk factors related to particular residential properties. After identifying those risks as being eligible to insure from an underwriting perspective, State Farm uses data wholly unrelated to the protected class status to establish rates for similarly situated risks. The fairness of State Farm's rates—and the viability of its products—depends on accurate and impartial evaluation and differentiation of risk, and the matching of price to risk.

10. The race, color, religion, national origin, sex, familial status, or handicap of the policyholders plays no part in State Farm's assessment of and differentiation among risks of residential property insurance.

11. Even if State Farm had access to records of its residential property insurance policyholders' race, color, religion, national origin, sex, familial status, or handicap, the existing State Farm systems for residential property insurance underwriting and rating do not have the existing capabilities to store or utilize individual records of the protected class status of its policyholders for rating or underwriting of residential property insurance. Accordingly, State Farm cannot determine whether there is a disparate impact on a protected class by a particular rating or underwriting practice or, if so, whether there is a less discriminatory alternative that either effectively differentiates risks or matches price to risk, or that does not result in unfairly discriminatory rates prohibited by the insurance laws of the states.

2

12. Collecting protected class data from existing residential property insurance policyholders and housing it in a way to be utilized by the systems for residential property insurance underwriting and rating to be able to determine whether a practice has a disparate impact on a protected group or, if so, to determine whether such a less discriminatory alternative was available, would be expensive and would expressly interject those prohibited factors into consideration by State Farm underwriting and rating processes. The costs would include survey campaigns, new hardware and software, and expanded data-storage facilities. In addition, collecting data on the protected characteristics listed in the Disparate Impact Rule would require State Farm to expend substantial human resources, including time spent planning for collecting and housing the new data, and continued maintenance of new data.

13. Applicants for residential property insurance and residential property insurance policyholders may be unwilling to provide data about race, color, religion, national origin, sex, familial status, or handicap status, making it impossible to collect and to have an accurate way to determine disparate impact and less discriminatory alternatives if necessary.

14. Collecting data about race, color, religion, national origin, sex, familial status, or handicap status may expose State Farm to adverse publicity from persons who may disapprove of the company collecting this data, and thus damaging its reputation among existing and potential customers.

15. If State Farm were to include such protected classes as factors in its rating or underwriting of residential property insurance to be able to accurately determine disparate impacts of underwriting or rating practices and less discriminatory alternatives, State Farm may render its rating and underwriting models to be less predictive of insurance risk. To counteract any disparate impact on one protected class may transfer the impact to another protected class which may result in allegations of intentional discrimination under the Fair Housing Act or state law. Inaccurate models used in underwriting and rating may result in allegations that State Farm is violating state insurance laws which prohibit unfair discrimination.

16. State Farm may not take race or other similar protected characteristics into account in its ratemaking or underwriting decisions for residential property insurance under state insurance laws.

17. State Farm cannot accurately determine whether it's underwriting or rating practices for residential property insurance create a disparate impact or any less discriminatory alternative, without taking steps that undermine its current business practices, and its obligations to comply with state insurance laws that prohibit consideration of the factors defining the protected classes in underwriting or rating residential property insurance.

18. Under the HUD Disparate Impact Rule, HUD could mandate an alleged remedy for disparate-impact issues by forcing consideration of the race, color, religion, national origin, sex, familial status, or handicap of its policyholders into the underwriting and ratemaking process for residential property insurance. That, in turn, may result in violations of the state insurance laws prohibiting consideration of such factors in residential property insurance or unfair

discrimination. In addition, remedying disparate impact on one protected class by transferring the impact to another protected class may result in allegations of intentional discrimination under the Fair Housing Act or state laws.

19. State Farm makes its underwriting and rating decisions based primarily on insurance risk, and does not consider the race, color, religion, national origin, sex, familial status, or handicap of applicants for residential property insurance. Forced compliance with the Disparate-Impact Rule by HUD will call State Farm to account for its policyholders' race, color, religion, national origin, sex, familial status, or handicap, in violation of state law.

20. I reside and work primarily in the State of Illinois. This affidavit and all affidavits and drafts I have prepared were prepared with the assistance of counsel.

FURTHER, Affiant sayeth not.

*[signature]*

Greg Hayward

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this 29 day of June, 2016, by Greg Hayward, who is personally known to me to be the person whose name is subscribed to this document.

*[signature]*
Notary Public

OFFICIAL SEAL
TIFFANY L SCOTT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/05/18

4