IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and JULIAN CASTRO, in his official capacity as Secretary of Housing and Urban Development,<br><br>Defendants. | Civil Action No.: 13-cv-966 (RJL)<br><br>**DECLARATION OF WILLIAM G. HIRSCHFELD IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

I, William G. Hirschfeld, being duly sworn, do hereby state as follows:

1. I am over the age of eighteen and competent to provide testimony in the above matter. I am currently employed as the Vice President of Underwriting for the Franklin Mutual Insurance Group ("Franklin Mutual" or "the Company"). Franklin Mutual is a property and casualty insurance company authorized to issue insurance policies in New Jersey only, and as such, is one of the top ten largest, homeowners insurers in the State. In my capacity as the Vice President of Underwriting, I am knowledgeable about the policies and practices of Franklin Mutual regarding the collection of data from policyholders and applicants for insurance, as well as the data that is currently used by the Company in the underwriting process and the cost and burdens associated with the collection of additional data, as described below.

2. I make this declaration in support of the motion for summary judgment filed by the plaintiffs, the American Insurance Association and the National Association of Mutual

Insurance Companies, in the above matter, and to address the impact on Franklin Mutual of the Department of Housing and Urban Development's ("HUD") Disparate-Impact Rule.

### Current Practices at the Company

3.  Prior to the promulgation by HUD of the Disparate-Impact Rule, Franklin Mutual did not, and the Company currently does not, collect, retain or use data regarding the race, color, religion, national origin, sex, familial status or handicaps of its policyholders or applicants for insurance.

4.  To the contrary, I am advised that New Jersey law prohibits the Company, in setting rates, from unfairly discriminating against any person or group of persons based upon race, color, religion, national origin, sex, familial status or handicaps. Accordingly, the Company does not currently collect, maintain or use such data in connection with underwriting or rate making.

5.  The insurance industry in New Jersey is heavily regulated by the New Jersey Department of Banking and Insurance. All homeowners rates must receive prior approval from the Department, and therefore, any change in rates, rules and/or forms must receive Department approval before they may be used. A failure by Franklin Mutual to comply with state law would have drastic consequences for the Company, including the loss of its ability to do business in New Jersey, the only state in which it operates.

6.  The Company's underwriting process identifies risk factors related to particular properties in a way that allows the Company to establish rates. In order to do so fairly, the Company needs an accurate and impartial evaluation and differentiation of risks. As indicated above, the race, color, religion, national origin, sex, familial status or handicap of the Company's policyholders are not used in the assessment and differentiation of those risks.

## Effect of Compliance With Disparate-Impact Rule

7. To determine whether it complies with by the Disparate-Impact Rule, Franklin Mutual would need to start collecting data regarding its policyholders' protected characteristics, as the Company currently does not collect that information for its purposes.

8. Collecting that data would entail significant additional costs, as it would require survey campaigns, changes to existing software, and potentially additional or different hardware and expanded data-storage capability.

9. In addition, collecting data on the protected characteristics identified in the Disparate-Impact Rule would require the Company to expend substantial additional human resources, likely including the retention of outside consultants in order to assist in the planning and implementation of the collection of the additional data and the subsequent inclusion of that data into the risk evaluation process.

10. After collecting the necessary data, Franklin Mutual would need to use the data to determine if it complies with the Disparate-Impact Rule, assuming that it could do so without violating existing New Jersey law. This process would require the Company to evaluate, at potentially significant expense, the legality under applicable law of the collection, maintenance and use of this data in connection with its business practices.

11. In the event that Franklin Mutual could reach the conclusion that it would be able to collect, maintain and utilize such data without violating state law and jeopardizing its ability to do business in New Jersey, the Company would then need to build new rating models that considered the race, color, religion, national origin, sex, familial status and/or handicap of its policyholders.

12. Without taking all of these steps, Franklin Mutual could not determine whether its practices create a disparate impact upon its policyholders and also could not implement a remedy to address any potential disparate-impact issue.

13. In addition, to ensure compliance with the Disparate-Impact Rule, the Company would need to cross reference the newly-collected data against prior underwriting and rating determinations based on other, actuarially relevant factors and adjust its underwriting, rating and pricing decisions accordingly. Franklin Mutual is unsure whether or how it could do so consistent with its obligations under New Jersey law.

14. In the absence of the implementation of the Disparate-Impact Rule in this area, Franklin Mutual would continue its current practice of **not** collecting information regarding the protected characteristics of its policyholders, which would result in a substantial saving of time, expenses, and costs.

## Conclusion

15. But for the Disparate-Impact Rule, Franklin Mutual would continue its current practice, which specifically avoids collection, retention or use of data about the race, color, religion, national origin, sex, familial status or handicap of its policyholders. Changing those practices would cause the Company to incur substantial additional costs.

16. The effect of the Disparate-Impact Rule on the Company is significant in that it appears to require the Company to collect, maintain and use data in violation of both New Jersey law and settled actuarial principles, and yet failure to collect, maintain and use such data would render the Company unable to determine whether its practices create a disparate-impact issue and to implement a remedy to address any such issue.

{R0351169.2}

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 23, 2016

William G. Hirschfeld