IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and JULIAN CASTRO, in his official capacity as Secretary of Housing and Urban Development,<br><br>Defendants. | Civil Action No. 13-cv-966 (RJL) |

**AFFIDAVIT OF DIANNE L. PRIEST
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

BEFORE ME, the undersigned authority, personally appeared Dianne L. Priest who, being by me duly sworn, deposed and stated as follows:

1. My name is Dianne Priest. I am the Executive Vice President of Cameron Mutual Insurance Company ("Cameron Mutual"). In that capacity, I am responsible for the Underwriting and Research and Development functions of the company.

2. I am making this affidavit in connection with the above-referenced lawsuit styled Civil Action No. 13-cv-966 (RJL), *American Insurance Association et al. v. United States Department of Housing and Urban Development et al.,* in the United States District Court for the District of Columbia. Cameron Mutual Insurance Company is a member of Plaintiff National Association of Mutual Insurance Companies. I have the authority and have been authorized by

Cameron Mutual to make this affidavit. I am more than 18 years old, am capable of making this affidavit, and have personal knowledge of the facts set forth herein.

3. As part of my duties as Executive Vice President, I am familiar with and have knowledge of the computer systems and data repositories used to support Cameron Mutual's underwriting of homeowners business. I am familiar with the application forms used to collect underwriting information from persons applying for homeowners insurance with Cameron Mutual. I am also familiar with the underwriting rules and procedures which apply to homeowners business and the factors used in the ratemaking process for the homeowners line of business.

4. Cameron Mutual does not request, collect or store information or records relating to race, color, religion, national origin, or handicap as part of the application process for homeowners insurance.

5. Cameron Mutual does not use race, color, religion, national origin, sex, or handicap as factors in underwriting its homeowners business. The underwriting process employed by the company focuses upon the particular and unique risk factors presented by the real property we are requested to insure.

6. Cameron Mutual does not use race, color, religion, national origin, sex, or handicap as factors when developing underwriting rules or rates for homeowners business.

7. Cameron Mutual does not collect or store information relating to race, color, religion, national origin, sex, or handicap in its homeowners data repositories. These data repositories are not designed or structured to capture this information. Although data on an applicant or insured's sex or marital status may be present in an underwriting file, this information is not aggregated or stored in any homeowners data repository in a format or

structure which would make it able to be used as a rating factor in the homeowners ratemaking process.

8. To determine if Cameron Mutual is in compliance with the Disparate Impact Rule, it would need to start collecting and storing information on its applicants' and insureds' race, color, religion, national origin, sex, and handicap.

9. In order to collect information on the race, color, religion, national origin, sex, or handicap of current insureds, Cameron Mutual would be required to mail surveys to each person presently insured under a policy issued by Cameron Mutual. Mailing and postage costs would amount to thousands of dollars. Additionally, personnel expenses associated with manually inputting survey information would be incurred.

10. In order to collect the race, color, religion, national origin, sex, or handicap of applicants for insurance, Cameron Mutual's user interfaces and data repositories would need to be modified to allow this information to be requested, collected and stored. This would entail substantial expenditures on in-house personnel and outside consultants to program the changes to system interfaces and also to the database architecture.

11. Cameron Mutual would have no way to compel its insureds to comply with any request for data on their protected characteristics. As a result, the data collected likely would be incomplete and would provide an inaccurate basis for disparate impact analysis.

12. Because of the Disparate-Impact Rule, Cameron Mutual will need to assess whether and how it can collect, organize, and analyze data regarding the race, color, religion, national origin, sex, or handicap of its policyholders, consistent with the state law in each state in which it operates.

13. To determine whether it complies with the Disparate Impact Rule, Cameron Mutual would need to use the collected data regarding policyholders' protected characteristics, including race, color, religion, national origin, and handicap, if such use could be permitted under state law.

14. But for the Disparate Impact Rule, Cameron Mutual would not collect, retain, or use data about the race, color, religion, national origin, or handicap of its homeowners policyholders.

15. But for the Disparate Impact Rule, Cameron Mutual would not incur the costs of storing or analyzing data on the race, color, religion, national origin, or handicap of its policyholders, or of determining whether and how the data could be used consistent with state law.

FURTHER, affiant sayeth naught.

*Dianne L. Priest*

Dianne L. Priest, Affiant