IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and JULIAN CASTRO, in his official capacity as Secretary of Housing and Urban Development,<br><br>  Defendants. | Civil Action No.: 13-cv-966 (RJL) |

**AFFIDAVIT OF GENEAU M. THAMES
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BEFORE ME, the undersigned authority, personally appeared Geneau M. Thames, Esq. who, being by me duly sworn, deposed and stated as follows:

1.   I am over eighteen years of age and am not suffering under any legal or physical disability.

2.   This Affidavit is submitted on behalf of Plaintiff's Motion for Summary Judgment. The statements made below are based on my personal knowledge on behalf Harford Mutual Insurance Company, referred to herein as "Harford Mutual."

3.   I am the General Counsel and Director of Compliance for Harford Mutual. Harford Mutual is a member of Plaintiff National Association of Mutual Insurance Companies. My duties at Harford Mutual include ensuring that Harford Mutual is in compliance with state and federal regulatory laws in its underwriting and issuance of the commercial lines products it sells.

1

4. Harford Mutual's principal office is domiciled in the State of Maryland but it sells its insurance products in the entire Mid-Atlantic Region and also some southern Atlantic states.

5. Although Harford Mutual writes commercial line products, approximately forty percent (40%) of its book insures habitational risks. By way of example, habitational risks insurance policies are designed for residential properties such as apartment buildings, homeowners associations, rented houses and condominiums.

6. The insurance industry is highly regulated through each State in which an insurer performs its business. An insurer is required to comply with the insurance rules and regulations of a particular state and the consequences of failing to comply can be cataclysmic. An insurer can face significant fines and even the loss of the right to conduct business as an insurer in the State.

7. It is understood that the United States Department of Housing and Urban Development ("HUD") has issued a final rule purporting to interpret the Fair Housing Act to prohibit practices including the provisions and pricing of insurance that results in a disparate impact on groups of protected individuals including race, color, and national origin for individuals attempting to gain access to fair housing opportunities.

7. This rule also has an effect on the commercial market especially as it relates to the habitational book. Similar to homeowner's insurance carriers, insurers of habitational risks sell its products based on principles of risk assessment. Like many carriers, Harford Mutual identifies risk factors based on specified data for a given property such as, age of property, construction type, catastrophe history of the region, mitigation of risks taken by the property owner for the property, etc. This necessarily includes the type of "housing" that HUD's final ruling on the Disparate Impact Rule purports to protect.

8. Harford Mutual does not currently collect data regarding the race, color, religion, national origin, sex, familial status, or handicap of its policyholders or their tenants.

9. Due to the enactment of the Disparate-Impact Rule, Harford Mutual will need to assess whether it will be required to comply with the Disparate Impact Rule based on its substantial habitational book. This includes an assessment of how, under state law it would collect, organize and analyze such data from existing and prospective policyholders.

10. It should be noted that as a Maryland domiciled insurer wherein approximately 33% of Harford Mutual's business is written; Maryland law forbids even the collection of data regarding certain characteristics of its insureds, including that related to race, color, religion, national origin, sex, familial status, or handicap.

11. Furthermore, collecting such data from existing policyholders and housing it in the Company's system would be expensive. The costs would include new hardware, software and expanded data-storage facilities. In addition, it would require the Company expend significant human resources and man hours than it would not otherwise be required to exhaust.

12. After collecting data on the race, color, religion, national origin, sex, familial status or handicap of its policyholders, Harford Mutual would need to evaluate what steps it could take to comply with the Rule without violating state and federal discrimination laws. This analysis will consume additional time and resources.

13. But for the Disparate-Impact Rule, Harford Mutual would not collect, retain, or use data about race, color, religion, national origin, sex, familial status, or handicap of its policyholders.

    I declare under penalty of perjury that the foregoing is true and correct. Executed on this __14TH__, day of June, 2016 in Harford County, Maryland.

_____
GENEAU M. THAMES, ESQ.
General Counsel & Director of Compliance
Harford Mutual Insurance Company, Inc.

STATE OF MARYLAND
COUNTY OF HARFORD

I, the undersigned Notary Public, do hereby affirm that <u>Geneau M. Thames</u> personally appeared before me on this __6/14/16__ and signed the above Affidavit as her free and voluntary act and deed.

__3/6/19__
My Commission Expires

_Christina A. Dickerson_
Christina A. Dickerson
Notary Public

[Notary Seal: CHRISTINA DICKERSON, NOTARY PUBLIC, HARFORD COUNTY, MD]