# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN INSURANCE ASSOCIATION and NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development,<br><br>Defendants. | Civil Action No. 13-cv-966 (RJL) |

**UNOPPOSED MOTION OF THE AMERICAN CIVIL LIBERTIES UNION, THE NATIONAL FAIR HOUSING ALLIANCE, THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, THE POVERTY & RACE RESEARCH ACTION COUNCIL, THE NATIONAL CONSUMER LAW CENTER, THE NATIONAL COMMUNITY REINVESTMENT COALITION   THE NATIONAL HOUSING LAW PROJECT, LATINOJUSTICE PRLDEF, AND AARP FOR LEAVE TO FILE A BRIEF *AMICI CURIAE***

The American Civil Liberties Union ("ACLU"), the National Fair Housing Alliance ("NFHA"), the Lawyers' Committee for Civil Rights Under ("LCCRUL"), the Poverty & Race Research Action Council ("PRRAC"), the National Consumer Law Center ("NCLC"), the National Community Reinvestment Coalition ("NCRC"), the National Housing Law Project ("NHLP"), LatinoJustice PRLDEF and AARP, through counsel, respectfully move this Court for lave to file a brief A*mici Curiae* in support of  Defendant's Motion for Summary Judgment (ECF No. 64).  The proposed brief is attached to this Motion. In support of this Motion, the ACLU, NFHA, LCCRUL, PRRAC, NCLC, NCRC, NHLP, LatinoJustice PRLDEF and AARP state as follows:

1. The ACLU is a nationwide, nonpartisan organization with more than 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. Since its founding in 1920, the ACLU has litigated numerous cases aimed at ending segregation and racial discrimination in all its forms, and it has appeared frequently as amicus curiae in cases implicating these issues. Of particular relevance to this case, the ACLU advocates for people who have historically been denied their civil rights to housing on the basis of race and membership in other protected classes. *See, e.g., Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1035 (8th Cir. 1979), cert. denied, 445 U.S. 905 (1980) (plaintiffs' counsel in Fair Housing Act challenge to zoning ordinance that blocked construction of integrated housing development); *Am. Family Mut. Ins. Co.*, 978 F.2d 287 (plaintiffs' counsel in Fair Housing Act challenge to redlining in homeowner's insurance business); *United States v. C.B.M. Group, Inc.*, No. 01-857-PA (D. Or., filed June 8, 2001) (co-counsel in Fair Housing Act challenge to application of "zero-tolerance for violence" policies to victims of domestic violence as disparate impact discrimination based on sex); *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675 (D. Vt. 2005) (amicus curiae in Fair Housing Act challenge to practice of evicting victims of domestic violence); *Adkins v. Morgan Stanley*, No. 12-CV-7667 (S.D.N.Y. filed Oct. 15, 2012) (plaintiffs' counsel in Fair Housing Act challenge to discrimination in mortgage securitization).

2. NFHA is a consortium of approximately 97 private, non-profit, fair-housing organizations, state and local civil-rights groups, and individuals. In conjunction with its members, NFHA strives to eliminate housing discrimination and ensure equal housing opportunities for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy and enforcement. As part of its enforcement activities, NFHA assists its members and participates in federal and state court litigation brought under the Fair

Housing Act ("FHA") and state and local fair housing laws. In addition to bringing its own claims, NFHA monitors federal cases brought under the FHA and files amicus briefs in cases in which it has an interest. Identifying and eliminating discrimination in the availability and marketing of homeowners insurance has been one of NFHA's highest priorities for almost two decades. NFHA has dedicated significant resources to the study of the homeowners' insurance market, and has received grants and contracts with the U.S. Department of Housing and Development to investigate homeowners' insurers. NFHA has also been a complainant or a plaintiff in many cases involving racial discrimination in the availability and marketing of homeowners' insurance. For example, NFHA was the plaintiff in *National Fair Housing Alliance et al. v. Prudential Insurance Company*, 208 F.Supp.2d 46 (D.C. 2002), and in *National Fair Housing Alliance et al. v. Travelers Insurance Company*, Case No. 1:00CV1506 (D.D.C). NFHA was the lead complainant in *National Fair Housing Alliance v. State Farm Insurance Companies*, Case No. 05-94-1351-8, U.S. Department of Housing and Urban Development, and *National Fair Housing Alliance v. Allstate Insurance Company*, Case No. 03-94-0529-8, U.S. Department of Housing and Urban Development. NFHA has filed amicus briefs in several insurance discrimination cases, including *United Farm Bureau v. Metropolitan Human Relations Comm'n*, 24 F.3d 1008 (7th Cir. 1994), and *Ojo v. Farmers Insurance Group*, 600 F.3d 1205, 1208 (9th Cir. 2010).

3. LCCRUL is a nonpartisan, nonprofit organization that was formed in 1963 at the request of President John F. Kennedy to involve the private bar in providing legal services to address racial discrimination. The principal mission of the Lawyers' Committee is to secure, through the rule of law, equal justice under law, including working with communities across the nation to combat and seek to remediate discriminatory housing practices. The Committee's major objective is to use

the skills and resources of the bar to obtain equal opportunity for minorities by addressing factors that contribute to racial justice and economic opportunity. Given our nation's history of racial discrimination, de jure segregation, and the de facto inequities that persist, the Lawyers' Committee's primary focus is to represent the interests of African Americans in particular, other racial and ethnic minorities, and other victims of discrimination, where doing so can help to secure justice for all racial and ethnic minorities. The LCCRUL has litigated numerous fair housing claims under the FHA, many of which have raised disparate impact claims.[1]

4. PRRAC is a civil rights policy organization based in Washington, D.C., committed to bringing the insights of social science research to the fields of civil rights and poverty law. PRRAC's housing work focuses on the government's role in creating and perpetuating patterns of racial and economic segregation, the long term consequences of segregation for low income families of color in the areas of health, education, employment, and economic mobility, and the government policies that are necessary to remedy these disparities.

5. NCLC is a national research and advocacy organization focusing on justice in consumer financial transactions, especially for low income and elderly consumers. Since its founding as a nonprofit corporation in 1969, NCLC has been a resource center addressing numerous consumer finance issues affecting equal access to fair credit in the marketplace. NCLC publishes a 20-volume Consumer Credit and Sales Legal Practice Series, including Credit Discrimination, Sixth Ed., and has served on the Federal Reserve System Consumer-Industry Advisory Committee and

---

[1] The LCCRUL has several independently governed local affiliates and the following affiliates join the LCCRUL on this brief: (i) the Washington Lawyers' Committee for Civil Rights and Urban Affairs; (ii) the Chicago Lawyers' Committee for Civil Rights Under Law, Inc.; (iii) the Mississippi Center for Justice in Jackson, Mississippi; and (iv) the Lawyers' Committee for Civil Rights and Economic Justice in Boston; and (v) the Public Interest Law Center of Philadelphia.

committees of the National Conference of Commissioners on Uniform State Laws. NCLC has also acted as the Federal Trade Commission's designated consumer representative in promulgating important consumer- protection regulations.

6. NCRC is a nonprofit public interest organization founded in 1990. NCRC, both directly and through its network of six hundred community-based member organizations, works to increase access to basic banking services, including credit and savings, and to create and sustain affordable housing, job development and vibrant communities for America's working families. NCRC, through its National Neighbors civil rights program, seeks to advance fair lending and open housing practices nationwide and actively assists in efforts to affirmatively further fair housing and eliminate discrimination that is detrimental to the economic growth of low to moderate income and traditionally underserved communities.

7. NHLP is a private, non-profit, national housing and legal advocacy center established in 1968. Our mission is to advance housing justice for low-income people by increasing and preserving the supply of decent, affordable housing; improving existing housing conditions, including physical conditions and management practices; expanding and enforcing low-income tenants' and homeowners' rights; and increasing housing opportunities for racial and ethnic minorities. Through policy advocacy and litigation, NHLP has been responsible for many critically important changes to federal housing policy and programs that have resulted in increased housing opportunities and improved housing conditions for low-income people. NHLP has worked with hundreds of advocates, attorneys, and agencies throughout the country on cases involving tenants and homeowners. For decades, NHLP has been involved in efforts to promote fair housing opportunity for all.

8. LatinoJustice PRLDEF which was founded in 1972 as the Puerto Rican Legal Defense and Education Fund champions an equitable society. Using the power of the law together with advocacy and education, LatinoJustice seeks to protect opportunities for all Latinos to succeed in school and work, fulfill their dreams, and sustain their families and communities. For over 40 years, LatinoJustice has advocated for and defended the constitutional rights and the equal protection of all Latinos under the law, and has litigated numerous cases challenging multiple forms of discrimination including fair housing, employment, education, language rights, redistricting and voting rights.  LatinoJustice has successfully challenged discriminatory housing practices preserving the right of Latino immigrants to secure housing in their communities.

9. AARP is a nonprofit, nonpartisan organization dedicated to fulfilling the needs and representing the interests of people age fifty and older.  AARP fights to protect older people's financial security, health, and well-being.  AARP's charitable affiliate, AARP Foundation, creates and advances effective solutions that help low-income individuals fifty and older secure the essentials.  Among other things, AARP and AARP Foundation advocate for the elimination of discrimination in housing and for the availability of affordable, accessible, and appropriate housing through the vigorous enforcement of fair housing laws.  For example, AARP attorneys litigate on behalf of plaintiffs challenging discriminatory fair housing practices by, see e.g. *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375 (3d Cir. 2011), *cert. granted,* 133 S. Ct. 2824 (2013), *and cert. dismissed,* 134 S. Ct. 636 (2013), as well as participating as amicus curiae,  see e.g. *Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Cmty's Project, Inc.*, 135 S. Ct. 2507 (2015).

AARP and AARP Foundation submit this brief because if  disparate impact claims under the FHA are eroded, homeowners will be unable to challenge the deepest and most subtle forms

of housing discrimination that threaten their financial security. In insurance related cases, much like mortgage and consumer lending, time and again experience and studies have shown that discrimination can only be identified through careful, expert, and detailed analysis of the relevant data. Without the ability to bring disparate impact cases under the Fair Housing Act, AARP's ability to do important and leading work in this area will be compromised, and more importantly, protected classes of minority borrowers and homeowners will face discrimination that makes them more vulnerable and less financially secure.

10. All *amici* are committed to vigorous enforcement of the FHA and have actively used and/or supported disparate impact analysis in the enforcement of the Fair Housing Act in all aspects of the housing market, including the provision of property insurance. In the 48 years since the Fair Housing Act was passed, the federal courts, the federal government, and fair housing plaintiffs have successfully enforced the FHA on the basis of disparate impact principles. HUD formally promulgated its Disparate Impact regulation in 2013 – the subject of the APA challenge in this case. At that time all *amici* submitted comments in support of the HUD regulation at issue here. In 2015 the Supreme Court decided *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) confirming that disparate impact claims are cognizable under the FHA. All amici filed briefs as *amicus curiae* in support of the plaintiff Inclusive Communities Project. Long before promulgation of the HUD regulation and the Supreme Court decision, facially neutral housing practices have been struck down because they were based on no legitimate business justification, yet operated to deprive minorities, the disabled, families with children, and other protected classes from the full range of housing products and services available to others. Thus, disparate impact analysis has long-provided an essential

tool for identifying and ending patterns, practices and policies that have a disproportionately negative impact on protected groups.

11.  When considering earlier motions for summary judgment in this case in 2014, the Court granted motions to participate submitted by the ACLU, NFHA, LCCRU, PRRAC, NCLC, NCRC, NHLP, and LatinoJustice PRLDEF.

12.  This Court has the discretion to determine "the fact, extent, and manner of the participation of an amicus." *Cobell v. Norton,* 246 F .Supp. 2d 59, 62 (D.D.C. 2003).  "'An *amicus* brief should normally be allowed ... when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Jin*, 557 F. Supp. 2d at 136-37 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir.1997)).

13.  Amici have extensive experience in bringing cases pursuant to the FHA which allege disparate impact claims, including claims of discrimination by providers of property insurance, and have consistently supported the HUD regulation at issue in this case.  This experience provides the Court with a unique perspective on the issues in this case and will be "helpful and of interest to the Court in the instant litigation," *Cobell v. Norton*, *supra,* 246 F. Supp. 2d at 62.

14.  On January 28, 2014 Plaintiffs filed a Notice of Consent to Amicus Briefs in which they consented to the filing of any and all briefs of amici curiae, whether in support of either or neither party.  Counsel for HUD also has consented to this filing.

WHEREFORE, the ACLU, NFHA, LCCRUL, PRRAC, NCLC, NCRC, NHLP, PRLDEF and AARP respectfully request the Court grant this Unopposed Motion for Leave to File the attached *Amici Curiae* Brief in the above matter.

Respectfully submitted,

Rachel E. Goodman
Dennis D. Parker
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500

Joseph D. Rich
Thomas Silverstein
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
Telephone: (202) 662-8600

Morgan Williams
NATIONAL FAIR HOUSING ALLIANCE
1101 Vermont Ave. N.W., Suite 701
Washington, D.C. 20005
Telephone: (202) 898-1661

*/s/ Stephen M. Dane*
Stephen M. Dane
D.D.C. Bar #982046
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Attorneys for *Amici Curiae*

Dated September 13, 2016

# CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2016 I filed the foregoing document entitled **Unopposed Motion of the American Civil Liberties Union, the National Fair Housing Alliance, the Lawyers' Committee for Civil Rights Under Law. Poverty & Race Research Action Council, the National Consumer Law Center and the National Community Reinvestment Coalition, National Housing Law Project, LatinoJustice PRLDEF and AARP for Leave to File a Brief** *Amici Curiae* via the Court's CM/ECF system, which shall send a notice to the following counsel of record:

Kannan K. Shanmugam, Esq.
Allison B. Jones Esq.
Williams & Connolly LLP

Bryan Kennedy, Esq.
U.S. Department of Justice, Civil Division

Daniel Mosteller, Esq.
U.S. Department of Justice, Civil Rights Division

 */s/ Stephen M. Dane*
Relman, Dane & Colfax PLLC
1225 19th Street N.W., Suite 600
Washington D.C. 20036
Telephone: (202) 728-1888
Fax: (202) 783-5113