UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF MUTUAL
 INSURANCE COMPANIES,

  Plaintiff,

   v.                                           No. 1:13-cv-966 (RJL)

U.S. DEPARTMENT OF HOUSING AND
 URBAN DEVELOPMENT, *et al*.,

  Defendants.

**SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

STATUTORY AND REGULATORY BACKGROUND ...............................................................1

PROCEDURAL BACKGROUND.................................................................................................5

ARGUMENT .................................................................................................................................6

  I. PLAINTIFF'S CLAIMS ARE NOT RIPE FOR JUDICIAL RESOLUTION
     BECAUSE THERE IS AN ONGOING RULEMAKING PROCESS ..............................6

   A. Plaintiff Cannot Satisfy the Constitutional Element of the Ripeness Requirement.......7

   B. Plaintiff Fails to Satisfy the Prudential Elements of the Ripeness Requirement...........8

     1. Plaintiff Cannot Show That its Claims Are Fit for Review ...................................8

     2. Plaintiff Has Not Shown Any Hardship That Would Result From Withholding
        Judicial Review....................................................................................................9

  II. PLAINTIFF LACKS STANDING TO MAINTAIN ITS CLAIMS ................................11

   A. Plaintiff Fails to Demonstrate an Injury-In-Fact.........................................................12

   B. Plaintiff Fails to Show its Injuries Are Traceable to the Rule or That They Are
      Redressable ...............................................................................................................13

  III. PLAINTIFF'S CHALLENGE FAILS ON THE MERITS ............................................16

   A. Plaintiff Fails to Show that the 2013 Rule Improperly Expands Disparate Impact
      Liability......................................................................................................................16

B.  Plaintiff Fails to Show that HUD's 2013 Rule Categorically Conflicts with State Laws Regulating Insurance..................................................................................18

C.  Plaintiff Fails to Show that HUD Acted Beyond its Authority in Declining to Adopt Plaintiff's Preferred Standard in the Third Step of the Burden-Shifting Framework ..........................................................................................................20

CONCLUSION...........................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*,
    444 F.3d 673 (D.C. Cir. 2006)............................................................................... 2

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)........................................................................................... 6, 8

*Allen v. Wright*,
    468 U.S. 737 (1984).............................................................................................. 14

*\*Am. Petrol. Inst. v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012).......................................................................... 6, 7, 9

*Amerijet Int'l, Inc. v. Pistole*,
    753 F.3d 1343 (D.C. Cir. 2014)............................................................................. 7

*Animal Legal Def. Fund, Inc. v. Espy*,
    23 F.3d 496 (D.C. Cir. 1994)................................................................................ 13

*Ave. 6E Invs., LLC v. Yuma*,
    818 F.3d 493 (9th Cir. 2016) ............................................................................ 3, 20

*Azam v. City of Columbia Heights*,
    No. 14-1044, 2016 WL 424966 (D. Minn. Feb. 3, 2016) ........................................ 4

*Baz v. U.S. Dept. of Homeland Sec.*,
    No. 1:18-cv-1013, 2019 WL 5102827 (D.D.C. Oct. 11, 2019) ................................ 14

*Betsey v. Turtle Creek Assocs.*,
    736 F.2d 983 (4th Cir. 1984)................................................................................. 2

*Borum v. Brentwood Vill., LLC*,
    218 F. Supp. 3d 1 (D.D.C. 2016) ........................................................................... 3

*Chamber of Commerce v. NLRB*,
    118 F. Supp. 3d 171 (D.D.C. 2015) ....................................................................... 16

*Charleston Hous. Auth. v. U.S. Dep't of Agric.,*
419 F.3d 729 (8th Cir. 2005) .......................................................................... 2

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ...................................................................................... 12

*\*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020) ............................................................. 6, 8

*Crete Carrier Corp. v. EPA,*
363 F.3d 490 (D.C. Cir. 2004) ...................................................................... 14

*CTIA–The Wireless Ass'n v. FCC,*
530 F.3d 984 (D.C. Cir. 2008) ........................................................................ 8

*Ctr. of Law & Educ. v. Dep't of Educ.,*
396 F.3d 1152 (D.C. Cir. 2005) .................................................................... 14

*Davis v. FEC,*
554 U.S. 724 (2008) ...................................................................................... 12

*Dehoyos v. Allstate Corp.,*
345 F.3d 290 (5th Cir. 2003) ........................................................................ 19

*\*Delta Constr. Co. v. EPA,*
783 F.3d 1291 (D.C. Cir. 2015) .................................................................... 14

*Diamond Shamrock. v. Costle,*
580 F.2d 670 (D.C. Cir. 1978) ...................................................................... 11

*DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.,*
887 F.2d 275 (D.C. Cir. 1989) ........................................................................ 7

*Duke Power Co. v. Carolina Envt'l Study Grp.,*
438 U.S. 59 (1978) .......................................................................................... 8

*\*FW/PBS, Inc. v. Dallas,*
493 U.S. 215 (1990) ...................................................................................... 12

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n,*
508 F.3d 366 (6th Cir. 2007) ..................................................................... 2, 18

*\*Griggs v. Duke Power Co.,*
401 U.S. 424 (1971) ................................................................................... 4, 17

*\*Hodge v. Talkin,*
799 F.3d 1145 (D.C. Cir. 2015) .................................................................... 16

*HUD v. Pfaff,*
No. 10-93-84-8, 1994 WL 592199 (HUD ALJ Oct. 27, 1994) ....................... 2

iii

*Huntington Branch, NAACP v. Town of Huntington*,
844 F.2d 926 (2d Cir. 1988) ................................................................ 2

*In re Aiken Cnty.*,
645 F.3d 428 (D.C. Cir. 2011) ............................................................. 6

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*,
747 F.3d 275 (5th Cir. 2014) ............................................................... 3

*Johnson v. Bd. of Educ. of Chicago*,
457 U.S. 52 (1982) .............................................................................. 12

*Jones v. Travelers Cas. Ins. Co. of Am.*,
No. 13-cv-2390, 2015 WL 5091908 (N.D. Cal. May 7, 2015) ............... 19

*La. Envt'l Action Network v. Browner*,
87 F.3d 1379 (D.C. Cir. 1996) ............................................................. 11

*Langlois v. Abington Hous. Auth.*,
207 F.3d 43 (1st Cir. 2000) ................................................................. 2

*Laufer v. Alamac Inc.*,
No. 1:20-cv-2206-TNM, 2021 WL 1966574 (D.D.C. May 17, 2021) ..... 13

*\*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................. 12, 13, 14

*Lumpkin v. Farmers Grp., Inc.*,
No. 05-cv-2868, 2007 WL 6996777 (W.D. Tenn. July 6, 2007) .......... 19

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
496 F. Supp. 3d 600 (D. Mass. 2020) ................................................. 5

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
558 F.2d 1283 (7th Cir. 1977) ............................................................ 2

*\*Mhany Mgmt., Inc. v. Cty. of Nassau*,
819 F.3d 581 (2d Cir. 2016) ...................................................... 3, 4, 18

*Mountain Side Mobile Estates P'ship v. HUD*,
56 F.3d 1243 (10th Cir. 1995) ............................................................ 2

*\*NAACP v. Am. Family Mut. Ins. Co.*,
978 F.2d 287 (7th Cir. 1992) ................................................. 2, 10, 18, 19

*\*Nationwide Mut. Ins. Co. v. Cisneros*,
52 F.3d 1351 (6th Cir. 1995) ................................................ 2, 10, 11, 15

*\*Nat'l Ass'n of Home Builders v. US Army Corps. of Eng'rs*,
663 F.3d 470 (D.C. Cir. 2011) ............................................................ 14

iv

*Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am.,
   208 F. Supp. 2d 46 (D.D.C. 2002) ............................................................ 2, 17, 18

*Nat'l Fair Hous. All. v. Travelers Indem. Co.,
   261 F. Supp. 3d 20 (D.D.C. 2017) ............................................................... 3, 17

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,
   538 U.S. 803 (2003) ....................................................................................... 8, 9

*Nat'l Treasury Employees Union v. United States,
   101 F.3d 1423 (D.C. Cir. 1996) ...................................................................... 6, 7

Nat. Res. Def. Council, Inc. v. EPA,
   859 F.2d 156 (D.C. Cir. 1988) ........................................................................... 10

*Ohio Forestry Ass'n v. Sierra Club,
   523 U.S. 726 (1998) .............................................................................................. 6

Ojo v. Farmers Grp. Inc.,
   600 F.3d 1205 (9th Cir. 2010) .............................................................................. 2

*Prop. Cas. Ins. Ass'n of Am. v. Donovan,
   66 F. Supp. 3d 1018 (N.D. Ill. 2014) ........................................................... passim

Pub. Citizen Health Research Grp. v. FDA,
   740 F.2d 21 (D.C. Cir. 1984) ............................................................................... 7

Raines v. Byrd,
   521 U.S. 811 (1997) ......................................................................................... 6, 12

*Reno v. Flores,
   507 U.S. 292 (1993) ............................................................................................ 16

Resident Advisory Bd. v. Rizzo,
   564 F.2d 126 (3d Cir. 1977) ................................................................................. 2

Reyes v. Waples Mobile Home Park L.P.,
   903 F.3d 415 (4th Cir. 2018) ........................................................................... 3, 18

Sherley v. Sebelius,
   644 F.3d 388 (D.C. Cir. 2011) ............................................................................ 16

Sierra Club v. EPA,
   292 F.3d 895 (D.C. Cir. 2002) ............................................................................ 12

Simon v. E. Ky. Welfare Rights Org.,
   426 U.S. 26 (1976) .............................................................................................. 12

Spokeo, Inc. v. Robins,
   136 S. Ct. 1540 (2016) ........................................................................................ 12

*Sprint Corp. v. FCC*,
  331 F.3d 952 (D.C. Cir. 2003)............................................................................7, 11

*State Farm Mut. Auto. Ins. Co. v. Dole*,
  802 F.2d 474 (D.C. Cir. 1986)............................................................................ 10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)............................................................................................ 12

*\*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015)................................................................................ 4, 16, 17

*Texas v. EPA*,
  726 F.3d 180 (D.C. Cir. 2013)............................................................................ 14

*\*Toilet Goods Ass'n v. Gardner*,
  387 U.S. 158 (1967)..........................................................................................9, 11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)....................................................................................... 13

*United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n*,
  24 F.3d 1008 (7th Cir. 1994).............................................................................. 15

*United States v. Boyle*,
  469 U.S. 241 (1985)............................................................................................ 20

*Wai v. Allstate Ins. Co.*,
  75 F. Supp. 2d 1 (D.D.C. 1999) ........................................................................... 2

**Statutes**

42 U.S.C. § 3601 .......................................................................................................... 1

42 U.S.C. § 3604(a) ................................................................................................. 1, 2

42 U.S.C. § 3605(c) .................................................................................................... 18

42 U.S.C. § 3610 ......................................................................................................... 9

**Regulations**

24 C.F.R. § 100.500 ..................................................................................................... 3

24 C.F.R. § 100.70(d)(4) ...................................................................................... 2, 19

54 Fed. Reg. 3232 (Jan. 23, 1989) ........................................................................... 2

78 Fed. Reg. 11460 (Feb. 15, 2013)................................................................ *passim*

81 Fed. Reg. 69012 (Oct. 5, 2016)........................................................................ 4, 19

84 Fed. Reg. 42854 (Aug. 19, 2019) ............................................................................... 4

85 Fed. Reg. 60288 (Sept. 24, 2020) ............................................................. 4, 8, 9, 19

86 Fed. Reg. 33590 (June 25, 2021) .................................................................. 5, 7, 8

## INTRODUCTION

Pursuant to this Court's July 19, 2021, order, Defendants submit this supplemental limited to points raised at the hearing of the Parties' cross motions for summary judgment. Tr. of Hrg. at 39:7-21 (July 19, 2021). This Court should grant Defendants' summary judgment motion and deny Plaintiff's cross motion because the Court lacks subject matter jurisdiction over Plaintiff's claims. Those claims are not ripe for judicial resolution because the final rule Plaintiff challenges is currently the subject of an ongoing rulemaking process. Additionally, Plaintiff cannot demonstrate that it has standing to maintain its claims because it has failed to show an imminent injury to its members; it has failed to show that any claimed injuries are properly traceable to the final rule it challenges rather than the underlying statute as well as decades of judicial precedent and other agency rules; and it has failed to show that an order of this Court is likely to redress its injuries.

Even if this Court were to determine that it has subject matter jurisdiction over Plaintiff's claims and reach the merits of its challenge, the Court should still rule in Defendants' favor because Plaintiff falls far short of meeting its burden of showing that there are no circumstances under which the rule could be properly applied to Plaintiff's members—a necessary prerequisite to the type of facial challenge that Plaintiff presents here. Indeed, Plaintiff does not dispute that the rule has already been properly applied to an insurer in at least one case. Accordingly, Plaintiff's facial challenge cannot succeed.

## STATUTORY AND REGULATORY BACKGROUND

The Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*., makes it unlawful:

> [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a); *see also id*. § 3604(f)(1) (prohibiting actions that "otherwise make

unavailable or deny[] a dwelling ... because of a handicap"). The FHA also makes it unlawful to "discriminate against any person ... in the provision of services or facilities in connection" with the sale or rental of a dwelling. *Id*. § 3604(b), (f)(2). The FHA further makes it unlawful "to discriminate against any person in making available ..., or in the terms or conditions of … providing other financial assistance[]" related to "purchasing, constructing, improving, repairing, or maintaining a dwelling." *Id*. § 3605. Congress granted the Department of Housing and Urban Development ("HUD") express authority to enforce and interpret the Act. *Id*. §§ 3610-12, 3614a.

The FHA has long been applied to home insurers. *See* 54 Fed. Reg. 3232, 3285 (Jan. 23, 1989), *codified at* 24 C.F.R. § 100.70(d)(4); *see also, e.g.*, *Ojo v. Farmers Grp. Inc*., 600 F.3d 1205, 1208 (9th Cir. 2010) (en banc); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995); *NAACP v. Am. Family Mut. Ins. Co*., 978 F.2d 287, 300–01 (7th Cir. 1992); *Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am*., 208 F. Supp. 2d 46, 55–58 (D.D.C. 2002); *Wai v. Allstate Ins. Co*., 75 F. Supp. 2d 1, 5-8 (D.D.C. 1999).

By 2013, courts of appeals had held that the FHA prohibits unjustified conduct that has an unjustified discriminatory effect on individuals protected by the Act, but adopted various approaches to determining liability.[1] HUD published a final rule in 2013 formally promulgating its long-held position that violations of the FHA could be established through evidence of

---

[1] Five courts adopted a three-part burden-shifting approach, *see, e.g.*, *Langlois v. Abington Hous. Auth*., 207 F.3d 43, 49–50 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148–49 (3d Cir. 1977); *Charleston Hous. Auth. v. U.S. Dep't of Agric*., 419 F.3d 729, 740–42 (8th Cir. 2005); *HUD v. Pfaff*, No. 10-93-84-8, 1994 WL 592199, at *8 (HUD ALJ Oct. 27, 1994), *rev'd on other grounds*, 88 F.3d 739 (9th Cir. 1996); one applied a four-factor balancing-test, *see Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); two adopted a hybrid burden-shifting and balancing approach, *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007); *Mountain Side Mobile Estates P'ship v. HUD*, 56 F.3d 1243, 1252, 1254 (10th Cir. 1995), and one adopted burden-shifting for private defendants and balancing for public defendants. *See Betsey v. Turtle Creek Assocs*., 736 F.2d 983, 989 n.5 (4th Cir. 1984). The D.C. Circuit had not addressed which approach to take. *See, e.g.*, *2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*, 444 F.3d 673, 680 (D.C. Cir. 2006).

disparate impact and, by adopting the burden-shifting approach of the majority of courts of appeals, attempted to provide nationwide consistency in a framework for determining liability. *See* Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11460 (Feb. 15, 2013), *codified at* 24 C.F.R. § 100.500 *et seq*. (West, 2013).

Since HUD's 2013 Rule became final, four courts of appeals affirmed or adopted the 2013 Rule's burden-shifting framework in addressing FHA discriminatory effects claims. *See de Reyes v. Waples Mobile Home Park L.P.*, 903 F.3d 415, 424 (4th Cir. 2018); *Ave. 6E Invs., LLC v. Yuma*, 818 F.3d 493, 512–13 (9th Cir. 2016); *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 618–19 (2d Cir. 2016) (also noting that the 2013 Rule had a more restrictive burden-shifting framework than prior Second Circuit precedent); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014). Other courts in this district have also relied on HUD's burden-shifting framework in addressing FHA discriminatory effects claims. *See Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 28–29 (D.D.C. 2017); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 21–22 (D.D.C. 2016).

In 2014, in response to a separate insurance industry organization bringing a facial challenge to HUD's 2013 Rule, a district court in the Northern District of Illinois upheld the 2013 Rule's burden-shifting framework and held that any alleged violation of the McCarran-Ferguson Act's reverse preemption provision could only be adjudicated in the context of a concrete dispute challenging the application of the 2013 Rule to a particular insurance practice, rather than in the abstract. *See Prop. Cas. Ins. Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1051–53, 1037–42 (N.D. Ill. 2014) ("*PCI*"). The court, however, remanded the matter to HUD for the agency to provide further explanation as to why case-by-case adjudication was preferable

to providing exemptions or safe harbors related to homeowners insurance. *See id*. at 1049, 1054.[2]

In 2015, the Supreme Court held that Sections 3604(a) and 3605(a) of the FHA prohibit housing practices that have a discriminatory effect. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc*., 576 U.S. 519, 532–35 (2015). In reaching this holding, the Court clarified that "disparate-impact liability has always been properly limited in key respects," *id*. at 540, and that the FHA "mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies," *id*. (citing *Griggs v. Duke Power Co*., 401 U.S. 424, 431 (1971)). The Court highlighted the importance of the burden-shifting framework in determining FHA disparate impact liability, and twice cited HUD's 2013 Rule in this part of its analysis. *Id*. at 541–42 (citing 78 Fed. Reg. at 11470, 11476).[3] The Court also found that "[r]emedial orders in disparate-impact cases should concentrate on the elimination of the offending practice," 576 U.S. at 544, but found that "race may be considered in certain circumstances and in a proper fashion," *id*. at 545; *see also id*. (finding that "mere awareness of race" is not problematic).

In 2019, HUD proposed several changes to its 2013 Rule, *see* HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 84 Fed. Reg. 42854 (Aug. 19, 2019), and published a final rule making substantial changes in 2020. *See* HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 85 Fed. Reg. 60288 (Sept. 24, 2020). Before the 2020 Rule went into effect, a district court in the District of Massachusetts issued an order

---

[2] HUD provided that additional explanation in 2016, *see* HUD, Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance, 81 Fed. Reg. 69012 (Oct. 5, 2016), and PCI continues to challenge the adequacy of HUD's supplemental explanation. *See, e.g*., Pl.'s Mot. for Sum. J., ECF No. 221, *PCI v. Fudge*, No. 1:13-cv-8564 (N.D. Ill. May 8, 2021).

[3] The Second Circuit later held that the Supreme Court implicitly adopted HUD's 2013 Rule. *See MHANY Mgmt., Inc*., 819 F.3d at 618; *see also Azam v. City of Columbia Heights*, No. 14-1044, 2016 WL 424966, at *10 (D. Minn. Feb. 3, 2016) (explaining the consistency between the three burden-shifting steps of the 2013 Rule and the limitations to disparate impact liability specified in *Inclusive Communities*).

staying the effective date of the 2020 Rule and preliminarily enjoining HUD from enforcing the 2020 Rule. *See Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 611–12 (D. Mass. 2020). That order remains in effect; as a result, the 2020 Rule has never gone into effect.

On June 25, 2021, HUD published a notice in the Federal Register explaining that HUD had reconsidered the 2020 Rule and proposing to reinstate its 2013 Rule. *See* Reinstatement of HUD's Discriminatory Effects Standard, 86 Fed. Reg. 33590 (June 25, 2021). The agency invited interested persons to submit comments on its proposal by August 24, 2021. *See id*. HUD is now in the process of reviewing all comments received, and plans to promulgate a final rule after it has considered all comments and, as appropriate, revising its proposed rule.[4]

**PROCEDURAL BACKGROUND**

Plaintiff's Amended Complaint brings a facial challenge to HUD's 2013 Rule on the grounds that any challenge to insurers' underwriting and pricing practices would exceed the limits of disparate impact liability, *see* Pl.'s Am. Compl., Count I ¶ 80, Count II, ¶ 87, ECF No. 57, and that HUD exceeded its authority in promulgating the rule, *id*., Count III, ¶ 98, Count IV, ¶ 107.[5] The Parties filed cross motions for summary judgment in 2016. *See* Pls.' Mot. for Sum. J., ECF No. 60; Defs.' Mot. for Sum. J., ECF No. 64. In February 2017, Defendants filed the first of a series of motions by the Parties to continue a hearing on the summary judgment motions, *see, e.g.*, Defs.' Mot. for Continuance, ECF No. 72, and this case was eventually stayed, *see, e.g.*, Minute Order (Oct. 26, 2018). This Court lifted the stay on July 1, 2021, and set a hearing on the parties' summary judgment motions. *See* Minute Order (July 1, 2021). This Court conducted the

---

[4] HUD received over 10,000 comments, including one submitted by Plaintiff on August 23, 2021.

[5] Plaintiff American Insurance Association later dismissed its claims without prejudice and withdrew from this lawsuit. *See* Pl.'s Mot to Dismiss, ECF No. 104; Order 106.

hearing on July 19, 2021, at which time it indicated that it would allow the Parties to file

supplemental briefs regarding points raised at oral argument. *See* Tr. at 39:7–21; Minute Order

(Aug. 2, 2021).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE NOT RIPE FOR JUDICIAL RESOLUTION BECAUSE THERE IS AN ONGOING RULEMAKING PROCESS

Plaintiff cannot show that its claims are ripe for review. Tr. at 17:10–20:3. The Supreme

Court has repeatedly held that it is the obligation of Article III courts to "exercise power only in

the last resort," *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (quotations omitted), and that all

lawsuits must be "ripe for court review" in order to be justiciable. *Ohio Forestry Ass'n v. Sierra

Club*, 523 U.S. 726, 732 (1998). The ripeness requirement "protect[s] the agencies from judicial

interference until an administrative decision has been formalized," *Abbott Labs. v. Gardner*, 387

U.S. 136, 148–49 (1967), and "comports with [courts'] theoretical role as the governmental

branch of last resort." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1431

(D.C. Cir. 1996). Ripeness, in turn, contains constitutional and prudential elements. *Am. Petrol.

Inst. v. EPA*, 683 F.3d 382, 386–37 (D.C. Cir. 2012); *Common Cause v. Trump*, 506 F. Supp. 3d

39, 44–45 (D.D.C. 2020). Constitutional ripeness turns on whether the plaintiff has established

"an injury-in-fact that is imminent or certainly impending." *Am. Petrol. Inst.*, 683 F.3d at 386

(quotations omitted). Prudential ripeness balances "the fitness of the issues for judicial decision"

against "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S.

at 148–49. As a threshold justiciability doctrine, courts may address ripeness before considering

other justiciability doctrines, including Article III standing. *See In re Aiken Cnty.*, 645 F.3d 428,

434 (D.C. Cir. 2011).

Plaintiff's facial challenge to HUD's 2013 Rule is not ripe for judicial review because

Plaintiff cannot meet constitutional ripeness requirements: as discussed below in Section II(A),

after many years of litigation, Plaintiff still cannot demonstrate that its members face any imminent or impending harm—or, indeed, any harm at all. Nor can Plaintiff meet the requirements of prudential ripeness, as there is a HUD rulemaking process currently underway concerning the Rule being challenged. *See* 86 Fed. Reg. 33590. This Court should decline to exercise jurisdiction now because Plaintiff has again been offered an opportunity to "'convince the agency to alter a tentative position,'" *Am. Petrol. Inst.*, 683 F.3d at 387 (quoting *Pub. Citizen Health Research Grp. v. FDA*, 740 F.2d 21, 30–31 (D.C. Cir. 1984)), which Plaintiff has taken by submitting comments, and there is no longer a closed record of decision-making for this Court to review. *See Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003) ("Final agency action ... is a crucial prerequisite[e] to ripeness.") (quotations omitted). Just as the D.C. Circuit held in *American Petroleum Institute*, this Court should decline to exercise jurisdiction to "let the administrative process run its course" and to avoid "inefficient and unnecessary 'piecemeal review.'" *Am. Petrol. Inst.*, 683 F.3d at 387 (quoting *Pub. Citizen Health Research Grp*., 740 F.2d at 30); *see also Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1353 (D.C. Cir. 2014) (courts should avoid unnecessary rulings).

### A.  Plaintiff Cannot Satisfy the Constitutional Element of the Ripeness Requirement

First, although the 2013 HUD Rule has now been in effect for more than eight years, Plaintiff has not demonstrated any concrete and particularized injury to its members. Tr. at 20:4–6. That failure reinforces that whatever injury Plaintiff complains of is certainly not "imminent or certainly impending," *Am. Petrol. Inst.*, 683 F.3d at 386, thus dooming any assertion that its claims are constitutionally ripe for review.

"[T]he constitutional requirement for ripeness is injury in fact." *DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev*., 887 F.2d 275, 297 (D.C. Cir. 1989); *Nat'l Treasury Employees Union*, 101 F.3d at 1427 ("[r]ipeness … in fact shares the constitutional requirement of standing that an

injury in fact be certainly impending.") (citing *Duke Power Co. v. Carolina Envt'l Study Grp.*, 438 U.S. 59, 81 (1978). For the reasons set forth in Section II(A) below, *see infra*, at 12, Plaintiff fails to satisfy the constitutional element of the ripeness inquiry.

### B. Plaintiff Fails to Satisfy the Prudential Elements of the Ripeness Requirement

Nor can Plaintiff satisfy the prudential elements of the ripeness requirement sufficient for this Court to adjudicate the merits of Plaintiff's claims. Tr. at 17:16–20:3. In evaluating prudential ripeness, courts look to two factors: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs.*, 387 U.S. at 148–49).

### 1. Plaintiff Cannot Show That Its Claims Are Fit for Review

Plaintiff cannot show that its claims are fit for review because administrative action concerning the 2013 Rule remains ongoing as part of HUD's current rulemaking process. *See* 85 Fed. Reg. at 60288. Accordingly, "[j]udicial intervention at this time would inappropriately interfere with ongoing action within the Executive Branch." *Common Cause*, 506 F. Supp. 3d at 45.

At the July 19 hearing, Plaintiff contended that its challenge can proceed, despite the ongoing rulemaking, based on a claim that HUD has already predetermined the outcome of its upcoming final rule. *See* Tr. 34:22–24. But there is no basis for that contention. *See generally CTIA–The Wireless Ass'n v. FCC*, 530 F.3d 984, 989 (D.C. Cir. 2008) (courts presume that agency officials discharge their duties in good faith). HUD gave all interested persons 60 days to submit written comments regarding its proposed rule. *See* 86 Fed. Reg. at 33590. HUD is now in the process of reviewing those comments and, if appropriate, will modify its proposed rule before issuing a final rule. In promulgating its 2013 Rule and its 2020 Disparate Impact Rules, for example, HUD made several modifications to each proposed rule based on its consideration

of comments. *See, e.g.*, 78 Fed. Reg. at 11470, 11473, 11478; 85 Fed. Reg. at 60305, 60306, 60314, 60315. HUD will give similar consideration to comments received in the course of the present rulemaking, and Plaintiff has not shown otherwise.

Even setting aside the current rulemaking, Plaintiff has not shown that the claims in its Amended Complaint are fit for review because they supposedly concern "purely legal matter[s]." *Cf. Am. Petrol Inst.*, 683 F.3d. at 389. Rather, just as the D.C. Circuit concluded in *American Petroleum Institute*, this Court should conclude that this case involves HUD's interpretation of a statute that Congress has entrusted it to enforce and administer. *See* 42 U.S.C. §§ 3610–12, 3614a. This Court should thus decline any review until "after the agency has finalized its application of the relevant statutory text," and either the government or a private party brings a claim against an insurer. *Am. Petroleum Inst.*, 683 F.3d at 389.

## 2. Plaintiff Has Not Shown Any Hardship That Would Result From Withholding Judicial Review

At no point in this litigation has Plaintiff shown any hardship that would arise from application of the Rule to its members, much less from withholding judicial review of the claims set out in its Amended Complaint. The Rule does not proscribe any conduct but instead sets out a framework for determining liability. Plaintiff has failed to identify any underwriting practice or other business interest that the 2013 Rule has prevented its members from employing in the last eight years. Nor has Plaintiff otherwise shown any other hardship to its members arising from the Rule. Plaintiff's challenge thus remains an "abstract disagreement[] over administrative polic[y]." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 807–08.

Plaintiff has failed to establish that it would suffer hardship in the absence of judicial intervention for substantially the same reason that it has failed to demonstrate an imminent injury-in-fact. Like the plaintiffs in *Toilet Goods*, Plaintiff here has never attempted to demonstrate that the "impact of the [Rule has been] felt *immediately* ... in conducting their day-

9

to-day affairs." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967) (emphasis added).

Indeed, although Plaintiff alleges that its members "have devoted … resources to re-examining,

and if necessary, modifying their existing practices," Am. Compl. ¶ 70, Plaintiff has not come

forward with any record evidence that its members have actually done so. Similarly, Plaintiff

alleges that its members "face a significant threat of continuous and recurring litigation and

agency-enforcement actions," *id.* ¶ 73, but has failed to produce any record evidence of any

litigation or enforcement actions in the eight years since the 2013 Rule was promulgated.[6]

Indeed, Plaintiff's comment on HUD's current proposed rule concedes that "for the last eight

years, there have … been no allegations or findings of homeowner insurer disparate impact …

made or adjudicated since 2013." Ltr. fr. Thomas Karol, NAMIC, to Kathleen Pennington, HUD,

re: Dkt No. FR–6251–P–01, RIN 2529–AB02 (Aug. 23, 2021), https://www.regulations

.gov/comment/HUD-2021-0033-0200. Accordingly, Plaintiff has failed to demonstrate the sort of

hardship that would warrant review of its abstract claim. *See Nat. Res. Def. Council, Inc. v. EPA*,

859 F.2d 156, 166 (D.C. Cir. 1988) ("A petitioner cannot show hardship by positing a speculative

or hypothetical future harm."); *see also State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474,

480 (D.C. Cir. 1986) ("[A] party's allegation of hardship will be found wanting if there are too

many 'ifs' in the asserted causal chain linking the agency's action to the alleged hardship").

    Plaintiff's purely hypothetical concern—about an unspecified potential conflict between

disparate impact liability directly under the FHA or the 2013 Rule with various state rules

regulating insurers—is likewise unripe for review.[7] Indeed, Plaintiff has failed to identify any

---

[6] Plaintiff also agreed to a stay this case for over four years even though the 2013 Rule was in effect, *see, e.g.*, ECF No. 72; Minute Order (Oct. 26, 2018), which further underscores the lack of hardship to Plaintiff in now withholding review.

[7] Plaintiff's members have been advancing similar claims for decades, and courts have rejected those claims. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1363 (6th Cir. 1995) ("we hold that the McCarran-Ferguson Act does not preclude HUD's interpretation of the Fair Housing Act."); *NAACP v. Am. Family Mut. Ins. Co*., 978 F.2d 287 (7th Cir. 1992).

such conflicts that have actually arisen in the last eight years. Contrary to Plaintiff's contention, moreover, application of the FHA's disparate impact standard or the 2013 Rule to a particular insurance underwriting practice—in the context of an individual state law also governing that practice—would necessarily involve a highly fact-specific assessment of the effects of a challenged practice, the justifications for the practice, and the particular application and potential conflict of any relevant state law relating to the business of insurance. *See* 78 Fed. Reg. at 11475. As a result, "judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here." *Toilet Goods Ass'n*, 387 U.S. at 164; *see also Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003) ("[I]ssues … may not be fit for review where the agency retains considerable discretion to apply the new rule on a case-by-case basis, particularly where there is a complex statutory scheme or there are other difficult legal issues that are implicated by the agency action."). Thus, Plaintiff's abstract challenge on HUD's Rule presents "the classic institutional reason to postpone review" until an actual controversy arises, which is the "need to wait for 'a rule to be applied [to see] what its effect will be.'" *La. Env't'l Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) (quoting *Diamond Shamrock. v. Costle*, 580 F.2d 670, 674 (D.C. Cir. 1978)). Plaintiff's contention that FHA disparate impact liability in general might conflict with a state law regulating insurance is precisely the speculative claim rejected as unripe by the Sixth Circuit in *Nationwide*. *See Nationwide*, 52 F.3d at 1362–63. This Court should thus join the Northern District of Illinois court that decided *PCI v Donovan* in concluding that Plaintiff's claims about the 2013 Rule's potential conflict with state laws are not ripe for resolution and dismiss Plaintiff's challenge. *See PCI*, 66 F. Supp. 3d at 1037–42.

## II.  PLAINTIFF LACKS STANDING TO MAINTAIN ITS CLAIMS

Plaintiff lacks standing to maintain the claims in its Amended Complaint because it has

11

failed to produce any evidence in the record that its members will suffer an imminent injury that is properly traceable to the 2013 Rule—rather than the Fair Housing Act, judicial precedents interpreting the Act, and other HUD regulations, or that an order of this Court vacating the Rule will likely redress its claimed harms. Tr. at 20:4–21:6.

The Constitution "confers limited authority on each branch of the Federal Government," and Article III limits the judicial power to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan*, 504 U.S. at 560). Standing thus "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The standing inquiry also focuses on whether a particular plaintiff is the proper party to challenge government conduct. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). It remains Plaintiff's burden to demonstrate it has standing at all points during the litigation, *Lujan*, 504 U.S. at 561, and Plaintiff "must demonstrate standing for each claim [it] seeks to press." *Davis v. FEC*, 554 U.S. 724, 734 (2008).[8]

## A. Plaintiff Fails to Demonstrate an Injury-in-Fact

Plaintiff lacks standing because it has failed to show a concrete and particularized injury or that it faces a threat of imminent harm. Facts demonstrating a concrete and particularized injury "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the [plaintiff's] pleadings." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *see also Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

---

[8] Because the D.C. Circuit vacated the prior judgment in this case, *see* Order, ECF No. 51, this Court's prior ruling on Plaintiff's standing is not law of the case. *See Johnson v. Bd. of Educ. of Chicago*, 457 U.S. 52, 53 (1982).

Plaintiff's record evidence attached to its summary judgment motion fails to demonstrate a cognizable injury at all, much less one that is imminent. Plaintiff, for example, attaches the affidavit of an employee of Motorists Mutual Insurance Co. *See* Aff. of David Benseler, ECF No. 60-3. Despite the fact that HUD's 2013 Rule had been in effect for over three years at the time of Motorists' affidavit, the affidavit avers no facts identifying any injury. *See id.* To the contrary, Motorists avers that it "has no intention of" doing anything different in light of the 2013 Rule. *See id.* ¶ 7. Nor does any other part of Plaintiff's record evidence establish an injury in fact. *See, e.g.*, Aff. of Kevin Christy ¶ 5, ECF No. 60-4 (averring, despite the fact that the 2013 Rule had been in effect for over three years, only that Western National Mutual Insurance Co "will" at some undefined point in time in the future, "need to collect data"); Aff. of Andrews Forstenzer ¶ 7, ECF No. 60-5 (averring only that Preferred Mutual "would" at some unspecified time in the future, "need to collect data"); Aff. of Greg Hayward ¶ 60-6 (averring, despite the fact that the 2013 rule had been in effect for more than three years, that State Farm "does not collect data"); *see also* Tr. at 5:21–25 (Plaintiff's statement that the 2013 Rule "would require" at some undefined time in the future, Plaintiff's members to eventually take action). Plaintiff's evidentiary submissions entirely fail to establish a concrete and particularized injury, much less an immediate threat of imminent harm. *Cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021) ("plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing"); *Lujan*, 504 U.S. at 564 n.2 (concept of imminence "has been stretched beyond the breaking point when ... the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994); *Laufer v. Alamac Inc.*, No. 1:20-cv-2206-TNM, 2021 WL 1966574, at *7 (D.D.C. May 17, 2021) ("vague allegations of future injury, much like those in *Lujan*, do not show standing"). And in the five years since

summary judgment briefing, Plaintiff still has yet to come forward with any evidence substantiating its claims of present or imminent injury to its members.

### B. Plaintiff Fails to Show Its Injuries are Traceable to the Rule or That They Are Redressable

Nor, for purposes of establishing standing, is it sufficient that Plaintiff's members are the direct object of the 2013 Rule. *See Nat'l Ass'n of Home Builders v. US. Army Corps. of Eng'rs*, 663 F.3d 470 (D.C. Cir. 2011). Rather, where, as here, a regulation essentially duplicates pre-existing legal duties, a plaintiff must still establish the traceability and redressability requirements to maintain standing. *See id*.

To maintain standing, a plaintiff must show that the claimed injury is "fairly traceable" to the defendant's action that is the subject of the lawsuit. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751 (1984). When a separate, independent government action causes the same alleged harm as a defendant's challenged action, a plaintiff cannot establish the "necessary causal connection" between the defendant's actions and an alleged injury necessary to demonstrate standing. *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015) (per curiam); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004); *see also Texas v. EPA*, 726 F.3d 180, 197-99 (D.C. Cir. 2013) (dismissing petitions for lack of standing because challenged regulations did not cause petitioners' claimed injuries; the injuries were caused by statute); *Baz v. U.S. Dept. of Homeland Sec.*, No. 1:18-cv-1013, 2019 WL 5102827, at *4 (D.D.C. Oct. 11, 2019).

Plaintiff must also establish that "it [is] 'likely,' not 'speculative,' that the court can redress the injury." *Ctr. of Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (citing *Lujan*, 504 U.S. at 560-61). A plaintiff's injury cannot be redressed by a court order when two independent government actions produce the same harm and only one is challenged. *See, e.g., Delta Constr.*, 783 F.3d at 1296 ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles."); *Texas*, 726 F.3d at 198 (vacating an

agency's action "would not redress the State petitioners' injury" because of a second, independent source of the harm).

In this case, Plaintiff fails to allege any injury that is properly traceable solely to HUD's 2013 Rule and not also to the Fair Housing Act, judicial precedent interpreting the Act, and other HUD regulations. First, Plaintiff has not shown that any of its members' alleged harms are traceable to the 2013 Rule's burden shifting framework rather than the decisions of the Supreme Court and almost every court of appeals recognizing that violation of the FHA may be established by showing an unjustified discriminatory effect. Plaintiff cannot identify any text in the 2013 Rule itself that would require its members to collect race data; rather, these alleged harms arise only from Plaintiff's misapprehension of the Rule's requirements. And, despite the fact that Plaintiff challenges HUD's alleged failure to adopt Plaintiff's preferred "equally effective" standard for the third part of the burden-shifting framework, Plaintiff never identifies any alleged harm arising from the "less restrictive means" standard that HUD did adopt.

Plaintiff also has not shown that the alleged injuries to its members are properly traceable to the 2013 Rule rather than the HUD regulation in effect since 1989—which provides that the FHA applies to insurers, *see* 54 Fed. Reg. at 3240—and other long-standing judicial precedent establishing that the Act's discriminatory effects standard can be applied to insurers despite the potential conflict with state laws regulating insurers. *See Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995) (additional remedies under the FHA did not cause the Act to invalidate, impair, or supersede Ohio insurance law, and under McCarran-Ferguson, the FHA was not preempted); *United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n*, 24 F.3d 1008, 1016 (7th Cir. 1994) (since the State "does not require or condone redlining, or

commit to insurers all decisions about redlining," application of the FHA was not precluded).[9] Thus, Plaintiff has failed to properly trace its alleged harms to HUD's 2013 Rule.

Nor does Plaintiff demonstrate how vacating the 2013 Rule would likely redress its alleged harms. Even if this Court were to vacate the 2013 Rule, litigants, including HUD, could still pursue disparate impact claims against insurers based on the FHA, judicial precedent, and HUD's other regulations and authority. Plaintiff thus lacks standing to maintain its claims.

## III. PLAINTIFF'S CHALLENGE FAILS ON THE MERITS

Even if this Court were to reach the merits of Plaintiff's claims, Plaintiff's challenge would still fail for the reasons set forth in Defendants' primary briefs. Tr. at 21:7–22:9. As Plaintiff itself admitted at the hearing on the parties' cross motions for summary judgment, *see* Tr. at 35:22–24, to succeed Plaintiff must show that there is no set of circumstances in which the 2013 Rule can be properly applied to insurers. *See Reno v. Flores*, 507 U.S. 292, 301 (1993); *Sherley v. Sebelius*, 644 F.3d 388, 397 & n.** (D.C. Cir. 2011); *Chamber of Commerce v. NLRB*, 118 F. Supp. 3d 171, 184 & n.7 (D.D.C. 2015).[10]

### A. Plaintiff Fails to Show that the 2013 Rule Improperly Expands Disparate Impact Liability

Plaintiff cannot show that HUD's 2013 Rule is invalid because Plaintiff fails to establish

---

[9] Indeed, Plaintiff itself previously acknowledged as *amicus* supporting a petition for certiorari to the Supreme Court in 1996 that the Fair Housing Act's disparate impact standard applies to insurers. *See* Amicus Br. of Nat'l Ass'n of Mut. Ins. Cos., *Nationwide Mut. Ins. Co. v. Cisneros*, No. 95-714, 1996 WL 33467765, at *14 (U.S. Jan. 3, 1996) (warning, as *amici* supporting a petition for *certiorari*, that "[t]he practical effect of the Sixth Circuit's decision is that property insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules").

[10] To be clear, Plaintiff's challenge cannot proceed as an "as applied" challenge because Plaintiff does not "ask[] a court to assess a [regulation's validity] with respect to the particular set of facts before it," *Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015), but rather merely poses a series of vague hypotheticals, which is insufficient for evaluating Plaintiff's claim as anything other than a facial challenge. *Cf. PCI*, 66 F. Supp. 3d at 1036 ("Although [plaintiff] does not seek to invalidate the Rule outside the homeowners insurance context, its challenge is more akin to a facial challenge than to an as-applied challenge").

that the Rule requires insurers to use or consider race in a "pervasive way." Tr. at 22:15–23:19.

First, Plaintiff fails to point to any specific language in the Rule that requires the use or

consideration of race. Rather, the 2013 Rule, like the Supreme Court's *Inclusive Communities*'

opinion, precludes the use of "facially neutral practices that have an unjustified discriminatory

effect on the basis of a protected characteristic." 78 Fed. Reg. at 11461; *cf. Inclusive Cmtys*., 576

U.S. at 540 (holding that "[d]isparate-impact liability mandates the 'removal of artificial,

arbitrary, and unnecessary barriers,' not the displacement of valid … policies.") (quoting *Griggs*,

401 U.S. at 431); *id*. at 541 (citing, with approval, the second step of the 2013 Rule's burden-

shifting analysis). Nor does a remedy of a disparate impact violation require the use of race, but

instead "should concentrate on the elimination of the offending practice." *Id*. at 544. Plaintiff

points to no contrary requirement in the Rule.[11] Indeed, elimination of the challenged insurance

practice at issue in *National Fair Housing Alliance*, 261 F. Supp. 3d at 28–29, demonstrates that

a disparate impact violation by an insurer can be remedied without considering race data. In light

of Plaintiff's admitted burden, this single instance is sufficient to defeat Plaintiff's facial

challenge.

Nor has Plaintiff shown that the 2013 Rule requires its members to collect race data. Tr.

at 4:25–5:24; 22:14–24:16. Plaintiff cites no part of the Rule that imposes such a requirement,

nor any other HUD statement suggesting or imposing this obligation. To the contrary, it is a

plaintiff challenging a particular practice or practices that has the burden to show a

discriminatory effect, *see* 78 Fed. Reg. at 11475, and a defendant may be able to overcome that

showing by showing a lack of causation or finding fault in a plaintiff's proffer. Tr. at 25:8–11,

25:23–26:9. In any event, despite the fact that the 2013 Rule has now been in effect for more

---

[11] In any event, *Inclusive Communities* expressly found that "mere awareness of race in
attempting to solve the problems" is constitutionally acceptable. 576 U.S. at 545.

than eight years, Plaintiff has never come forward with any evidence that its members are actually collecting such data, nor rebutted Defendants' showing that parties may be able to use census data. *Cf. Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 60 (D.D.C. 2002). Finally, the Supreme Court has found that "race may be considered in certain circumstances and in a proper fashion" in both "public and private transactions covered by the FHA." *Inclusive Cmtys.*, 576 U.S. at 545.

Additionally, Plaintiff fails to show that its members are entitled to a categorical exemption from FHA disparity impact liability. Tr. at 22:12–13; 22:24–23:14. Plaintiff fails to point to anything in the FHA itself or judicial precedent requiring such an exemption, nor could it show that HUD acted arbitrarily or capriciously in denying such a request. To the contrary, Congress has not provided a categorical exception or safe harbor for insurers, *cf.* 42 U.S.C. §§ 3605(c), 3607(b)(1), 3607(b)(4), 3614-1; nor have the courts, *see Graoch*, 508 F.3d at 375 ("we cannot create categorical exemptions from [the Act] without a statutory basis" and "[n]othing in the text of the FHA instructs us to create practice-specific exceptions"); *Am. Family Mut. Ins. Co.*, 978 F.2d at 299 (observing that "it is difficult to see risk classification as a principled ground to exclude insurers" from FHA provisions that cover lenders); *Nat'l Fair Hous. All.*, 208 F. Supp. 2d at 60. HUD has likewise provided a reasonable and sufficient explanation for declining Plaintiff's request for such an exception or safe harbor. *See* 78 Fed. Reg. at 11475; *see also* 81 Fed. Reg. at 69013.

Finally, Plaintiff cannot show that the 2013 Rule is invalid simply because *Inclusive Communities* noted certain limits on disparate impact liability. Tr. at 28:7–29:5. The 2013 Rule did not purport to define every aspect of disparate impact liability; rather the purpose of the Rule was "to formalize a long-recognized legal interpretation and establish a uniform legal standard, rather than," for example, "to describe how data and statistics may be used in the application of

the standard." 78 Fed. Reg. at 11468. The judicial decisions addressing FHA disparate impact liability claims since 2015 show that courts can address both *Inclusive Communities* and the 2013 Rule, and none have found a conflict or problem with the Rule. *See, e.g., de Reyes*, 903 F.3d at 424, 430; *Mhany Mgmt.*, 819 F.3d at 618.

### B. Plaintiff Fails to Show that HUD's 2013 Rule Categorically Conflicts with State Laws Regulating Insurance

Plaintiff fails to show that HUD's 2013 Rule categorically conflicts with state laws regulating insurance. Tr. at 32:6–22. First, Plaintiff fails to show that *Inclusive Communities* requires HUD to grant insurers a categorical exemption or safe harbor because of a potential conflict with state laws. Rather, the Court simply found that, on remand, the lower courts should consider whether federal statutory limits on the defendant's discretion might break the causal chain necessary for plaintiff to make its *prima facie* showing. *See Inclusive Cmtys.*, 576 U.S. at 543. So, too, might individual insurers also demonstrate on a case-by-case basis that a plaintiff has failed to show that a challenged policy is the cause of the alleged disparate impact.[12] But nothing in *Inclusive Communities* requires a categorical exemption from FHA disparate impact liability when other laws are implicated. Given that the majority of courts have rejected insurers' request for such an exemption, *see, e.g., Dehoyos v. Allstate Corp.*, 345 F.3d 290, 299 (5th Cir. 2003); *Am. Family Mut. Ins. Co.*, 978 F.2d at 297 ("American Family has not drawn to our attention ... any law, regulation, or decision in Wisconsin requiring redlining, condoning that practice, committing to insurers all decisions about redlining, or holding that redlining with discriminatory intent (or disparate impact) does not violate state law"); *Jones v. Travelers Cas. Ins. Co. of Am.*, No. 13-cv-2390, 2015 WL 5091908, *5 (N.D. Cal. May 7, 2015); *Lumpkin v.*

---

[12] Indeed, Plaintiff's confidence that state laws regulating insurers will necessarily break the causal chain suggests that the Rule is unlikely to now suddenly cause a torrent of "continuous and recurring litigation and agency-enforcement actions" against its members, Am. Compl. ¶ 73, and suggests that HUD's burden-shifting framework has struck the appropriate balance.

*Farmers Grp., Inc.*, No. 05-cv-2868, 2007 WL 6996777, at *7 (W.D. Tenn. July 6, 2007), it was

not unreasonable for HUD to decline to create a categorical exemption in its 2013 Rule for

insurers subject to state laws regulating insurance, and instead decide that case-by-case

adjudication of any potential conflict is preferable, *see* 81 Fed. Reg. at 69013.[13]

### C.  Plaintiff Fails to Show that HUD Acted Beyond Its Authority in Declining to Adopt Plaintiff's Preferred Standard in the Third Step of the Burden-Shifting Framework

Plaintiff fails to show that HUD's reasoned decision to reject Plaintiff's preferred

"equally effective" standard for the third step of HUD's burden-shifting framework is unlawful.

Tr. at 29:15–32:2. Contrary to Plaintiff's suggestion, *Inclusive Communities* never used the

phrase "equally effective," and Plaintiff fails to otherwise show any statutory or judicial

precedent adopting such a standard under the FHA that would require HUD to reach a different

result. *See Ave. 6E Inv.*, 818 F.3d at 512–13 (recognizing the Rule's burden-shifting standard as

providing the limits to liability specified in *Inclusive Communities* and that Section

100.500(c)(3) means that "an adjustment or accommodation can still be made that will allow

both interests to be satisfied"); *PCI*, 66 F. Supp. 3d at 1052–53 (deferring to HUD's

determination that "an 'equally effective' standard is inappropriate"). And contrary to Plaintiff's

suggestion, it was reasonable for HUD to look to prevailing case law generally in arriving at the

burden shifting framework reflected in the 2013 Rule. *See United States v. Boyle*, 469 U.S. 241,

246 n.4 (1985) (agency "interpretation merits deference" when it "is consistent with Congress'

intent, and over 40 years of case law"). Plaintiff's simple disagreement with HUD's conclusion

does not provide sufficient grounds to vacate the 2013 Rule.

---

[13] Even the preamble to the 2020 Rule, which Plaintiff appears to have supported, *see* Tr. 14:16–18, found that "[w]hether a given Fair Housing Act claim conflicts with State insurance laws such that it can be said to impair, invalidate, or supersede such laws is a case-by-case determination," and that 24 C.F.R. § 100.70(d)(4) "correctly interprets the Fair Housing Act as applicable to property or hazard insurance." 85 Fed. Reg. at 60327. The 2020 Rule thus declined to provide a categorical exemption to insurers. *See id.*

**CONCLUSION**

This Court should grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment for Defendants.

Dated: September 1, 2021

Respectfully submitted,

SARAH HARRINGTON
Deputy Assistant Attorney General

KATHLEEN M. PENNINGTON
Assistant General Counsel
for Fair Housing Enforcement
JULIA W. GARRISON
PAUL I. OSADEBE
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT

*Of Counsel*

LESLEY FARBY
Assistant Branch Director

s/ James D. Todd, Jr.
EMILY SUE NEWTON
JAMES D. TODD, JR.
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
Ben Franklin Station
P.O. Box 883
Washington, DC 20044
(202) 305-8356
(202) 514-3378
emily.s.newton@usdoj.gov
james.todd@usdoj.gov

Attorneys for Defendants