UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>    Defendants. | No. 1:13-cv-00966 (RJL) |

## SUPPLEMENTAL BRIEF OF PLAINTIFF

Pursuant to this Court's August 2 and August 10 orders, plaintiff National Association of Mutual Insurance Companies files this supplemental brief to address a point raised by defendants at oral argument on the parties' cross-motions for summary judgment. The question before the Court is whether the Department of Housing and Urban Development's 2013 disparate-impact rule, 78 Fed. Reg. 11,460, as applied to the ratemaking and underwriting practices of insurers, comports with the Supreme Court's interpretation of the Fair Housing Act in *Texas Department of Housing & Community Affairs* v. *Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015). The parties' motions have been fully briefed for more than five years, and there is no dispute that the 2013 rule is final and still in effect. At oral argument, however, defendants once again urged the Court to delay a decision on the validity of the rule. Defendants now contend (Tr. 17-20) that the rule is not ripe for review because HUD recently published a proposed rule that would "recodify the discriminatory effects regulation specified in the 2013 [r]ule" in all material respects. 86 Fed. Reg.

33,596 (June 25, 2021). That bizarre argument has no merit. The Court should proceed to resolve the parties' cross-motions for summary judgment.

    1.    The ripeness doctrine concerns the question of "when a federal court can or should decide a case," and it has "both constitutional and prudential facets." *Perry Capital LLC* v. *Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017) (citation omitted). This case is ripe in both respects.

    a.    From a constitutional perspective, ripeness turns on whether the plaintiff has suffered an actual or imminent injury in fact—an inquiry that overlaps with the injury-in-fact element of Article III standing. *See Perry Capital*, 844 F.3d at 632. Accordingly, if the plaintiff has Article III standing, the case will necessarily be ripe for constitutional purposes. *See id.*

This Court has already effectively resolved the question of constitutional ripeness in plaintiff's favor. In its earlier order granting summary judgment to plaintiff, the Court held that plaintiff's Article III standing is "self-evident." Dkt. 45, at 12. The Court held that the injury-in-fact element is satisfied because the 2013 rule was "clearly intended to apply to the provision and pricing of homeowner's insurance, which is precisely the business engaged in by plaintiff['s] members." *Id.* at 14 (internal quotation marks omitted). In addition, plaintiff submitted evidence "demonstrating injury-in-fact to [its] members." *Id.*

The Court's earlier conclusion remains true today. The 2013 rule is still in force. *See Massachusetts Fair Housing Center* v. *HUD*, 496 F. Supp. 3d 600, 611-612 (D. Mass. 2020) (granting a preliminary injunction of the 2020 rule, 85 Fed. Reg. 60,288 (Sept. 24, 2020), before its effective date); Dkt. 124, at 1 (noting that HUD voluntarily dismissed the appeal of the preliminary injunction). And defendants offer no reason for the Court to reconsider its prior determination that plaintiff suffered an injury in fact. The case is thus ripe for constitutional purposes.

b.      From a prudential perspective, a court decides whether to delay resolution of a case by evaluating "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Perry Capital*, 864 F.3d at 632 (internal quotation marks, alterations, and citation omitted).   Under the first prong, courts usually assess whether the question presented is "purely legal"; whether "consideration of the issue would benefit from a more concrete setting"; and whether the agency action is "sufficiently final." *Atlantic States Legal Foundation* v. *EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (citation omitted).   Under the second prong, a case is typically ripe if the parties are currently subject to the challenged agency action, because the agency action subjects them to "adverse effects of a strictly legal kind" and affects their "primary conduct." *National Park Hospitality Association* v. *Department of Interior*, 538 U.S. 803, 809 (2003); *see*, *e.g.*, *Center for Biological Diversity* v. *EPA*, 722 F.3d 401, 408 (D.C. Cir. 2013).

More generally, a previously ripe challenge to an agency action does not become unripe merely because the agency proposes to alter the challenged action.   As the D.C. Circuit has made clear, "the fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment."   *Appalachian Power Co.* v. *EPA*, 208 F.3d 1015, 1022 (2000); *see National Association of Home Builders* v. *Army Corps of Engineers*, 417 F.3d 1272, 1282 (D.C. Cir. 2005).   An agency thus cannot "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way."   *American Petroleum Institute* v. *EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012).

Defendants' ripeness argument would permit precisely such gamesmanship.   At oral argument, defendants did not dispute that the validity of the 2013 disparate-impact rule is a purely legal question; that the rule is a final agency action; or that no additional concrete facts are necessary to

3

adjudicate plaintiff's claim.  Nor is there any question that plaintiff's members would suffer hardship from delayed adjudication:  the 2013 rule is in force, and the Court has already concluded that the rule is inflicting an ongoing injury on plaintiff's members.  Instead, defendants contended that the challenge is not ripe merely because HUD proposed a rule that would recodify the 2013 rule in materially identical form.  But not only does the pendency of that proposed rule have "nothing to do" with whether a challenge to the rule currently in force is ripe, *Appalachian Power*, 208 F.3d at 1022; the operative provisions of the proposed rule are *identical* to the 2013 rule (save for one minor stylistic change).  *Compare* 78 Fed. Reg. 11,481-11,482, *with* 86 Fed. Reg. 33,597 (eliminating the second "(c)" in the phrase "paragraphs (c)(2) and (c)(3)" in 24 C.F.R. § 100.500).

2. At oral argument (Tr. 17), defendants cited two D.C. Circuit cases that, in their view, show that plaintiff's challenge to the 2013 rule is not ripe.  Neither case supports that conclusion.

The first case is *Electronic Privacy Information Center* v. *FAA*, 821 F.3d 39 (D.C. Cir. 2016).  There, the petitioner had petitioned the Federal Aviation Administration (FAA) to promulgate drone-specific privacy regulations under a new federal statute, and the FAA denied the petition for rulemaking.  *See id.* at 41.  Several months later, the FAA issued a proposed rule under the new statute, but the proposed rule did not address privacy concerns.  *See id.* at 42, 43.  The petitioner challenged the absence of privacy regulations in the proposed rule, and the D.C. Circuit held that the case was unripe under the "settled" rule that federal courts lack "authority to review proposed agency rules." *Id.* at 44 (citation omitted).  That situation differs vastly from the situation here, where plaintiff is challenging a final rule that is undisputedly in force today.

Defendants' second case—*American Petroleum Institute*, *supra*—is no more helpful to their position.  There, the petitioners challenged the scope of an exclusion of certain hazardous materials from the coverage of a final regulation from the Environmental Protection Agency (EPA).  *See*

4

683 F.3d at 385-386. While the challenge was pending before the D.C. Circuit, EPA issued a proposed rule that, if adopted, would eliminate the relevant exclusion entirely. *See id.* at 386. The court held that EPA's issuance of the proposed rule made the case unripe, because EPA's position on whether to have an "exclusion *at all* [was] plainly a tentative one." *Id.* at 387-388. The court explained that, while a "savvy agency" cannot "perpetually dodge review" merely by "initiating a new proposed rulemaking," the proposed rule at issue represented a "complete reversal of course" by EPA that, if adopted, would necessitate "substantially different legal analysis" and would "likely moot the analysis" necessary to decide the validity of the existing rule. *Id.* at 388. In addition, the timing of the proposed rule did not suggest any "risk of agency abuse": EPA was required to address the issue at the particular time it did pursuant to the terms of a settlement agreement reached in related litigation. *See id.* at 388-389.

This case is miles away from *American Petroleum Institute*. Here, HUD's position on the burden-shifting framework in the 2013 disparate-impact rule is not tentative. To the contrary, HUD's proposed rule would recodify the 2013 rule with no material changes. *See* 86 Fed. Reg. 33,597. The analysis to determine the validity of HUD's burden-shifting framework would thus be identical under either the 2013 version or a future recodified version. *Cf. American Petroleum Institute*, 683 F.3d at 388-389. And given the timing, the potential "risk of agency abuse" of the rulemaking process to avoid judicial review is present. *Id.* at 388.

For the foregoing reasons, the Court should proceed to the merits of the parties' cross-motions for summary judgment. And for the reasons explained in plaintiff's prior briefing on those motions, the Court should hold that the 2013 disparate-impact rule, as applied to the ratemaking and underwriting practices of insurers, exceeds the statutory limitations of the Fair Housing Act as articulated by the Supreme Court in *Inclusive Communities*.

       Respectfully submitted,

       /s/ Kannon K. Shanmugam
       Kannon K. Shanmugam (#474304)
       William T. Marks (#1029756)
       PAUL, WEISS, RIFKIND,
        WHARTON & GARRISON LLP
        2001 K Street, N.W.
        Washington, DC 20006
        (202) 223-7300
        kshanmugam@paulweiss.com

September 1, 2021