UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION OF MUTUAL
  INSURANCE COMPANIES,

     Plaintiff,

        v.                                              No. 1:13-cv-966 (RJL)

U.S. DEPARTMENT OF HOUSING AND
  URBAN DEVELOPMENT, *et al.*,

     Defendants.

**SUPPLEMENTAL BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN
<u>OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ................................................... 2

PROCEDURAL BACKGROUND ................................................................................... 6

ARGUMENT ..................................................................................................................... 8

I.   PLAINTIFF LACKS STANDING TO MAINTAIN ITS CLAIMS ....................... 8

   A.  Plaintiff Fails to Demonstrate an Injury-in-Fact ............................................... 9

   B.  Plaintiff Fails to Show its Alleged Injuries Are Traceable to the 2013 or 2023 Rule
      or that They Are Redressable ........................................................................... 12

II.  PLAINTIFF'S FACIAL CHALLENGE IS NOT RIPE FOR JUDICIAL
    RESOLUTION .......................................................................................................... 16

   A.  Plaintiff Cannot Satisfy the Constitutional Element of the Ripeness Requirement ......... 17

   B.  Plaintiff Fails to Satisfy the Prudential Elements of the Ripeness Requirement ............. 17

      1.  Plaintiff Cannot Show that its Claims Are Fit For Review ....................... 18

      2.  Plaintiff Has Not Shown Any Hardship that Would Result from Withholding
         Judicial Review ........................................................................................ 19

III. PLAINTIFF'S CHALLENGE FAILS ON THE MERITS ................................... 22

   A.  Plaintiff Fails to Sustain its Facial Challenge ................................................. 23

   B.  Plaintiff Fails to Show that the 2013 Rule Improperly Expands Disparate
      Impact Liability ............................................................................................... 24

   C.  Plaintiff Fails to Show that HUD's Rule Categorically Conflicts with State Laws
      Regulating Insurance ....................................................................................... 28

   D.  Plaintiff Fails to Show that HUD Acted Beyond its Authority in Declining to Adopt
      Plaintiff's Preferred Standard in the Third Step of the Burden-Shifting Framework ....... 30

IV.  THIS COURT SHOULD REJECT PLAINTIFF'S REQUEST TO VACATE
    THE FINAL RULE AS APPLIED TO INSURERS ............................................. 31

CONCLUSION ................................................................................................................ 33

# TABLE OF AUTHORITIES

### CASES

*2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*,
  444 F.3d 673 (D.C. Cir. 2006) ..................................................................................3

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) .................................................................................... 17, 18

*Alaska Airlines, Inc. v. Brock*,
  480 U.S. 678 (1987) ..............................................................................................32

*Am. Chemistry Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) ............................................................................11

*Am. Ins. Ass'n v. HUD*,
  74 F. Supp. 3d 30 (D.D.C. 2014) ..........................................................................7

*Am. Petrol. Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ................................................................ 16, 17, 19

*Animal Legal Def. Fund, Inc. v. Espy*,
  23 F.3d 496 (D.C. Cir. 1994) ..............................................................................11

*Atl. States Legal Found. v. EPA*,
  325 F.3d 281 (D.C. Cir. 2003) ............................................................................18

*Ave. 6E Invs., LLC v. Yuma*,
  818 F.3d 493 (9th Cir. 2016)............................................................... 4, 28, 30

*Ayotte v. Planned Parenthood of N. New England*,
  546 U.S. 320 (2006) ..............................................................................................33

*Azam v. City of Columbia Heights*,
  No. 14-1044, 2016 WL 424966 (D. Minn. Feb. 3, 2016),
  *aff'd*, 865 F.3d 980 (8th Cir. 2017)........................................................................5

*Baz v. U.S. Dept. of Homeland Sec.*, No. 1:18-cv-1013,
  2019 WL 5102827 (D.D.C. Oct. 11, 2019) ......................................................13

*Betsey v. Turtle Creek Assocs.*,
  736 F.2d 983 (4th Cir. 1984)..................................................................................3

*Borum v. Brentwood Vill., LLC*,
  218 F. Supp. 3d 1 (D.D.C. 2016) ..........................................................................4

*Carney v. Adams,*
   141 S. Ct. 493 (2020) ................................................................ 9, 10, 11

*Chamber of Commerce v. EPA,*
   642 F.3d 192 (D.C. Cir. 2011) ................................................................9

*Chamber of Commerce v. NLRB,*
   118 F. Supp. 3d 171 (D.D.C. 2015) ................................................................23

*Charleston Hous. Auth. v. U.S. Dep't of Agric.,*
   419 F.3d 729 (8th Cir. 2005) ................................................................3

*Church v. Biden,* No. 1:21-cv-2815 (CKK),
   2022 WL 1491100 (D.D.C. May 11, 2022) ................................................................17

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................9

*Common Cause v. Trump,*
   506 F. Supp. 3d 39 (D.D.C. 2020) ................................................................16

*Crete Carrier Corp. v. EPA,*
   363 F.3d 490 (D.C. Cir. 2004) ................................................................13

*Cronin v. Fed. Aviation Admin.,*
   73 F.3d 1126 (D.C. Cir. 1996) ................................................................20

*Ctr. of Law & Educ. v. Dep't of Educ.,*
   396 F.3d 1152 (D.C. Cir. 2005) ................................................................13

*DaimlerChrysler Corp. v. Cuno,*
   547 U.S. 332 (2006) ................................................................9

*Davis v. FEC,*
   554 U.S. 724 (2008) ................................................................9

*de Reyes v. Waples Mobile Home Park L.P.,*
   903 F.3d 415 (4th Cir. 2018) ................................................................4, 28

*Dearth v. Holder,*
   641 F.3d 499 (D.C. Cir. 2011) ................................................................9

*Dehoyos v. Allstate Corporation,*
   345 F.3d 290 (5th Cir. 2003) ................................................................24, 29

*Dehoyos v. Allstate Corporation,* No. 01-cv-1010,
   2007 WL 528266 (W.D. Tex., Feb. 21, 2007) ................................................................24

*Delta Constr. Co. v. EPA*,
   783 F.3d 1291 (D.C. Cir. 2015) ........................................................13

*Diamond Shamrock Corp. v. Costle*,
   580 F.2d 670 (D.C. Cir. 1978) ...................................................19, 22

*DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.*,
   887 F.2d 275 (D.C. Cir. 1989) ......................................................17

*Duke Power Co. v. Carolina Envt'l Study Grp.*,
   438 U.S. 59 (1978) ................................................................17, 19

*Elec. Priv. Info. Ctr. v. FAA*,
   892 F.3d 1249 (D.C. Cir. 2018)......................................................15

*Envt'l Def. Fund v. Reilly*,
   909 F.2d 1497 (D.C. Cir. 1990),
   *aff'g*, 657 F. Supp. 302 (D.D.C. 1987).............................................31

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) ......................................................12

*Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ..................................................................10

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990) ..................................................................10

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Hum. Rels. Comm'n*,
   508 F.3d 366 (6th Cir. 2007)........................................................3, 27

*Griggs v. Duke Power Co.*,
   401 U.S. 424 (1971) .................................................................5, 24

*Hodge v. Talkin*,
   799 F.3d 1145 (D.C. Cir. 2015).......................................................23

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013) ..................................................................10

*HUD v. Pfaff*, No. 10-93-84-8,
   1994 WL 592199 (HUD ALJ Oct. 27, 1994),
   *rev'd on other grounds*, 88 F.3d 739 (9th Cir. 1996)................................3

*Huntington Branch, NAACP v. Town of Huntington*,
   844 F.2d 926 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988) ...................3

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011)...............................................................................17

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*,
    747 F.3d 275 (5th Cir. 2014).............................................................................4, 5

*Info. Ctr. v. FAA*,
    892 F.3d 1249 (D.C. Cir. 2018)...........................................................................15

*Johnson v. Bd. of Educ. of Chicago*,
    457 U.S. 52 (1982)..................................................................................................9

*Jones v. Travelers Cas. Ins. Co. of Am.*, No. 13-cv-2390,
    2015 WL 5091908 (N.D. Cal. May 7, 2015).......................................................29

*La. Envt'l Action Network v. EPA*,
    87 F.3d 1379 (D.C. Cir. 1996) .......................................................................18, 22

*Langlois v. Abington Hous. Auth.*,
    207 F.3d 43 (1st Cir. 2000) ....................................................................................3

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................ 9, 11, 13, 14

*Lujan v. Nat'l Wildlife Federation*,
    497 U.S. 871 (1990) .............................................................................................18

*Lumpkin v. Farmers Grp., Inc.*, No. 05-cv-2868,
    2007 WL 6996777 (W.D. Tenn. July 6, 2007)....................................................29

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*,
    496 F. Supp. 3d 600 (D. Mass. 2020)....................................................................6

*MD/DC/DE Broadcasters Ass'n v. FCC*,
    236 F.3d 13 (D.C. Cir. 2001) ...............................................................................32

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
    558 F.2d 1283 (7th Cir. 1977)................................................................................3

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
    819 F.3d 581 (2d Cir. 2016).........................................................................4, 5, 28

*Mountain Side Mobile Estates P'ship v. HUD*,
    56 F.3d 1243 (10th Cir. 1995)................................................................................3

*NAACP v. Am. Family Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir. 1992)......................................................... 3, 21, 27, 29

*Nat. Res. Def. Council v. Wheeler*,
   955 F.3d 68 (D.C. Cir. 2020) ............................................................33

*Nat. Res. Def. Council, Inc. v. EPA*,
   859 F.2d 156 (D.C. Cir. 1988) ..........................................................21

*Nat. Res. Def. Council, Inc. v. EPA*,
   194 F.3d 130 (D.C. Cir. 1999) ..........................................................19

*Nationwide Mut. Ins. Co. v. Cisneros*,
   52 F.3d 1351 (6th Cir. 1995)................................................ 3, 14, 21, 22

*Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.*,
   786 F.3d 1050 (D.C. Cir. 2015).........................................................14

*Nat'l Ass'n of Home Builders v. US. Army Corps. of Eng'rs*,
   663 F.3d 470 (D.C. Cir. 2011)...........................................................12

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ........................................................................28

*Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am.*,
   208 F. Supp. 2d 46 (D.D.C. 2002) .............................................. 3, 26, 27

*Nat'l Fair Hous. All. v. Travelers Indem. Co.*,
   261 F. Supp. 3d 20 (D.D.C. 2017) ............................................ 4, 23, 25, 28

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ...................................................................18, 20

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996).......................................................16, 17

*New York v. U.S. Dep't of Labor*,
   363 F. Supp. 3d 109 (D.D.C. 2019),
   *appeal filed*, No. 19-5125 (D.C. Cir. Apr. 30, 2019).............................31, 32

*AFL-CIO v. NLRB*,
   466 F. Supp. 3d 68 (D.D.C. 2020),
   *on reconsidr'n*, 471 F. Supp. 3d 228 (D.D.C. 2020),
   *aff'd in part, rev'd in part & remanded*, 57 F.th 1023 (D.C. Cir. 2023) ...................31

*Off. of Commc'n of the United Church of Christ v. FCC*,
   826 F.2d 101 (D.C. Cir. 1987) ..........................................................19

*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ........................................................................16

*Ojo v. Farmers Grp. Inc.*,
600 F.3d 1205 (9th Cir. 2010) ................................................................................3

*Prop. Cas. Ins. Ass'n of Am. v. Carson*, No. 1:13-cv-8564,
2017 WL 2653069 (N.D. Ill. June 20, 2017) .........................................................28

*Prop. Cas. Ins. Ass'n of Am. v. Donovan*,
66 F. Supp. 3d 1018 (N.D. Ill. 2014) ...........................................................*passim*

*Raines v. Byrd*,
521 U.S. 811 (1997) ..........................................................................................9, 16

*Reno v. Flores*,
507 U.S. 292 (1993) ...............................................................................................23

*Resident Advisory Bd. v. Rizzo*,
564 F.2d 126 (3d Cir. 1977) ....................................................................................3

*Sherley v. Sebelius*,
644 F.3d 388 .........................................................................................................23

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ..............................................................................10

*Sierra Club v. EPA*,
719 F.2d 436 (D.C. Cir. 1983) ..............................................................................26

*Sierra Club v. EPA*,
754 F.3d 995 (D.C. Cir. 2014) ..............................................................................15

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ..................................................................................................9

*Sorenson Commc'ns, Inc. v. FCC*,
755 F.3d 702 (D.C. Cir. 2014) ..............................................................................33

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .............................................................................................9

*Sprint Corp. v. FCC*,
331 F.3d 952 (D.C. Cir. 2003) ..............................................................................22

*State Farm Mut. Auto. Ins. Co. v. Dole*,
802 F.2d 474 (D.C. Cir. 1986) ..............................................................................21

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...............................................................................................13

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ...........................................................................................9

*Swanson Group Mfg. LLC v. Jewell,*
   790 F.3d 235 (D.C. Cir. 2015) ........................................................................11

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.,*
   576 U.S. 519 (2015) ...................................................................................*passim*

*Texas v. EPA,*
   726 F.3d 180 (D.C. Cir. 2013) ........................................................................13

*The Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,*
   920 F.3d 890 (5th Cir. 2019) ...........................................................................28

*Toilet Goods Ass'n v. Gardner,*
   387 U.S. 158 (1967) ..................................................................................20, 22

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021), *on remand*, 9 F.4th 1201 (9th Cir. 2021) ..................11

*United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n,*
   24 F.3d 1008 (7th Cir. 1994)............................................................................14

*United States v. Boyle,*
   469 U.S. 241 (1985) .........................................................................................30

*United Transp. Union v. ICC,*
   891 F.2d 908 (D.C. Cir. 1989) ..........................................................................9

*Wai v. Allstate Ins. Co.,*
   75 F. Supp. 2d 1 (D.D.C. 1999) ........................................................................3

### STATUTES

5 U.S.C. § 706(2) ....................................................................................................31

42 U.S.C. § 3601 *et seq.* ...........................................................................................1

42 U.S.C. § 3604(a) .............................................................................................2, 27

42 U.S.C. § 3605(c) .................................................................................................26

42 U.S.C. § 3608....................................................................................................... 1

### REGULATIONS

24 C.F.R. § 100.500 *et seq.*...................................................................................3, 32

24 C.F.R. § 100.500(c) ...................................................................................23, 27

24 C.F.R. § 100.70(d)(4) ...................................................................................1, 30

*Rules and Regulations,*
   54 Fed. Reg. 3232 (Jan. 23, 1989) ...............................................................1, 3

*Implementation of the Fair Housing Act's Discriminatory Effects Standard,*
   78 Fed. Reg. 11460 (Feb. 15, 2013)..........................................................*passim*

*Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance,*
   81 Fed. Reg. 69012 (Oct. 5, 2016) .................................................................4

*HUD's Implementation of the Fair Housing Act's Disparate Impact Standard,*
   84 Fed. Reg. 42854 (Aug. 19, 2019)................................................................5

*HUD's Implementation of the Fair Housing Act's Disparate Impact Standard,*
   85 Fed. Reg. 60288 (Sept. 24, 2020)..............................................................5, 6

*Reinstatement of HUD's Discriminatory Effects Standard,*
   86 Fed. Reg. 33590 (June 25, 2021) ...............................................................6

*Reinstatement of HUD's Discriminatory Effects Standard,*
   88 Fed. Reg. 19450 (Mar. 31, 2023) ..........................................................*passim*

# INTRODUCTION

The Fair Housing Act ("FHA") 42 U.S.C. § 3601 *et seq*., prohibits certain housing practices and policies that discriminate because of race, color, religion, sex, family status, national origin or disability. *See, e.g., id*. § 3604(a), 3605(a). The Act's proscriptions apply both to intentional acts of discrimination and to facially neutral acts that have an unjustified discriminatory effect. *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc*., 576 U.S. 519, 532–35 (2015).

The FHA grants the U.S. Department of Housing and Urban Development ("HUD") the authority to administer the FHA and to issue regulations interpreting it. *See* 42 U.S.C. §§ 3608, 3614a. Exercising that authority, HUD has interpreted the FHA to apply to home insurers since 1989, *see* HUD, Rules & Regs., 54 Fed. Reg. 3232, 3285 (Jan. 23, 1989), AR 056781, *codified at* 24 C.F.R. § 100.70(d)(4). No court has ever held that home insurers must be categorically exempt from the FHA's discriminatory effects standard.

By 2013, eleven courts of appeals had adopted various burden-shifting frameworks and balancing tests for determining discriminatory effects liability under the FHA. In 2013, HUD adopted the burden-shifting framework that had been embraced by a majority of courts of appeals, and the agency reaffirmed this approach in 2023.

Plaintiff asserts a facial challenge to HUD's 2013 and 2023 Rules and asks this Court to be the first court ever to create a categorical FHA exemption for home insurers' ratemaking and underwriting decisions. Plaintiff makes this bold ask even though, in the ten years that the 2013 Rule has been in effect, Plaintiff has never come forward with any allegation or evidence of harm traceable to the Rule, much less an imminent injury that would likely be redressed by an order of this Court. Plaintiff additionally fails to show that its abstract legal disagreements are ripe for this Court's review or that Plaintiff would suffer any hardship were this Court to withhold review in

*favor of waiting for a concrete, fact-specific inquiry into whether the Rule could properly be applied to a party in a specific case.*

Finally, even if the Court were to reach the issue, Plaintiff's facial challenge cannot succeed on the merits because Plaintiff falls far short of meeting its burden of showing that there are *no* circumstances under which the rule could be properly applied to Plaintiff's members—a prerequisite that Plaintiff itself has acknowledged applies to this facial challenge. Indeed, Plaintiff does not dispute that another court in this District has previously properly applied the FHA's discriminatory effects standard to an insurer. That alone is sufficient to defeat Plaintiff's facial challenge.

This Court should thus grant Defendants' summary judgment motion and deny Plaintiff's cross motion for summary judgment.

## STATUTORY AND REGULATORY BACKGROUND

The Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*., makes it unlawful:

> [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a); *see also id*. § 3604(f)(1) (prohibiting actions that "otherwise make unavailable or deny[] a dwelling ... because of a handicap"). The FHA also makes it unlawful to "discriminate against any person ... in the provision of services or facilities in connection" with the sale or rental of a dwelling. *Id*. § 3604(b), (f)(2). The FHA further makes it unlawful "to discriminate against any person in making available ..., or in the terms or conditions of … providing other financial assistance[]" related to "purchasing, constructing, improving, repairing, or maintaining a dwelling." *Id*. § 3605. Congress granted HUD express authority to enforce and interpret the Act. *Id*. §§ 3610-12, 3614a.

The FHA has long been applied to home insurers. *See* 54 Fed. Reg. at 3285, AR 056781; *see also, e.g., Ojo v. Farmers Grp. Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010) (en banc); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 300–01 (7th Cir. 1992); *Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 55–58 (D.D.C. 2002); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 5–8 (D.D.C. 1999). By 2013, eleven courts of appeals had held that the FHA prohibits conduct that has an unjustified discriminatory effect on individuals protected by the Act, although the courts had adopted various approaches to determining liability.[1] HUD published a final rule in 2013 formally promulgating its long-held position that violations of the FHA could be established through evidence of disparate impact and, by adopting the burden-shifting approach of the majority of courts of appeals, provided a consistent nationwide framework for determining liability. *See* Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11460 (Feb. 15, 2013), AR 000611-000634, *codified at* 24 C.F.R. § 100.500 *et seq.* (West, 2013).

Since HUD's 2013 Rule became final, four courts of appeals affirmed or adopted the

---

[1] Five courts adopted a three-part burden-shifting approach, *see, e.g., Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49–50 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 939 (2d Cir. 1988), *aff'd in part*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148–49 (3d Cir. 1977); *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740–42 (8th Cir. 2005); *HUD v. Pfaff*, No. 10-93-84-8, 1994 WL 592199, at *8 (HUD ALJ Oct. 27, 1994), *rev'd on other grounds*, 88 F.3d 739 (9th Cir. 1996); one applied a four-factor balancing-test, *see Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); two adopted a hybrid burden-shifting and balancing approach, *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007); *Mountain Side Mobile Estates P'ship v. HUD*, 56 F.3d 1243, 1252, 1254 (10th Cir. 1995), and one adopted a burden-shifting approach for private defendants and a balancing test for public defendants. *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 989 n.5 (4th Cir. 1984). The D.C. Circuit had not addressed which approach to take. *See, e.g., 2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*, 444 F.3d 673, 680 (D.C. Cir. 2006).

2013 Rule's burden-shifting framework in addressing FHA discriminatory effects claims, including both courts that had previously adopted the same burden-shifting approach, and courts that had previously taken a different approach prior to the Rule. *See de Reyes v. Waples Mobile Home Park L.P.*, 903 F.3d 415, 424 (4th Cir. 2018); *Ave. 6E Invs., LLC v. Yuma*, 818 F.3d 493, 512–13 (9th Cir. 2016); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 618–19 (2d Cir. 2016) (also noting that the 2013 Rule had a more restrictive burden-shifting framework than prior Second Circuit precedent); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014). Other courts in this District have likewise relied on HUD's burden-shifting framework in addressing FHA discriminatory effects claims. *See Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 28–29 (D.D.C. 2017); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 21–22 (D.D.C. 2016).

In 2014, in response to a separate insurance industry organization bringing a facial challenge to HUD's 2013 Rule, a district court in the Northern District of Illinois upheld the 2013 Rule's burden-shifting framework and held that any alleged violation of the McCarran-Ferguson Act's reverse preemption provision could only be adjudicated in the context of a concrete dispute challenging the application of the 2013 Rule to a particular insurance practice, rather than in the abstract. *See Prop. Cas. Ins. Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1051–53, 1037–42 (N.D. Ill. 2014) ("*PCI*"). That court, however, remanded the matter to HUD for the agency to provide further explanation as to why case-by-case adjudication was preferable to providing exemptions or safe harbors related to home insurance. *See id.* at 1049, 1054. HUD provided that additional explanation in 2016, *see* HUD, Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance, 81 Fed. Reg. 69012 (Oct. 5, 2016), AR 001813–

20, and PCI's challenge to the adequacy of HUD's supplemental explanation remains pending.[2]

In 2015, the Supreme Court held that discriminatory effects claims are cognizable under the FHA. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015). In reaching this holding, the Court clarified that "disparate-impact liability has always been properly limited in key respects," *id*. at 540, and that the FHA "mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the displacement of valid governmental policies," *id*. (citing *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). The Court highlighted the importance of the burden-shifting framework in determining FHA disparate impact liability, and twice cited HUD's 2013 Rule in this part of its analysis. *Id*. at 541–42 (citing 78 Fed. Reg. at 11470, 11476).[3] The Court also found that "[r]emedial orders in disparate-impact cases should concentrate on the elimination of the offending practice," *id*. at 544, but found that "race may be considered in certain circumstances and in a proper fashion," *id*. at 545; *see also id*. (finding that "mere awareness of race" is not problematic).

In 2019, HUD proposed several changes to its 2013 Rule, *see* HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 84 Fed. Reg. 42854 (Aug. 19, 2019), AR 009380–89, and published a final rule making substantial changes in 2020. *See* HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 85 Fed. Reg. 60288 (Sept.

---

[2] PCI continues to challenge the adequacy of HUD's 2016 supplemental explanation. *See, e.g.*, Pl.'s Mem. in Supp. of. Mot. for Sum. J., ECF No. 222, *PCI v. Fudge*, No. 1:13-cv-8564 (N.D. Ill. May 28, 2021).

[3] The Supreme Court affirmed the Fifth Circuit's judgment, which had directed the district court on remand to apply the 2013 Rule to the dispute. *See Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282-83 (5th Cir. 2014). The Second Circuit later held that the Supreme Court implicitly adopted HUD's 2013 Rule. *See Mhany Mgmt., Inc.*, 819 F.3d at 618; *see also Azam v. City of Columbia Heights*, No. 14-1044, 2016 WL 424966, at *10 (D. Minn. Feb. 3, 2016) (explaining the consistency between the three burden-shifting steps of the 2013 Rule and the limitations to disparate impact liability specified in *Inclusive Communities*), *aff'd*, 865 F.3d 980 (8th Cir. 2017).

24, 2020), AR 051595–640. Before the 2020 Rule went into effect, however, a district court in the District of Massachusetts issued an order staying the effective date of the 2020 Rule and preliminarily enjoining HUD from enforcing the 2020 Rule. *See Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 611–12 (D. Mass. 2020). As of this filing, that order remains in effect; as a result, the 2020 Rule never went into effect.

On June 25, 2021, HUD published a notice in the Federal Register explaining that HUD had reconsidered the 2020 Rule and proposed to reinstate the agency's 2013 Rule. *See* Reinstatement of HUD's Discriminatory Effects Standard, 86 Fed. Reg. 33590 (June 25, 2021), AR 051865–72. The agency invited interested persons to submit comments on its proposal by August 24, 2021. *See id.* HUD received over 10,000 comments, including one submitted by Plaintiff on August 23, 2021, *see* Ltr. fr. Thomas Karol, NAMIC, to Kathleen Pennington, HUD, re: Dkt No. FR–6251–P–01, RIN 2529–AB02 (Aug. 23, 2021), AR 52410–20. On March 31, 2023, HUD promulgated a final rule rescinding the 2020 Rule and reinstating the 2013 Rule, *see* Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19450 (Mar. 31, 2023) ("2023 Rule"), AR 056482–32. The 2023 became effective on May 1, 2023. *See id.*

## PROCEDURAL BACKGROUND

Plaintiffs the American Insurance Association ("AIA") and the National Association of Mutual Insurance Companies ("NAMIC"), two insurance trade groups, initiated this action in June 2013. *See* Compl., ECF No. 1. Plaintiffs initially sought vacatur of the 2013 Rule solely on the grounds that the FHA did not prohibit discriminatory effects claims. *See id.* ¶¶ 71–73. Defendants produced the administrative record and the parties filed dispositive motions. *See* Pls.' Mot. for Sum. J., ECF No. 16; Defs.' Mot. to Dismiss or, in the Alt., for Sum. J., ECF No. 20. In November 2014, this Court granted Plaintiffs' motion and denied Defendants' motion. See *Am.*

*Ins. Ass'n v. HUD*, 74 F. Supp. 3d 30, 39–47 (D.D.C. 2014) ("*AIA*"). Defendants filed a notice of appeal to the United States Court of Appeals for the District of Columbia ("D.C.") Circuit. *See* Not. of Appeal, ECF No. 48; *appeal docketed sub nom.*, *AIA v. HUD*, No. 14-5321 (D.C. Cir. Dec. 23, 2014)). In March 2015, the D.C. Circuit ordered Defendants' appeal held in abeyance pending the Supreme Court's resolution of *Inclusive Communities. See* Order, *AIA*, ECF No. 1541288. In September 2015, the D.C. Circuit vacated this Court's judgment and remanded for proceedings in light of *Inclusive Communities*. *See* Order, ECF No. 51 ("USCA Mandate").

In April 2016, this Court granted Plaintiffs' motion for leave to amend their Complaint to substitute four new causes of action contending that the 2013 Rule was contrary to law to the extent that it applies to insurers' ratemaking and underwriting decisions. *See* Minute Order (April 14, 2016); Pls.' Amend Compl., ECF No. 57 ("FAC"). Counts I and II alleged that HUD's 2013 Rule was in excess of HUD's jurisdiction to the extent it applies to home insurers' ratemaking and underwriting authority. *See* FAC ¶¶ 76-89. Counts III and IV alleged that the 2013 Rule's proof framework was contrary to law in the insurance and ratemaking context. *See id*. ¶¶ 90–107.[4] The parties then filed new summary judgment motions. *See* Pl.'s Mot. for Sum. J., ECF No. 60; Defs.' Opp'n to Pl.'s Mot. for Sum. J. & Mot. for Sum. J., ECF No. 64; Pl.'s Opp'n to Defs' Mot. for Sum. J. & Reply in Supp. of Mot. for Sum J., ECF No. 68; Defs.' Reply in Supp. of Mot. for Sum, J., ECF No. 70.

In February 2017, Defendants filed the first of a series of motions by the parties to continue a hearing on the summary judgment motions, *see*, *e.g.*, Defs.' Mot. for Continuance, ECF No. 72, and this case was eventually stayed, *see, e.g*., Minute Order (Oct. 26, 2018). This

---

[4] Plaintiff American Insurance Association later dismissed its claims without prejudice and withdrew from this lawsuit, leaving NAMIC as the sole Plaintiff. *See* Pl.'s Mot to Dismiss, ECF No. 104; Order, ECF No. 106.

Court lifted the stay on July 1, 2021, and conducted a hearing on the parties' cross-motions for

summary judgment on July 19, 2021. *See* Tr. of Hrg. (July 19, 2021), ECF No. 126. At the

hearing, Plaintiff admitted that to succeed on the merits of its claims, it must show that there is

no set of circumstances in which the 2013 Rule can be properly applied to insurers. *See* Tr. at

35:22–24. Following the hearing, the parties filed supplemental briefs. *See* Defs.' Supp. Br. in

Supp. of Mot. for Sum. J., ECF No. 128; Pl.'s Supp. Br. in Supp. of Mot. for Sum. J., ECF No.

129.

On March 31, 2023, Plaintiff filed a Second Amended Complaint. *See* 2d Amend.

Compl., ECF No. 146 ("SAC"). Plaintiff's SAC is identical to its FAC except that it now also

challenges HUD's 2023 Rule. *See, e.g., id.* ¶¶ 14, 16–17, 84–115. On April 17, 2023, Defendants

served a supplement to the Administrative Record on Plaintiff, and Defendants now file this

supplemental brief pursuant to this Court's Minute Order. *See* Minute Order (Apr. 14, 2023).[5]

## ARGUMENT

## I.  PLAINTIFF LACKS STANDING TO MAINTAIN ITS CLAIMS

Plaintiff lacks standing to maintain the claims in its Second Amended Complaint.

Plaintiff has failed to produce any evidence that its members will suffer an imminent injury that

is properly traceable to the 2013 or 2023 Rules rather than the FHA, judicial precedents

interpreting the FHA, and other HUD regulations. Plaintiff has likewise failed to show that an

order of this Court vacating the Rule will likely redress its claimed harms.

The Constitution "confers limited authority on each branch of the Federal Government,"

and Article III limits the judicial power to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*,

---

[5] The parties will file a joint excerpt of the Administrative Record ("AR") after Plaintiff
files any response to Defendants' supplemental brief. *See* Minute Order (Apr. 11, 2023).

136 S. Ct. 1540, 1546–47 (2016). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing thus "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The standing inquiry also focuses on whether a particular plaintiff is the proper party to challenge government conduct. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). It remains Plaintiff's burden to demonstrate it has standing at all points during the litigation, *Lujan*, 504 U.S. at 561, and Plaintiff "'must demonstrate standing for each claim [it] seeks to press.'" *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Furthermore, because Plaintiff seeks injunctive relief, it must show an imminent future injury. *See Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). This creates "'a significantly more rigorous burden to establish standing'" than that on parties seeking redress for past injuries. *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *United Transp. Union v. ICC*, 891 F.2d 908, 913 (D.C. Cir. 1989)).[6]

### A. Plaintiff Fails to Demonstrate an Injury-in-Fact

Plaintiff lacks standing because it has failed to show a concrete and particularized injury or that it faces actual or imminent harm. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020). "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it

---

[6] Because the D.C. Circuit vacated the prior judgment in this case, *see* Order, ECF No. 51, this Court's prior ruling on Plaintiff's standing is not law of the case. *See Johnson v. Bd. of Educ. of Chicago*, 457 U.S. 52, 53 (1982).

consequently does not show standing." *Id*. (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)). Facts demonstrating a concrete and particularized injury "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the [plaintiff's] pleadings." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (citations omitted); *see also Friends of the Earth, Inc. v. Laidlaw Env'tl Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("The requisite personal interest that must exist at the commencement of the litigation … must continue throughout its existence") (cleaned up); *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002).

Plaintiff's record evidence attached to its summary judgment motion fails to demonstrate a cognizable injury at all, much less one that is actual or imminent. Plaintiff, for example, attaches the affidavit of an employee of Motorists Mutual Insurance Co. *See* Aff. of David R. Benseler, ECF No. 60-3. Despite the fact that HUD's 2013 Rule had been in effect for over three years at the time of Motorists' affidavit, the affidavit avers no facts identifying any injury. *See id*. To the contrary, Motorists avers that it "has no intention of" doing anything different in light of the 2013 Rule. *See id*. ¶ 7. Nor does any other part of Plaintiff's record evidence establish an actual or imminent injury. *See, e.g*., Aff. of Kevin J. Christy ¶ 5, ECF No. 60-4 (averring, despite the fact that the 2013 Rule had been in effect for over three years, only that Western National Mutual Insurance Co. "will" at some undefined point in time in the future, "need to collect data"); Aff. of Andrews P. Forstenzer ¶ 7, ECF No. 60-5 (averring only that Preferred Mutual "would" at some unspecified time in the future, "need to collect data"); Aff. of Greg Hayward ¶ 60-6 (averring, despite the fact that the 2013 rule had been in effect for more than three years, that State Farm "does not collect data"); *see also* Tr. at 5:21–25 (Plaintiff's statement that the 2013 Rule "would require" at some undefined time in the future, Plaintiff's members to eventually take action). "This is … the kind of uncertain and unspecific prediction of future harm

that is inadequate to establish Article III standing." *Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015).[7]

Plaintiff's evidentiary submissions thus entirely fail to establish a concrete and particularized injury, or an actual or immediate threat of imminent harm. *Cf. Carey*, 141 S. Ct. at 500 ("We have examined the summary judgment record to determine whether Adams made this showing [of "a 'personal and individual' injury beyond [a] "generalized grievance"] …. [W]e conclude that he has not."); *id.* at 501 ("Adams' words … stand alone without any actual past injury, without reference to an anticipated timeframe, and without any other supporting evidence."); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021) ("plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing"), *on remand*, 9 F.4th 1201 (9th Cir. 2021); *Lujan*, 504 U.S. at 564 n.2 (concept of imminence "has been stretched beyond the breaking point when ... the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819, 820 (D.C. Cir. 2006) (association "had at least two opportunities to submit evidence to show standing for one of [its] members, and the Court is still left to wonder who, if anybody, has suffered an injury-in-fact."); *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994).

In the seven years since summary judgment briefing, Plaintiff still has not come forward with any evidence substantiating its claims of present or imminent injury to its members. *See, e.g.*, SAC ¶¶ 79–83 (failing to identify a specific instance in which any of Plaintiff's members were harmed by the 2013 Rule); AR 52410–20 (Plaintiff's comment acknowledging that "for the

---

[7] In any event, as explained below, the Rule does not in fact require the collection of data. *See, infra* at 15.

last eight years, there have … been no allegations or findings of homeowner insurer disparate impact … made or adjudicated since 2013."). To the extent that Plaintiff attempts to establish organizational standing with the bare allegations that it spent resources to analyze the 2013 and 2023 Rules, SAC ¶¶ 74–76, "an organization does not suffer an injury in fact where it expends resources to educate its members and others unless doing so subjects the organization to operational costs beyond those normally expended." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015) (citations omitted). Plaintiff falls well shy of meeting that standard. Plaintiff thus fails to satisfy its burden that it has suffered a sufficient injury in fact necessary to pursue its claims before this Court, much less an imminent injury that justifies injunctive relief.

### B. Plaintiff Fails to Show Its Alleged Injuries are Traceable to the 2013 or 2023 Rules or that They Are Redressable

Plaintiff also fails to satisfy its burden that its alleged injuries are traceable to the 2013 or 2023 Rules or would be redressed by an order of this Court setting aside the 2023 Rule as it applies to home insurers' ratemaking and underwriting decisions.

As a preliminary matter, for purposes of establishing standing, is it not sufficient that Plaintiff's members claim that they are the direct object of the 2013 or 2023 Rules. *See Nat'l Ass'n of Home Builders v. US. Army Corps. of Eng'rs*, 663 F.3d 470 (D.C. Cir. 2011). Rather, where, as here, a regulation essentially duplicates pre-existing legal duties, a plaintiff must still establish the traceability and redressability requirements to maintain standing. *See id*. Thus, in this case it remains Plaintiff's burden to establish the traceability and redress prongs of the standing requirement, a burden which it grossly fails to meet.

To maintain standing, a plaintiff must show that the claimed injury is "fairly traceable" to the defendants' actions that are the subject of the lawsuit. *See, e.g., Summers v. Earth Island*

*Inst.*, 555 U.S. 488, 493 (2009). In contrast, when a separate, independent government action causes the same alleged harm as a defendant's challenged action, a plaintiff cannot establish the "necessary causal connection" between the defendant's actions and an alleged injury necessary to demonstrate standing. *Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1297 (D.C. Cir. 2015) (per curiam); *Crete Carrier Corp. v. EPA*, 363 F.3d 490, 493 (D.C. Cir. 2004); *see also Texas v. EPA*, 726 F.3d 180, 197-99 (D.C. Cir. 2013) (dismissing petitions for lack of standing because challenged regulations did not cause petitioners' claimed injuries; the injuries were caused by statute); *Baz v. U.S. Dept. of Homeland Sec.*, No. 1:18-cv-1013, 2019 WL 5102827, at *4 (D.D.C. Oct. 11, 2019).

Plaintiff must also establish that "it [is] 'likely,' not 'speculative,' that the court can redress the injury." *Ctr. of Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (quoting *Lujan*, 504 U.S. at 560-61). However, a plaintiff's injury cannot be redressed by a court order when two independent government actions produce the same harm and only one is challenged. *See, e.g., Delta Constr.*, 783 F.3d at 1296 ("[E]ven were we to vacate the EPA standards, the NHTSA standards would still increase the price of vehicles."); *Texas*, 726 F.3d at 198 (vacating an agency's action "would not redress the State petitioners' injury" because of a second, independent source of the harm).

Where, as here, a regulation essentially duplicates pre-existing legal duties, a plaintiff must still establish the traceability and redressability requirements to maintain standing. *See id.* In this case, Plaintiff fails to allege any injury that is properly traceable solely to HUD's 2013 Rule or 2023 Rule, as opposed to the FHA, judicial precedent interpreting the FHA, and other HUD regulations. First, Plaintiff has not even attempted to show that any of its members' alleged harms are traceable to the 2013 or 2023 Rules' burden-shifting framework rather than the

decisions of the Supreme Court and almost every court of appeals recognizing that violations of the FHA may be established by showing an unjustified discriminatory effect. That alone dooms its effort to establish standing. Quite simply, Plaintiff has not shown that the alleged injuries to its members are properly traceable to the 2013 or 2023 Rules rather than the HUD regulation in effect since 1989—which provides that the FHA applies to insurers, *see* 54 Fed. Reg. at 3240, AR 056736—and other long-standing judicial precedent establishing that the Act's discriminatory effects standard can be applied to insurers despite the potential conflict with state laws regulating insurers. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995) (additional remedies under the FHA did not cause the Act to invalidate, impair, or supersede Ohio insurance law, and under McCarran-Ferguson, the FHA was not preempted); *United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n*, 24 F.3d 1008, 1016 (7th Cir. 1994) (since the State "does not require or condone redlining, or commit to insurers all decisions about redlining," application of the FHA was not precluded).[8] In other words, even in the absence of the 2013 and 2023 Rule, Plaintiff would still be subject to the FHA and established judicial precedents that set out various burden-shifting frameworks and would still be subject to suit by any aggrieved person. *Cf. Nat'l Ass'n of Home Builders v. U.S. Fish & Wildlife Serv.*, 786 F.3d 1050, 1054 (D.C. Cir. 2015) ("'[I]ndependent action of some third party not before the court' is not fairly traceable to challenged actions by the [agency].") (quoting *Lujan*, 504 U.S. at 560). Thus, Plaintiff has failed to properly trace its alleged harms to HUD's 2013 or

---

[8] Indeed, Plaintiff itself acknowledged in 1996 that the Fair Housing Act's disparate impact standard applies to insurers. *See* Amicus Br. of Nat'l Ass'n of Mut. Ins. Cos., *Nationwide Mut. Ins. Co. v. Cisneros*, No. 95-714, 1996 WL 33467765, at *14 (U.S. Jan. 3, 1996) (warning, as *amici* supporting a petition for *certiorari*, that "[t]he practical effect of the Sixth Circuit's decision is that property insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules").

2023 Rules.

Second, contrary to Plaintiff's contention that the 2013 and 2023 Rule require Plaintiff's members to collect race data, *see, e.g.*, SAC ¶¶ 57, Pl.'s Mot. for Sum. J. at 16-17, Plaintiff cannot identify any text in the 2013 or 2023 Rules that do so; rather, these alleged harms arise only from Plaintiff's misapprehension of the Rule's requirements. *Cf. Elec. Priv. Info. Ctr. v. FAA*, 892 F.3d 1249, 1254 (D.C. Cir. 2018) ("EPIC bears the burden to show that those services are authorized by this rule and cause the alleged injuries, which would be remedied by vacatur," but its "allegations do not establish an injury caused by the FAA's … rulemaking."); *Sierra Club v. EPA*, 754 F.3d 995, 1001 (D.C. Cir. 2014) (rejecting claims of injury based on the speculative reading of an EPA memorandum, where the memorandum could be interpreted differently and EPA indicated that it did so).

The 2013 and 2023 Rules do not require Plaintiff's members to collect race data. HUD expressly stated in the preamble to the 2023 Rule that it is "not requiring data collection." 88 Fed. Reg. at 19480, AR 056512.  As HUD explained, "independent data gathering is not necessary to defend a lawsuit alleging discriminatory effects" as it is a plaintiff that has the "initial burden … to show a disparate impact." *Id*. It further explained that "[d]efendants need not present their own statistics in response to [a plaintiff's] step one evidence, but may defend in numerous other ways, including by showing that the data put forward by plaintiff is incorrect or wrongly analyzed, or by showing at step two that the challenged practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." *Id*. Plaintiff, moreover, has not submitted any evidence that its members have collected any such data, despite the fact that the 2013 Rule has been in effect for more than ten years. Plaintiff therefore fails to adequately trace to the 2013 or 2023 Rules its alleged injury arising from the alleged requirement to collect race data.

Third, Plaintiff challenges HUD's alleged failure to adopt Plaintiff's preferred "equally effective" standard for the third part of the burden-shifting framework. But Plaintiff never even identifies, must less substantiates, any harm arising from the "less restrictive means" standard that HUD did adopt. In the absence of any harm caused by the less restrictive means standard, Plaintiff lacks standing to challenge this aspect of the Rule.

Nor does Plaintiff demonstrate how vacating the Rule would likely redress its alleged harms. For all the reasons set out above, even if this Court were to vacate the Rule, litigants, including HUD, could still pursue disparate impact claims against insurers based on the FHA, judicial precedents, and HUD's other regulations and authority. And, given that the vast majority of courts used a burden shifting framework prior to 2013, any such cases would likely still be evaluated through such a framework. Plaintiff's failure to satisfy the traceability and redressability prongs thus forecloses its ability to pursue its claims before this Court.

## II.  PLAINTIFF'S FACIAL CHALLENGE IS NOT RIPE FOR JUDICIAL RESOLUTION

Plaintiff cannot show that its claims are ripe for review. The Supreme Court has repeatedly held that it is the obligation of Article III courts to "exercise power only in the last resort," *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (citations omitted), and that all lawsuits must be "ripe for court review" in order to be justiciable. *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732 (1998). The ripeness requirement "comports with [courts'] theoretical role as the governmental branch of last resort." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). Ripeness, in turn, contains constitutional and prudential elements. *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386–37 (D.C. Cir. 2012); *Common Cause v. Trump*, 506 F. Supp. 3d 39, 44–45 (D.D.C. 2020). Constitutional ripeness turns on whether the plaintiff has established "an injury-in-fact that is imminent or certainly impending." *Am. Petrol. Inst.*, 683

16

F.3d at 386 (quotations omitted). Prudential ripeness balances "the fitness of the issues for judicial decision" against "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967); *see also Church v. Biden*, No. 1:21-cv-2815 (CKK), 2022 WL 1491100, at *8 (D.D.C. May 11, 2022). Ripeness is a threshold justiciability doctrine, and courts may address ripeness before or after considering other justiciability doctrines, including Article III standing. *See In re Aiken Cnty.*, 645 F.3d 428, 434 (D.C. Cir. 2011).

### A. Plaintiff Cannot Satisfy the Constitutional Element of the Ripeness Requirement

First, although the 2013 HUD Rule has now been in effect for more than ten years, Plaintiff has not demonstrated any concrete and particularized injury to its members stemming from either the 2013 or 2023 Rules. Plaintiff's failure reinforces that whatever injury Plaintiff complains of is certainly not "imminent or certainly impending," *Am. Petrol. Inst.*, 683 F.3d at 386 (quoting *Nat'l Treasury Emps. Union*, 101 F.3d at 1427–28), thus dooming any assertion that its claims are constitutionally ripe for review.

"[T]he constitutional requirement for ripeness is injury in fact." *DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 297 (D.C. Cir. 1989); *Nat'l Treasury Emps. Union*, 101 F.3d at 1427 ("[r]ipeness … in fact shares the constitutional requirement of standing that an injury in fact be certainly impending.") (citing *Duke Power Co. v. Carolina Envt'l Study Grp.*, 438 U.S. 59, 81 (1978). For the reasons set forth in Section I, *see supra*, at 8–16, Plaintiff fails to satisfy the constitutional element of the ripeness inquiry.

### B. Plaintiff Fails to Satisfy the Prudential Elements of the Ripeness Requirement

Nor can Plaintiff satisfy the prudential elements of the ripeness requirement. In evaluating prudential ripeness, courts look to two factors: (1) "the fitness of the issues for

judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Nat'l*

*Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citing *Abbott Labs.*, 387

U.S. at 148–49). Both factors indicate that Plaintiff's claims are unripe.

### 1.   Plaintiff Cannot Show that Its Claims Are Fit for Review

A plaintiff must show that its claims are fit for review even if they allegedly concern

purely legal matters. *See Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)

(rejecting as unripe a facial challenge to EPA regulations on the grounds that "even purely legal

issues may be unfit for review" when they "rest[] upon contingent future events that may not

occur as anticipated, or indeed may not occur at all"); *La. Envt'l Action Network v. EPA*, 87 F.3d

1379, 1381-85 (D.C. Cir. 1996) (rejecting as unripe a facial challenge to EPA rules as violating

the Clean Air Act). Plaintiff fails to do so here.

As the Supreme Court has explained:

> "Absent [a statutory provision providing for immediate judicial review], a
> regulation is not ordinarily considered the type of agency action 'ripe' for judicial
> review under the [APA] until the scope of the controversy has been reduced to
> more manageable proportions, and its factual components fleshed out, by some
> concrete action applying the regulation to the claimant's situation in a fashion that
> harms or threatens to harm him."

*Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (concluding that even though issue was purely

legal, and challenged regulation represented final agency action, case was not fit for judicial

review) (quoting *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 891 (1990)); *see also, e.g.,*

*Nat'l Wildlife Federation*, 497 U.S. at 894 ("The case-by-case approach … is understandably

frustrating to an organization such as respondent …. But this is the traditional, and remains the

normal, mode of operation of the courts.").

Plaintiff's abstract attack on the unrealized alleged implications of the 2013 and 2023

Rules is not yet fit for judicial resolution. Unless and until the Rule is challenged in a concrete

setting, such as a home insurer challenging a specific government action, a reviewing court will lack the information necessary to determine how the Rule might (or might not) be properly applied in a particular case. Unless and until the Rule is applied to a specific set of facts concerning an insurer's ratemaking or underwriting practices, the Court can do no more than "[theorize] about how [the] rule will be applied and what its effect will be." *Diamond Shamrock Corp. v. Costle*, 580 F.2d 670, 674 (D.C. Cir. 1978).  Like *National Park Hospitality Association* and *Diamond Shamrock*, this Court should thus decline to review the 2023 Rule until after the government or a private party brings a claim against an insurer. *Cf. Am. Petroleum Inst.*, 683 F.3d at 389.

Put another way, were this Court "to decide the issue of statutory authority now," it would have to decide whether there are *no* set of circumstances in which HUD's Rule could be properly applied to an insurer's ratemaking or underwriting decisions. *Off. of Commc'n of the United Church of Christ v. FCC*, 826 F.2d 101, 106 (D.C. Cir. 1987). If, in contrast, "the correct answer to this question …could also be 'some,'" Plaintiff's claim is unripe. *Id.*; *see also Nat. Res. Def. Council, Inc. v. EPA*, 194 F.3d 130, 138 (D.C. Cir. 1999) (noting that if a plaintiff concedes that the challenged Rule may not be improperly applied in every circumstance, "its facial challenge collapses and it must wait until there is an actual enforcement proceeding to make a specific challenge that will be ripe.").

In sum, Plaintiff's challenge is not ripe because further factual development in the context of a concrete action would "significantly advance [the courts'] ability to deal with the legal issues presented" and would "aid [them] in their resolution." *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 82 (1978).

## 2. Plaintiff Has Not Shown Any Hardship that Would Result from Withholding Judicial Review

As noted above, Plaintiff's comment on the 2021 Proposed Rule (that resulted in the 2023 Rule) acknowledges that "for the last eight years, there have … been no allegations or findings of homeowner insurer disparate impact … made or adjudicated since 2013." AR 52410–20. Plaintiff therefore cannot show hardship that would arise from application of the Rule to its members, much less from withholding judicial review of the claims set out in its Second Amended Complaint. *Cf. Cronin v. Fed. Aviation Admin.*, 73 F.3d 1126, 1133 (D.C. Cir. 1996). Neither the 2013 nor 2023 Rule proscribes any conduct—for that is what the FHA itself does; instead, the 2013 and 2023 Rules set out a framework for determining liability. Plaintiff has failed to identify any underwriting practice or other business interest in the last decade that the 2013 or 2023 Rules have prevented its members from employing. Nor has Plaintiff otherwise shown any other hardship to its members arising from the Rule. Plaintiff's challenge thus remains an "abstract disagreement[] over administrative polic[y]," *Nat'l Park Hospitality Ass'n*, 538 U.S. at 807–08, that fails to satisfy the prudential ripeness requirement.

Plaintiff has failed to establish that it would suffer hardship in the absence of judicial intervention for substantially the same reason that it has failed to demonstrate an imminent injury-in-fact. Like the plaintiffs in *Toilet Goods*, Plaintiff here has never attempted to demonstrate that the "impact of the [Rule has been] felt *immediately* ... in conducting [its] day-to-day affairs." *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967) (emphasis added). Indeed, although Plaintiff alleges that its members "have devoted … resources to re-examining, and if necessary, modifying their existing practices," SAC ¶ 78, Plaintiff has not come forward with any specific record evidence that its members have actually done so. Similarly, Plaintiff alleges that its members "face a significant threat of continuous and recurring litigation and

20

agency-enforcement actions," *id.* ¶ 81, but has failed to produce any record evidence of any

litigation or enforcement actions against its members in the ten years since the 2013 Rule was

promulgated.[9] Accordingly, Plaintiff has failed to demonstrate the sort of hardship that would

warrant review of its abstract claim. *See Nat. Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166

(D.C. Cir. 1988) ("A petitioner cannot show hardship by positing a speculative or hypothetical

future harm."); *see also State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 480 (D.C. Cir.

1986) ("[A] party's allegation of hardship will be found wanting if there are too many 'ifs' in the

asserted causal chain linking the agency's action to the alleged hardship").

　　Plaintiff's purely hypothetical concern—about an unspecified potential conflict between

disparate impact liability directly under the FHA or the Rule and various state rules regulating

insurers—is likewise unripe for review.[10] Indeed, Plaintiff has entirely failed to identify any such

conflicts that have actually arisen in the last ten years. This Court should thus join the *PCI v.

Donovan* court in concluding that an insurance association's claims about the Rule's potential

conflict with state laws are not ripe for resolution and warrant dismissal. *See PCI*, 66 F. Supp. 3d

at 1037–42.

　　Contrary to Plaintiff's contention, moreover, application of the FHA's disparate impact

standard or the 2013 or 2023 Rules to a particular insurance underwriting practice—in the

context of an individual state law also governing that practice—would necessarily involve a

highly fact-specific assessment of the effects of a challenged practice, the justifications for the

---

[9] Plaintiff also agreed to stay this case for over four years even though the 2013 Rule was in effect, *see, e.g.*, ECF No. 72; Minute Order (Oct. 26, 2018), which further underscores the lack of hardship to Plaintiff in now withholding review.

[10] Plaintiff's members have been advancing similar claims for decades, and courts have rejected those claims. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1363 (6th Cir. 1995) ("[W]e hold that the McCarran-Ferguson Act does not preclude HUD's interpretation of the Fair Housing Act."); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992).

practice, and the particular application and potential conflict of any relevant state law relating to the business of insurance. *See* 88 Fed. Reg. at 19477, AR 056508; 78 Fed. Reg. at 11475, AR 000611–34. As a result, "judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here." *Toilet Goods Ass'n*, 387 U.S. at 164; *see also Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003) ("[I]ssues … may not be fit for review where the agency retains considerable discretion to apply the new rule on a case-by-case basis, particularly where there is a complex statutory scheme or there are other difficult legal issues that are implicated by the agency action."). Thus, Plaintiff's abstract challenge to HUD's Rule presents "the classic institutional reason to postpone review" until an actual controversy arises, which is the "need to wait for 'a rule to be applied [to see] what its effect will be.'" *La. Envt'l Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) (quoting *Diamond Shamrock*, 580 F.2d at 674). Indeed, Plaintiff's contention that FHA disparate impact liability in general might conflict with a state law regulating insurance is precisely the speculative claim rejected as unripe by the Sixth Circuit in *Nationwide*. *See Nationwide*, 52 F.3d at 1362–63; The same is true here. *See PCI*, 66 F. Supp. 3d at 1037–42.

## III. PLAINTIFF'S CHALLENGE FAILS ON THE MERITS

Even if this Court were to reach the merits of Plaintiff's claims, Plaintiff's facial challenge still fails. First, Plaintiff fails to show that there is no set of circumstances in which the Rule can be properly applied to insurers. Second, Plaintiff fails to show that the Rule improperly expands disparate impact liability. Third, Plaintiff fails to show that the Rule categorically conflicts with state laws regulating insurance. Finally, Plaintiff fails to show that HUD's rejection of Plaintiff's preferred standard for the third step of the discriminatory effects burden-shifting

framework was improper.

## A. Plaintiff Fails to Sustain its Facial Challenge

As Plaintiff has acknowledged, *see* Tr. at 35:22–24, to succeed Plaintiff must show that

there is no set of circumstances in which the Rule can be properly applied to insurers. *See Reno*

*v. Flores*, 507 U.S. 292, 301 (1993); *Sherley v. Sebelius*, 644 F.3d 388, 397 & n.** (D.C. Cir.

2011); *Chamber of Commerce v. NLRB*, 118 F. Supp. 3d 171, 184 & n.7 (D.D.C. 2015).[11]

Plaintiff cannot meet that burden because another court in this District has properly resolved an

FHA discriminatory effects case without any of Plaintiff's claimed harms coming to pass. *See*

*Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 34 (D.D.C. 2017). In

*Travelers*, the court denied an insurer's motion to dismiss an FHA discriminatory effects

challenge, governed by the 2013 Rule, to the company's policy of refusing to provide home

insurance for landlords who provided housing to Section 8 tenants. *See id.* at 29 (citing 24 C.F.R.

§ 100.500(c)). Thereafter, the parties settled the case, Stip. of Dismissal, *Nat'l Fair Hous. All. v.*

*Travelers Indem. Co.*, No. 1:16-cv-928-JDB (D.D.C. July 18, 2016), ECF No. 26, without any of

Plaintiff's claimed harms coming to pass, *see, e.g.*, Def.'s Mot. to Dismiss, at 2, *id.* ECF No. 10–

2; Mem. Op., *id.*, 261 F. Supp. 3d 20, 34 (D.D.C. 2017); Stip. of Dismissal, *id.*, ECF No. 26.

Therefore, because the Rule was properly applied to home insurance in *Travelers*, Plaintiff has

not and cannot meet its burden of sustaining its facial challenge to the 2013 or 2023 Rules. *See*

---

[11] To be clear, Plaintiff's challenge cannot proceed as an "as applied" challenge because Plaintiff does not "ask[] a court to assess a [regulation's validity] with respect to the particular set of facts before it," *Hodge v. Talkin*, 799 F.3d 1145, 1156 (D.C. Cir. 2015). Plaintiff merely poses a series of vague hypotheticals, which is insufficient for evaluating Plaintiff's claim as anything other than a facial challenge. *Cf. PCI*, 66 F. Supp. 3d at 1036 ("Although [plaintiff] does not seek to invalidate the Rule outside the homeowners insurance context, its challenge is more akin to a facial challenge than to an as-applied challenge").

Defs.' Mot. at 14–15.[12]

## B. Plaintiff Fails to Show that the Rule Improperly Expands Disparate Impact Liability

Even putting aside Plaintiff's failure to sustain its facial attack, Plaintiff fails to show that

HUD's Rule is invalid because Plaintiff has not established that the Rule requires insurers to use

or consider race in a "pervasive way." Defs.' Mot. at 16–20. First, Plaintiff fails to point to any

specific language in the 2013 or 2023 Rules that require the use or consideration of race. *See,*

*e.g.*, Pl.'s Mot. for Sum. J. at 15–21, ECF No. 60; Pl.'s SAC ¶¶ 55–58, 88. This is not surprising,

because there is no such language in either Rule. Rather, like the Supreme Court's *Inclusive*

*Communities* opinion, the 2013 and 2023 Rules preclude the use of "facially neutral practices

that have an unjustified discriminatory effect on the basis of a protected characteristic." 88 Fed.

Reg. at 19450, AR 056482; 78 Fed. Reg. at 11461, AR 000611-000634. Like *Inclusive*

*Communities*, the Rule maintains existing law, rather than changes it. *See Inclusive Cmtys.*, 576

U.S. at 540 (holding that "disparate-impact liability has always been properly limited in key

respects" and "mandates the 'removal of artificial, arbitrary, and unnecessary barriers,' not the

displacement of valid … policies.") (quoting *Griggs*, 401 U.S. at 431); 576 U.S. at 541 (citing,

with approval, the second step of the 2013 Rule's burden-shifting analysis); 88 Fed. Reg. at

19453–54, AR 056485–86 ("this final rule does not impose any new liability"). Contrary to

Plaintiff's contention, moreover, a remedy of a disparate impact violation does not require the

---

[12] Similarly, in *Dehoyos v. Allstate Corporation*, the Fifth Circuit affirmed the district court's denial of a motion to dismiss allegations that a credit scoring system that caused higher rates for non-white customers had an unjustified discriminatory effect under the FHA. 345 F.3d 290 (5th Cir. 2003). The defendant insurer then settled the FHA disparate impact lawsuit. *See* No. 01-cv-1010, 2007 WL 528266 (W.D. Tex., Feb. 21, 2007) (approving settlement and explaining burden-shifting test for disparate impact claims). While *Dehoyos* predates the 2013 Rule, its resolution also shows the insurance industry can be subject to liability for disparate impact claims under the FHA without any of Plaintiff's claimed harms coming to pass.

use of race, but instead "should concentrate on the elimination of the offending practice."

*Inclusive Cmtys.*, 576 U.S. at 544. There is no contrary requirement in the 2013 or 2023 Rules.

Indeed, as noted above, the elimination of the challenged insurance practice at issue in *Travelers*,

261 F. Supp. 3d at 28–29, demonstrates that a disparate impact violation by an insurer can be

remedied without improperly considering race data. In light of Plaintiff's admitted burden to

sustain its facial challenge, *see* Tr. at 35:22–24, this single instance is sufficient to defeat

Plaintiff's claim. Moreover, as HUD noted in the preamble to the 2023 Rule, "lenders routinely

collect data on protected characteristics" and engage in "self-testing" to determine compliance

with the FHA. 88 Fed. Reg. at 19480–81, AR 056512–13.  Awareness of protected traits and the

impact of policies based on protected traits is different from considering or making decisions

*based upon* a protected trait, which would constitute discriminatory treatment. *See* 88 Fed. Reg.

at 19469, AR 56501. Contrary to Plaintiff's contention, *Inclusive Communities* rejected the

argument that this type of analysis would raise equal-protection concerns and instead found that

"awareness of race" can help "local housing authorities [that] choose to foster diversity and

combat racial isolation with race-neutral tools." *Inclusive Cmtys.*, 576 U.S. at 545.

Text aside, Plaintiff has not shown that the 2013 or 2023 Rules require Plaintiff's

members to otherwise collect race data. *See supra*, at 15-16; *see also* Defs.' Mot. at 20–24. As a

threshold matter, the Supreme Court has expressly found that "race may be considered in certain

circumstances and in a proper fashion" in both "public and private transactions covered by the

FHA," *Inclusive Cmtys.*, 576 U.S. at 545, thus rebutting Plaintiff's claim that any consideration

of race, whether or not required by the Rule, would be necessarily improper. Second, Plaintiff

cites no part of either Rule that imposes such a requirement, nor any other HUD statement

suggesting or imposing this obligation; the idea that the Rule requires the collection of such data

is based on nothing more than Plaintiff's misapprehension. And contrary to Plaintiff's concern, it is a plaintiff in an FHA action challenging a particular practice or practices that has the burden to show a discriminatory effect at step one, *see* 88 Fed. Reg. at 19480, AR 056512; 78 Fed. Reg. at 11475, AR 000611–34, and a defendant may be able to overcome that showing by showing a lack of causation or finding fault in a plaintiff's proffer. HUD, moreover, has expressly disclaimed any intent to "force insurers to consider protected traits of individuals in the rating and underwriting process." 88 Fed. Reg. at 19469, AR 056501. Additionally, despite the fact that the 2013 Rule has now been in effect for more than *ten years*, Plaintiff has never presented any evidence that its members are actually collecting such data, or rebutted Defendants' showing that parties may, for example, instead be able to properly rely on Census data. *Cf. Nat'l Fair Hous. All. v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 60 (D.D.C. 2002).

Additionally, Plaintiff fails to show that its members are entitled to a categorical exemption from FHA disparity impact liability. *See* Defs.' Mot. at 28–32, AR 057845–49. Plaintiff fails to point to anything in the FHA itself or judicial precedent requiring such an exemption, nor can it show that HUD acted arbitrarily or capriciously in denying such a request. To the contrary, as HUD explained in the preamble to the 2023 Rule, *see* 88 Fed. Reg. at 19463, 19471, AR 056495, 056503, Congress has not provided a categorical exception or safe harbor for insurers, despite creating carveouts for certain practices, *cf.* 42 U.S.C. §§ 3605(c), 3607(b)(1), 3607(b)(4), 3614-1. *See Sierra Club* v. *EPA,* 719 F.2d 436, 453 (D.C. Cir. 1983) ("[T]he general rule [is] that when a statute lists several specific exceptions to the general purpose, others should not be implied.") (citations omitted). In addition to the absence of an express statutory exemption, other textual signals support HUD's decision. As HUD has noted, the FHA refers to a "prohibited action" rather than an actor, which supports HUD's determination that *all* industries

are potentially subject to the Act's requirements, not just certain actors. 88 Fed. Reg. at 19463, AR 056495 (citing 42 U.S.C. § 3604(a)). Courts have likewise declined to provide a categorical exemption for insurers. *See Graoch Assoc. #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Rels. Comm'n*, 508 F.3d 366, 375 (6th Cir. 2007) (concluding that "we cannot create categorical exemptions from [the Act] without a statutory basis" and that "[n]othing in the text of the FHA instructs us to create practice-specific exceptions"); *Am. Family Mut. Ins. Co.*, 978 F.2d at 299 (observing that "it is difficult to see risk classification as a principled ground to exclude insurers" from FHA provisions that cover lenders); *Nat'l Fair Hous. All.*, 208 F. Supp. 2d at 60. In light of the FHA's text and the unanimous view of courts, HUD has provided a reasonable and sufficient explanation for declining Plaintiff's request to create such an exception or safe harbor, *see* 88 Fed. Reg. at 19463, 19471, AR 056495, 056603; 78 Fed. Reg. at 11475, AR 000611–34, a conclusion to which this Court should defer.

Finally, Plaintiff does not and cannot show that the 2013 or 2023 Rules are invalid simply because *Inclusive Communities* noted certain limits on disparate impact liability. Neither the 2013 nor the 2023 Rule purports to define every aspect of disparate impact liability. The purpose of the 2013 and 2023 Rules is to "set[] out a usable and uniform framework that is fully consistent with the requirements established by courts, as well as the text and purpose of the Act," 88 Fed. Reg. 19456, AR 056488, rather than," for example, "to describe how data and statistics may be … used in the application of the standard," 88 Fed. Reg. at 19480, AR 056512.[13] Indeed, the judicial decisions addressing FHA disparate impact liability claims since

---

[13] This Court should also reject Plaintiff's claim that the Rule allows for a discriminatory effects claim to proceed even "'if the plaintiff cannot point to a defendant's policy or policies causing that disparity.'" Pl's. Opp'n at 17 (quoting *Inclusive Cmtys.*, 576 U.S. at 542). To the contrary, the Rule explicitly requires that a plaintiff prove that a defendant's "challenged practice
*(cont'd)*

2015 show that courts can easily reconcile *Inclusive Communities* with the 2013 Rule. *Compare, e.g., de Reyes*, 903 F.3d at 424, 430; *Mhany Mgmt.*, 819 F.3d at 618; *Ave. 6E Invs.*, 818 F.3d at 512–513; *Nat'l Fair Hous. Alliance*, 261 F. Supp. 3d at 20; *Prop. Cas. Ins. Ass'n of Am. v. Carson*, No. 1:13-cv-8564, 2017 WL 2653069, at *8–9 (N.D. Ill. June 20, 2017), *with The Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 902 (5th Cir. 2019). HUD engaged with the logic of the divided panel opinion in *Lincoln Property*, ultimately determining that it was not persuasive. *See* 88 Fed. Reg. at 19460, AR 056492. Crucially, HUD noted that *Lincoln Property* "only found ambiguity in the law after *Inclusive Communities* rather than specifying the way in which HUD needed to change course." *Id.* After considering *all* relevant authority, including *Lincoln Property*, it was reasonable for HUD to adopt the view of the vast majority of courts that the 2013 Rule is consistent with, and is not contrary to, *Inclusive Communities*. *Compare* 88 Fed. Reg. at 19458–61, AR 056490–93, *with Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) ("Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction"). And since the 2023 Rule reinstates the 2013 Rule, the same conclusion applies to the 2023 Rule.

### C. Plaintiff Fails to Show that HUD's Rule Categorically Conflicts with State Laws Regulating Insurance

Plaintiff fails to show that HUD's Rule categorically conflicts with state laws regulating insurance. *See* Defs.' Mot. at 28–32; *see also* 88 Fed. Reg. at 19455, 19473–77, AR 056487, 056505–09. First, Plaintiff's claim that the Rule categorically conflicts with state laws regarding insurance is premised on the faulty assertion that the Rule requires insurers to actively consider

---

*caused or predictably will cause* a discriminatory effect." 24 C.F.R. § 100.500(c)(1) (emphasis added). *See* Defs.' Reply at 16–17.

an individual's race in decision making. As explained above, *see supra*, at 15–16, it does not. Plaintiff's claim also asserts that the Rule categorically prohibits risk-based pricing and underwriting. It does not. *See* 88 Fed. Reg. at 19470, AR 056502. Furthermore, HUD has noted that *Inclusive Communities* did not require the agency to grant insurers a categorical exemption or safe harbor because of a potential conflict with state laws. *See* 88 Fed. Reg. at 19455, AR 056487. Rather, the Court simply determined that, on remand, the lower courts should consider whether federal statutory limits on a defendant's discretion might break the causal chain necessary for plaintiff to make its *prima facie* showing. *See Inclusive Cmtys.*, 576 U.S. at 543. So, too, might individual insurers also demonstrate on a case-by-case basis that a plaintiff has failed to show that a challenged policy is the cause of the alleged disparate impact.[14] But nothing in *Inclusive Communities* can reasonably be read to *require* a categorical exemption from FHA disparate impact liability when other laws are implicated. And furthermore, there may be scenarios where state laws do not break the causal chain.  *See* 88 Fed. Reg. at 19472, AR 056504. For example, there may be multiple ways of complying with a state law requirement, some of which have could produce an unjustified discriminatory effect and some of which would not. *See id*. Indeed, the majority of courts have expressly rejected insurers' repeated requests for such an exemption. *See, e.g., Dehoyos v. Allstate Corp.*, 345 F.3d 290, 299 (5th Cir. 2003); *Am. Family Mut. Ins. Co.*, 978 F.2d at 297 ("American Family has not drawn to our attention … any law, regulation, or decision in Wisconsin requiring redlining, condoning that practice, committing to insurers all decisions about redlining, or holding that redlining with discriminatory

---

[14] Indeed, Plaintiff's confidence that state laws regulating insurers will necessarily break the causal chain suggests that the Rule has not yet and is unlikely to now suddenly cause a torrent of "continuous and recurring litigation and agency-enforcement actions" against its members, SAC ¶ 81, and suggests that HUD's burden-shifting framework has struck the appropriate balance.

intent (or disparate impact) does not violate state law"); *Jones v. Travelers Cas. Ins. Co. of Am.*,
No. 13-cv-2390, 2015 WL 5091908, *5 (N.D. Cal. May 7, 2015); *Lumpkin v. Farmers Grp., Inc.*,
No. 05-cv-2868, 2007 WL 6996777, at *7 (W.D. Tenn. July 6, 2007). Against this backdrop,
HUD reasonably declined to create a categorical exemption in its 2013 or 2023 Rules for home
insurers subject to state laws regulating insurance (as HUD also declined to do in the 2020 Rule),
and instead reasonably decided that case-by-case adjudication of any potential conflict is the
preferable way to address such concerns, *see* 88 Fed. Reg. at 19465, AR 056497.[15]

### D. Plaintiff Fails to Show that HUD Acted Beyond Its Authority in Declining to Adopt Plaintiff's Preferred Standard in the Third Step of the Burden-Shifting Framework

Plaintiff fails to show that HUD's reasoned decision to reject Plaintiff's preferred
"equally effective" standard for the third step of HUD's burden-shifting framework is unlawful.
*See* Defs.' Mot. at 40–41. Contrary to Plaintiff's suggestion, and as HUD itself has noted, *see* 88
Fed. Reg. at 19491, AR 056523, *Inclusive Communities* never used the phrase "equally
effective," and Plaintiff fails to otherwise show any statutory or judicial precedent adopting such
a standard under the FHA that would require HUD to reach a different result. *See Ave. 6E Inv.*,
818 F.3d at 512–13 (recognizing the Rule's burden-shifting standard as providing the limits to
liability specified in *Inclusive Communities* and that § 100.500(c)(3) means that "an adjustment
or accommodation can still be made that will allow both interests to be satisfied"); *PCI*, 66 F.
Supp. 3d at 1052–53 (deferring to HUD's determination that "an 'equally effective' standard is
inappropriate"). And contrary to Plaintiff's suggestion, it was reasonable for HUD, *see* 88 Fed.

---

[15] Even the 2020 Rule, which Plaintiff appears to have supported, *see* Tr. 14:16–18, found that "[w]hether a given Fair Housing Act claim conflicts with State insurance laws such that it can be said to impair, invalidate, or supersede such laws is a case-by-case determination," and that 24 C.F.R. § 100.70(d)(4) "correctly interprets the Fair Housing Act as applicable to property or hazard insurance." 85 Fed. Reg. at 60327, AR 051633. The 2020 Rule thus declined to provide a categorical exemption to insurers. *See id.*

Reg. at 19453, 19457, AR 056485, 056489, to look to prevailing case law generally in arriving at the burden shifting framework reflected in the 2013 and 2023 Rules. *See United States v. Boyle*, 469 U.S. 241, 246 n.4 (1985) (agency "interpretation merits deference" when it "is consistent with Congress' intent, and over 40 years of case law"). In short, Plaintiff's policy disagreement with HUD's conclusion does not provide sufficient grounds to vacate the burden-shifting standard set forth in the Rule.

## IV. THIS COURT SHOULD REJECT PLAINTIFF'S REQUEST TO VACATE THE FINAL RULE AS APPLIED TO INSURERS

Consistent with the requirements of the APA, HUD has carefully responded to all public comments received in response to its notice of proposed rulemaking. HUD has determined that the discriminatory effects standard and the burden-shifting framework in the Rule appropriately implement, and are fully consistent with, the FHA and judicial precedents, including *Inclusive Communities*. However, in the event that this Court concludes that some portions of the 2013 or 2023 Rules are unlawful as applied to Plaintiff's members, it should reject Plaintiff's request that the Court vacate the 2013 and 2023 Rules as applied to insurers and should instead remand the 2023 Rule to HUD.

The APA provides that when a court "hold[s] unlawful and set[s] aside agency action," 5 U.S.C. § 706(2), the agency action that the court sets aside may be either "the whole *or a part* of an agency rule," *id.* § 551(13) (emphasis added). Moreover, once an unlawful agency rule is set aside in whole or in part, the proper role of the court is to remand the matter to the agency so that the agency can reconsider the rule in light of the court's ruling. *See, e.g., Envt'l Def. Fund v. Reilly*, 909 F.2d 1497, 1506 (D.C. Cir. 1990) (explaining that, "should a district court on APA review find agency action defective, either substantively or procedurally, it ordinarily must remand to the agency for further proceedings"), *aff'g*, 657 F. Supp. 302 (D.D.C. 1987); *AFL-CIO*

*v. NLRB*, 466 F. Supp. 3d 68, 96 (D.D.C. 2020), *on reconsidr'n*, 471 F. Supp. 3d 228 (D.D.C.

2020), *aff'd in part, rev'd in part & remanded*, 57 F.4th 1023 (D.C. Cir. 2023); *New York v. U.S.*

*Dep't of Labor*, 363 F. Supp. 3d 109, 141 (D.D.C. 2019), *appeal filed*, No. 19-5125 (D.C. Cir.

Apr. 30, 2019); *see also, e.g.*, *PCI*, 66 F. Supp. 3d at 1049, 1054.

 In this case, HUD's 2023 Rule contains an express severability provision, *see* 88 Fed.

Reg. at 19498, which plainly demonstrates the agency's intent regarding partial invalidation. *Cf.*

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987) (noting that a severability clause creates

a rebuttable "presumption that Congress did not intend the validity of the statute in question to

depend on the validity of the constitutionally offensive provision."). The Rule takes two separate

actions: (i) it rescinds the 2020 Rule, removing 24 C.F.R. § 100.500 and the second and third

sentences of § 100.5(b) from the Code of Federal Regulations ("CFR"), thus nullifying the 2020

Rule and eliminating any and all legal effect that the 2020 Rule could have; and (ii) it adds a new

§ 100.500 and a new second sentence to § 100.5(b) to the CFR. *See* 88 Fed. Reg. at 19498, AR

056530. In the event that any portion of the new § 100.500 or § 100.5(b) is held to be invalid or

unenforceable, HUD intends that the rescission of the 2020 Rule be unaffected. *See id.*

 HUD intends that the 2023 Rule be treated as severable in its applications to home

insurers. *See id.* In the event that the Court decides that home insurers or certain types of

insurance claims should be exempt from the Rule, HUD intends that this final rule remain in

effect and apply to all other actors and claims covered by the Act. *See id.* Under severability

analysis, an "entire rule must be vacated" *only* if severing the unlawful aspects "would severely

distort the [agency's] program and produce a rule strikingly different from any the [agency] has

ever considered or promulgated in the lengthy course of these proceedings," *MD/DC/DE*

*Broadcasters Ass'n v. FCC*, 236 F.3d 13, 23 (D.C. Cir. 2001), which is *not* the situation here. To

the contrary, as the insurance industry itself has acknowledged in its repeated requests for a narrow exemption limited to home insurance, *see, e.g.*, 88 Fed. Reg. at 19463, AR 056495, the 2023 Rule can "function sensibly" as applied to non-insurers. *Sorenson Commc'ns, Inc. v. FCC*, 755 F.3d 702, 710 (D.C. Cir. 2014).

In sum, in the event that this Court were to set aside any portion of the 2023 Rule as applied to insurers, it should "limit the solution to the problem." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 82 (D.C. Cir. 2020) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006)).

## CONCLUSION

For the reasons stated above and in Defendants' prior briefing, this Court should grant Defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and enter judgment for Defendants.

Dated: May 5, 2023

                                        Respectfully submitted,

                                          SARAH HARRINGTON
                                          Deputy Assistant Attorney General

JEANINE M. WORDEN
Associate General Counsel for Fair Housing
KATHLEEN M. PENNINGTON                LESLEY FARBY
Assistant General Counsel                     Assistant Branch Director
for Fair Housing Enforcement
JULIA DYKSTRA                                s/ James D. Todd, Jr.
PAUL I. OSADEBE                            JAMES D. TODD, JR.
Trial Attorneys                                 BRIAN C. ROSEN-SHAUD
U.S. DEPARTMENT OF HOUSING       U.S. DEPARTMENT OF JUSTICE
AND URBAN DEVELOPMENT         Civil Division, Federal Programs Branch
                                          Ben Franklin Station
*Of Counsel*                                   P.O. Box 883
                                          Washington, DC 20044
                                          (202) 514-3378
                                          (202) 305-7667
                                        james.todd@usdoj.gov
                                        brian.c.rosen-shaud@usdoj.gov

                                        Attorneys for Defendants