IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, *et al.*,<br><br>    Defendants. | No. 1:13-cv-00966 (RJL) |

**SUPPLEMENTAL BRIEF OF PLAINTIFF**

For years, defendants have argued that plaintiff's challenge to the 2013 disparate-impact rule as applied to homeowner's insurers was not ripe due to ongoing rulemaking by the Department of Housing and Urban Development (HUD). *See*, *e.g.*, Dkt. 121, at 3-5. Defendants continued to press that argument after HUD published its 2021 draft rule that proposed to "recodify the discriminatory effects regulation specified in the 2013 Rule" in all material respects. 86 Fed. Reg. 33,596; *see* Dkt. 128, at 6-11. Defendants even maintained that argument after HUD submitted an identical "draft Final Rule" to OIRA. *See* Dkt. 139, at 4-5. Defendants further argued that the Court should wait to resolve the parties' cross-motions for summary judgment, even after HUD published the identical 2023 rule and transmitted it for official printing in the Federal Register, until "HUD has supplemented the Administrative Record with additional record materials relevant to Plaintiff's challenge." *Id.* at 5; *see* Dkt. 143.

Defendants' supplemental brief makes clear that the delay was for naught. Defendants identify no changes in the text of the 2023 rule or anything in the administrative record that bears on

plaintiff's challenges.  To the contrary, defendants have recycled their supplemental brief from 2021, merely revising some wording and sprinkling in record citations that recapitulate prior arguments.  Those arguments have not improved with age.  Plaintiff's motion for summary judgment, now pending for almost seven years, should be granted.

1. There is no dispute that the 2023 rule is substantively identical to the 2013 rule.  There is also no dispute that plaintiff has challenged those rules only on the grounds that they exceed HUD's statutory authority under the Fair Housing Act and are contrary to law.  *See* Supp. Br. 7.  Because plaintiff's challenge "is a statutory challenge to a regulation," rather than one "factually based in asserting errors of procedure in promulgating" the 2023 rule, the administrative record is "not necessary or relevant."  *Fisons Corp.* v. *Shalala*, 860 F. Supp. 859, 868 (D.D.C. 1994); *accord Ted Cruz for Senate* v. *FEC*, 451 F. Supp. 3d 92, 96 (D.D.C. 2020).  Plaintiff's prior submissions (Dkt. 60, 68, 129), as well as the submissions by plaintiff's amici (Dkt. 61, 63), thus suffice to show that HUD lacks statutory authority to apply the 2023 rule to homeowner's insurers.

In any event, the preamble of the 2023 rule confirms that the rule suffers from the same defects as its predecessor from a decade earlier.  For example, HUD acknowledged in the 2023 preamble, as it did with respect to the 2013 rule, that a plaintiff can satisfy the rule's causation requirement by "challeng[ing] the decision-making process as a whole."  88 Fed. Reg. 19,485; *see* 78 Fed. Reg. 11,469.  HUD has thus confirmed that the 2023 rule impermissibly allows a disparate-impact plaintiff to proceed based merely on statistical disparities without identifying the specific policy that caused those disparities.  *See* Dkt. 60, at 24-26; Dkt. 69, at 17-20.  In similar fashion, HUD acknowledged in the 2023 preamble that an insurer may be liable under a disparate-impact theory based on a proposed less discriminatory "alternative," expressly rejecting comments arguing that any proposed alternative business practice should be "equally effective" as the one challenged.

88 Fed. Reg. 19,491.  HUD has thus confirmed that the 2023 rule may require entities to alter neutral policies, even when those policies are not "artificial, arbitrary, and unnecessary."  *See* Dkt. 60, at 26-29; Dkt. 69, at 20-22.

Defendants' supplemental brief quotes various portions of the 2023 preamble in an effort to undermine plaintiff's arguments, but those citations do not move the needle.  For example, defendants argue that HUD has "expressly stated . . . that it is 'not requiring data collection'" and has "expressly disclaimed any intent to 'force insurers to consider protected traits of individuals in the rating and underwriting process.'"  Dkt. 150, at 15, 26 (citing 88 Fed. Reg. 19,469, 19,480, A.R. 56501, 56512).  But regardless of HUD's intent, defendants have established through undisputed evidence that the rule's disparate-impact framework will compel homeowner's insurers to collect data and consider protected traits during the ratemaking process.  *See* Dkt. 60, at 16.  Indeed, even HUD admits that the Rule seeks to compel insurers to analyze their policies based on an "awareness" of their customers' protected traits.  88 Fed. Reg. 19,469; *see also* Supp. Br. 25.

2. Unable to point to any variation between the 2013 and 2023 rules, defendants' supplemental brief recapitulates the same arguments (usually in the same words) that they advanced in 2021.  *See* Dkt. 128.  Those arguments are no more persuasive today than they were 18 months ago.

As a threshold matter, defendants once again contest plaintiff's standing.  *See* Supp. Br. 10-12.  But this Court has already held that plaintiff's standing is "self-evident" because the challenged rules are "clearly intended to apply" to plaintiff's members.  74 F. Supp. 3d 30, 37 (2014) (Dkt. 45, at 12).  The Court further held that the evidence defendants submitted from their members "demonstrate[d] injury-in-fact."  *Id.*  Defendants also rehash their redressability and traceability arguments, but those arguments are predicated on circular reasoning:  whether the 2023 rule is consistent with (or "essentially duplicates," Supp. Br. 12) the FHA is precisely the question before the Court.

Agencies cannot insulate their interpretive rules from review by asserting that those rules have "no legal force independent of any binding effect that the statute itself may have." *Pharmaceutical Research & Manufacturers of America* v. *Department of Health & Human Services*, 138 F. Supp. 3d 31, 44 (D.D.C. 2015) (internal quotation marks and citation omitted).  Nor can defendants maintain that plaintiff's injuries are caused by "long-standing judicial precedent" rather than the 2013 and 2023 rules.  Supp. Br. 14.  In fact, at least one federal court of appeals has rejected the standards provided in the rule as inconsistent with Supreme Court precedent.  *See Inclusive Communities Project, Inc.* v. *Lincoln Property Co.*, 920 F.3d 890, 901-903 (5th Cir. 2019).  And as this Court noted in its 2014 decision, the standard for disparate-impact liability is not settled in this circuit, and "the question of disparate-impact liability for *insurers* under the Fair Housing Act was a much more uncertain question prior to the [2013 rule]."  74 F. Supp. 3d at 39 n.14.  The ensuing injury inflicted on plaintiff's members is thus traceable to the 2013 and 2023 rules.  *See id.*

     Defendants separately contend that the question of the validity of the 2023 rule is unripe until HUD brings an enforcement action against one of plaintiff's members.  *See*  Supp. Br. 18-19.  Of course, courts "normally do not require plaintiffs to bet the farm by taking the violative action before testing the validity of the law."  *Free Enterprise Fund* v. *Public Company Accounting Oversight Board*, 561 U.S. 477, 490 (2010) (internal quotation marks, alterations, and citation omitted).  And while defendants note that plaintiff's members have not been subject to "enforcement actions . . . in the ten years since the 2013 Rule was promulgated," Supp. Br. 21, HUD could simply be declining to bring such enforcement actions until this litigation is resolved.  And courts are already relying on the 2023 rule in private disparate-impact housing suits.  *See Noel* v. *City of New York*, Civ. No. 15-5236, 2023 WL 3160261, at *3 n.7 (S.D.N.Y. Apr. 28, 2023); *see also Martinez* v. *City of Clovis*, 307 Cal. Rptr. 3d 64, 104 (Ct. App. 2023) (relying on the proposed version of the 2023

rule). Because plaintiff's challenge is "purely legal," the contested rule is indisputably "final," and the homeowner's insurance industry "will face hardship if review of its challenge is denied," plaintiff's challenge is perfectly ripe. *National Association of Home Builders* v. *United States Army Corps of Engineers*, 440 F.3d 459, 465 (D.C. Cir. 2006).

Defendants are also incorrect that plaintiff has yet to produce evidence that its members have devoted "resources to re-examining, and if necessary, modifying their existing practices." Supp. Br. 20. Plaintiff has submitted multiple affidavits demonstrating precisely that. *See* 74 F. Supp. 3d at 37. Defendants are likewise mistaken when they assert that plaintiff has not yet identified a "conflict" between the rule and "various state rules regulating insurers." Supp. Br. 21. To the contrary, plaintiff has demonstrated that all 50 States "pervasively regulate[] insurers' ratemaking and underwriting decisions" in a manner incompatible with the 2023 rule, Dkt. 69, at 13, including regulations in several States that "prohibit insurers from considering membership in a protected class" altogether, Dkt. 60, at 22.

      3.      Defendants' rehashed merits arguments fare no better. Plaintiffs cite the decision in *National Fair Housing Alliance* v. *Travelers Indemnity Company*, 261 F. Supp. 3d 20, 34 (D.D.C. 2017), as proof that the 2023 rule can be applied to homeowner's insurers "without any of [p]laintiff's claimed harms coming to pass." Supp. Br. 23. But there, the court did not purport to apply the rule's specific burden-shifting framework; it simply mentioned HUD's regulations twice in passing. In addition, as plaintiff explained over six years ago, the insurer in that case changed its policy not "because of a concern for disparate-impact liability" but because of intervening state legislation that "prohibited insurers from considering source of income as a factor in underwriting." Dkt. 69, at 7. The reasoning in *Travelers*, moreover, aptly demonstrates the problems with applying disparate-impact liability to insurers. To avoid liability in that case, the defendant insurer would

have had to adjust its polices based on the protected characteristics of its clients' tenants. *See Travelers*, 261 F. Supp. 3d at 33.

Defendants continue to argue (Supp. Br. 24-28) that application of the 2023 rule to homeowner's insurers would not result in pervasive consideration of race in ratemaking or insurance decisions based on protected characteristics. But as plaintiff has already explained, the rule would "fundamentally alter" "race-blind underwriting and ratemaking processes" by injecting race into those processes, creating an irreconcilable conflict with "core insurance principles." Dkt. 60, at 15-17. Defendants likewise double down on their argument that the rule does not "categorically conflict[]" with state insurance laws. Supp. Br. 28. But plaintiff has identified precisely such a conflict, because the laws of all 50 States preclude consideration of protected characteristics in the setting of rates and provision of insurance and pervasively constrain insurers' discretion to deviate from sound actuarial principles and fair claim-settlement practices. *See* Dkt. 60, at 22; Dkt. 69, at 13; *see also* D.C. Code § 31-2231.17; Cal. Ins. Code § 790.03(h); Tex. Ins. Code Ann. § 542.003; Fla. Stat. § 626.9541(g), (i); N.Y. Ins. Law § 2606. While defendants continue to defend the rule's imposition of liability even where there is no "equally effective" alternative to an insurer's facially neutral policy (Supp. Br. 30), plaintiff has already explained at length that such liability seeks only to eliminate "artificial, arbitrary, and unnecessary barriers." *Texas Department of Housing and Community Affairs* v. *Inclusive Communities Project, Inc.*, 576 U.S. 519, 545 (2015); *see* Dkt. 60, at 26-29; Dkt. 69, at 20-22.

4.      With respect to the appropriate remedy, defendants request (Supp. Br. 31) that the Court remand the Rule to HUD, rather than vacating it in whole or in part, if plaintiff prevails on its challenge. But when a court concludes that an agency rule is unlawful, vacatur is the "normal remedy." *Allina Health Services.* v. *Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014). Remand

without vacatur is appropriate in only "limited circumstances," *American Great Lakes Ports Association* v. *Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020), and defendants make no effort to explain why this case involves such circumstances.  Defendants also request (Supp. Br. 31-33) that the Court vacate the 2023 rule only as it applies to homeowner's insurers.  That is the only remedy plaintiff has ever requested, *see*, *e.g.*, Dkt. 146, at 18-23, and plaintiff does not disagree with defendants' severability analysis.

\* \* \* \* \*

Plaintiff's motion for summary judgment should be granted and the 2023 disparate-impact rule vacated as applied to homeowner's insurers.

Respectfully submitted,

/s/ Kannon K. Shanmugam
Kannon K. Shanmugam (#474304)
William T. Marks (#1029756)
Yishai Schwartz (#90003407)
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  2001 K Street, N.W.
  Washington, DC 20006
  (202) 223-7300
  kshanmugam@paulweiss.com

May 19, 2023